Richard Alan Eppink
ritchieeppink@idaholegalaid.org
Idaho State Bar no. 7503
IDAHO LEGAL AID SERVICES, INC.
310 North Fifth Street
Boise, Idaho  83702
(208) 345-0106, ext. 1503
(208) 342-2561 (fax)

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W; C.M.; C.L.; A.L., through her guardian E.B.; K.S., through his next friend S.S.; Matthew S., through his guardian V.S.; N.R., through her next friend G.R.; T.F., through her guardian R.F.; T.M., through his guardian T.W.; B.B. through his next friend D.B.; R.P. through her guardian T.P.; Marcia S., through her guardian D.S., <br><br> vs. <br><br> RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare; PAUL LEARY, in his official capacity as Medicaid Administrator of the Idaho Department of Health and Welfare; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE, a department of the State of Idaho, <br><br> Defendants. | Case No. 1:12-cv-00022 <br><br> **COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT** |

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 1

The plaintiffs, with and through their attorney Richard Alan Eppink of Idaho Legal Aid Services, Inc., complain against the defendants as follows:

## INTRODUCTION

1.   The plaintiffs are some of the most vulnerable adults in Idaho.  They live with disabling and chronic conditions such as epilepsy, muscular dystrophy, Down's Syndrome, schizophrenia, and developmental disabilities ranging from mild to severe.  They complain to this Court because the defendants (collectively referred to as the "Idaho Department of Health and Welfare," the "Department," or "IDHW") have informed them that their Medicaid assistance will be substantially reduced for this year but will not explain why.  In fact, the reasons why are "secrets," according to IDHW itself.  The secrets are the methodologies used to calculate the amount of Medicaid resources the plaintiffs will have available for the year.  As participants in the Idaho Developmental Disability Waiver program ("DD Waiver") of Medicaid in Idaho, IDHW has already determined that it is cheaper for the plaintiffs to live in home and community settings rather than in institutions.  Yet, under IDHW's individual DD Waiver budget setting methodology, this year the plaintiffs' individual budgets have been cut drastically—by as much as 42%—without explanation or any meaningful way to challenge to calculations.  The secret budget setting methodology and IDHW's undisclosed revisions to it violate the Medicaid Act, state law, and the plaintiffs' rights to Due Process.  As a result of the drastic cuts, the plaintiffs are at serious risk of institutionalization, in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

## THE PLAINTIFFS

2.   K.W. has been assessed with a functional age of 15 months old.  He is a 30-year-old

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 2

Idaho resident living with severe developmental disabilities and severe, intractable epilepsy. K.W.'s doctors have determined that he requires around-the-clock monitoring and assistance by trained staff. K.W. participates in the DD Waiver program and has chosen the self-direction option. Last year, IDHW calculated K.W.'s budget, using its secret methodology, to be more than $20,000 less than his budget the year before. Following a hearing, IDHW's own hearing officer ruled that the only options for K.W. were "an adequate budget that permits [him] to remain in his parents' home, or institutionalization at a significantly higher cost to [IDHW] and a less fulfilling life for [K.W.] and his family." The hearing officer reversed IDHW's budget reduction and ordered that K.W.'s budget be restored to $102,380. This year, IDHW has again employed its secret formulas and computed K.W.'s budget for 2012 at $72,149.30, a 29% cut. The notice of his reduced budget did not provide any reason for the cut.

3. C.M. is a 53-year-old living in a remote and rural part of Idaho. She has muscular dystrophy and participates in the DD Waiver program. She has lost one of her eyes and has a history of heart problems. She is unable to evacuate on her own in an emergency or administer her prescribed medications without assistance. She requires attendance 24 hours each day. For 2010, IDHW assigned her a budget of $53,119.69, but C.M. pursued IDHW's "reconsideration" process and her budget was increased to $105,500. Between 2010 and 2011, IDHW's budget methodology cut her budget by 21% to $82,576.32. Although IDHW rules still provided for reconsideration at the time C.M. was informed of her budget, IDHW had abandoned that process. Under her reduced budget, C.M. cannot access the 24-hour assistance she requires to survive. The notice of her reduced budget did not provide any reason for the cut.

4. C.L. was institutionalized in the Idaho State School and Hospital for 21 years. For the

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 3

past 13 years, though, he has lived in Weiser, Idaho, in a Certified Family Home with experienced care providers.  He has been diagnosed with moderate mental retardation, and he participates in the Idaho DD Waiver program.  Through that program, he has been able to continue his integrated, community life through supported employment and developmental therapy.  For 2011, IDHW assigned his individual budget as $37,599.84, but for 2012, IDHW's formulas computed C.L.'s budget to be $29,995.57—a sudden 33% cut.  C.L. has appealed the budget reduction administratively to IDHW, but the notice he received limits the grounds on which he may challenge the budget calculation, and IDHW will not allow him, his next friends, or his attorney to understand how C.L.'s budget was calculated.  The notice of his reduced budget did not explain why it had been cut.

5.   A.L. was institutionalized when she was 9 years old.  She remained in institutions, hospitals, and incarcerated until she had access to a community placement in Idaho.  She has been diagnosed with mild mental retardation, seizure disorder, and depression.  During the past year she has been hospitalized for psychiatric reasons and relocated twice and is now in alternate community care while her support team tries to identify a community placement and therapy center that will accept her despite her violent behaviors, which have been exacerbated by her recent relocations.  She participates in the DD Waiver program and for 2011, IDHW assigned A.L. a budget of $42,491.58.  For 2012, it assigned her a budget of $34,238.30: a 19% cut.  The notice of her reduced budget contained no reasons for the reduction.

6.   K.S. is a 34-year-old man who was born with Down's Syndrome and severe developmental disabilities.  He developed congestive heart failure at age 3 and has been assessed as having a functional age of 3 years and 8 months.  He is an Idaho resident and participates in

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 4

the DD Waiver program.  Over the past year his mother and guardian has observed a regression in his social progress, along with increased tantrums and frustration, probably as a result of the early-onset Alzheimer's Disease that he has begun to experience.  For 2010, IDHW initially assigned K.S. a budget of  $41,707.95, but K.S.'s support team pursued the IDHW's "exception review" process and he was able to receive services costing $47,856.27. For 2011, IDHW initially assigned him a budget of $41,857.46, but that was increased to $46,196.23 through IDHW's reconsideration and exception review processes.  For 2012, IDHW has assigned K.S. a budget of only $34,218.66: a 25% cut.  In mid-2011, though, IDHW eliminated the reconsideration process and limited the exception review process so that it is no longer available to people in K.S.'s circumstances.  The notice of K.S.'s reduced budget did not provide a reason for the cut.

7.  Matthew S. is a 40-year-old man who has been diagnosed with moderate to severe mental retardation.  He has lived in a Certified Family Home in Idaho since 1996 and is a participant in the DD Waiver program.  For 2011, IDHW assigned Matthew a budget of $52,677.91, which allowed him to continue living in a community setting and to access adult day care and developmental therapy.  The independent assessor that IDHW contracts with noted that a reduction in M.S.'s services would result in reduced independence or loss of skills.  Yet, for 2012, IDHW assigned Matthew a budget of only $34,059.11: a drastic 35% reduction.  The budget notice did not provide any reasons for the reduction.

8.  N.R. is a 46-year-old woman who has been diagnosed with profound mental retardation, seizure disorder, diabetes, high blood pressure, and glaucoma.  She is an Idaho resident and a participant in the DD Waiver program.  N.R.'s budget has been decreased from

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 5

$44,752.87 to $34,077.76 for 2012: a 23% cut.  Through her prior budget, N.R. was able to access developmental therapy and her assessed functional age has increased from 1 year 8 months to 1 year and 9 months.  The independent assessment contractor that IDHW uses noted no changes in N.R.'s assessed needs between 2010 and 2011.  With the help of her support team, N.R. filed an administrative appeal of her latest assigned budget within the time specified in the budget notice, but IDHW denied her appeal as untimely.  The budget notice limited the grounds on which she could appeal and did not explain the reasons for the budget reduction.

9.  T.F. is diagnosed with autism and mild mental retardation.  She is a 22-year-old female who has lived with her father all of her life.  She participates in the DD Waiver program and is an Idaho resident.  Assessed as having the functional age of 12 years, she is extremely introverted and has avoided human interaction for most of her life.  Through the DD Waiver program, she was assigned a budget for 2011 of $46,587.95 by IDHW.  Through her support team, T.F. went through the IDHW "extenuating circumstances" process to get approval for services that would cost $48,511.02. With that increased budget, she has been able to access developmental therapy and a stable, community-based place to live with her father, services that have helped her make progress integrating into her community and daily life.  For 2011–2012, IDHW assigned T.F. a budget of only $37,269.55—a 23% cut—but provided no explanation for the reduction.  T.F.'s father and guardian reviewed the budget notice but was confused by the portion that mentioned appeal rights, because that portion seems to limit the right to appeal to only specific circumstances.  Because T.F. and her father did not understand the notice, T.F. did not appeal her budget.

10.  T.M. is a 23-year-old Idaho resident living with autism, hyperkinesias, mild mental

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 6

retardation.  He has been assessed with a functional age of 5 years 3 and relies on others to complete many daily activities, for which he requires direct instruction, supervision, or a routine. He is a participant in the DD Waiver program and had a support plan under that program approved by IDHW for a budget of $45,684.75 for 2010–2011.  Under the plan, T.M. received 30 hours each week of community programming, including developmental therapy.  For 2011–2012, IDHW assigned T.M. a budget of only $34,498.27.  When a plan was submitted for that budget, IDHW denied all of T.M.'s community programming, which took the budget from $34,498.27 to $26,210.58: an effective 42% cut.  The budget notice does not explain the reasons for the budget reduction.

11.  B.B. is a 26-year-old man diagnosed with moderate mental retardation and attention deficit disorder.  He is an Idaho resident and participant in the DD Waiver program, through which he is able to live with his parents and work with supported employment in a community setting.  B.B. requires his parents' help at home to take care of himself and, due to his disabilities, he has outbursts of anger and sometimes hits, kicks, throw things, and yells.  For 2008–2009, Beau's assigned budget was $55,274.95.  For 2009–2010, it was $57,832.10.  For 2010–2011, it was $48,009.73.  But suddenly, for 2011–2012, it is $35,469.54, a 26% reduction from the assigned budget amount the year before.  The budget reduction forces B.B. to choose between his home and his job.  The notice of the budget cut did not explain any reason for it.

12.  R.P. is a 20-year-old Idaho resident diagnosed with Asperger's Syndrome and developmental delays.  She is a participant in the DD Waiver program and has chosen the self-direction option.  She lives in her own apartment with 24-hour staff.  For 2010–2011, IDHW assigned R.P. a budget of $67,990.18.  With the help of her mother and guardian, R.P. pursued

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 7

the reconsideration process through IDHW, which resulted in R.P.'s budget being increased to $99,590.  IDHW has since eliminated the reconsideration process, and for 2011–2012, IDHW has assigned R.P. a budget of only $72,332.51, which is inadequate to continue her existing plan and supports.  The budget notice did not explain the reasons for the reduction and IDHW has refused to explain the reasons in administrative hearing.

13.  Marcia S. is a 59-year-old woman who was institutionalized in the Idaho State School and Hospital from 1971 until 1993, when she was placed in the community with a Certified Family Home provider who she still lives with today in Idaho.   Marcia has been assessed as having a functional age of 1 year and 10 months, and is diagnosed with moderate mental retardation, schizoaffective disorder, schizophrenia, and other neurological deficits.  The IDHW's own independent assessors have noted that reduction in Marcia's services may result in her being moved to a more restrictive setting.  Marcia is a participant in the DD Waiver program and has been able to remain in a community setting through the services available to her under that program.  For 2010–2011, IDHW assigned Marcia a budget of $43,080.11.  Through the IDHW reconsideration process, that budget was increase to $44,600.14.  After reconsideration, Marcia's support team pursued the IDHW "extenuating circumstances," resulting in an approved plan for Marcia with a budget of $48,265.05.  For 2011–2012, however, neither the reconsideration nor the extenuating circumstances processes are available to Marcia, and IDHW has assigned her a budget of $36,854.18, his is a 23% cut.  The notice of her new budget did not provide any reason for the reduction.

14.  All of the plaintiffs are fully eligible for Medicaid and the DD Waiver program. They have been participating in Medicaid and the DD Waiver program continuously before and

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 8

after IDHW's budget reduction notices.

## THE DEFENDANTS

15.   Defendant Richard Armstrong is the Director of IDHW, which has the legal authority and responsibility for operating Idaho's Medicaid programs, including the Idaho Developmental Disability Waiver program and its Self-Directed Community Supports Waiver option.  Armstrong is charged with overall responsibility for the administration of IDHW, and he is sued in his official capacity only.

15.   Defendant Paul Leary is the Administrator of the Medicaid Division of IDHW and has day-to-day responsibility for overseeing and implementing Idaho's Medicaid program, including the Developmental Disability Waiver program and Self-Directed Community Supports Waiver option.  He is sued in his official capacity only.

_____16.   Defendant Idaho Department of Health and Welfare is a department of the State of Idaho and the single state agency directly responsible for the administration and supervision of Idaho's Medicaid program under Title XIX of the Social Security Act.  IDHW is a public entity under Title II of the Americans with Disabilities Act ("ADA"), as defined at 42 U.S.C. § 12131(1), and an entity that receives federal financial assistance under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794).  The plaintiffs assert only their Eleventh and Twelfth claims for relief against IDHW.

17.   All of the acts and omissions set forth in this matter were done by the defendants or the defendants' employees and agents, within the scope of their employment, and under the color of state law. They were official acts of the defendants undertaken directly by policymakers, were actions caused by the policies, procedures, practices and customs of State of Idaho and IDHW,

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 9

or were ratified by the defendants.

## JURISDICTION

_____18.  The plaintiffs bring actions for injunctive and declaratory relief because of violations of the Medicaid Act (Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396w-5), Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, the Supremacy Clause of U.S. Const. Art. VI, and the Due Process Clause of U.S. Const. Amend. XIV.

19.  This Court has jurisdiction over the plaintiffs' 42 U.S.C. § 1983 and Supremacy Clause claims under 28 U.S.C. § 1331.  It also has jurisdiction over the plaintiffs' 42 U.S.C. § 1983 claims under 28 U.S.C. § 1343(a)(3).  It has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and F.R.C.P. 65.  And it has jurisdiction under 28 U.S.C. § 1367(a) over all of the plaintiffs' other claims because those claims form part of the same case or controversy, under U.S. Const. Art. III, as the plaintiffs' other claims.

20.  Venue is proper in this Court and District, under 28 U.S.C. § 1391(b), because, on information and belief, the defendants are subject to personal jurisdiction in this District and because many of the events and omissions giving rise to the plaintiffs' claims occurred in this District.

## FACTUAL BACKGROUND

**A.  Medicaid in Idaho**

21.  Medicaid is a medical assistance program cooperatively funded by the federal government and participating state governments.  The State of Idaho participates in the Medicaid program.

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 10

22.  As a participant in the Medicaid program, the State of Idaho is required to administer its program "in the best interests of recipients."  42 U.S.C. § 1396a(a)(19).

23.  The State of Idaho, as a Medicaid participant state, is also required to adhere to Medicaid requirements for states, set forth in the Medicaid Act (Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396w-5) and the regulations interpreting that act, promulgated by the U.S. Department of Health and Human Services through its Centers for Medicare and Medicaid Services ("CMS").

**B.  Idaho's HCBS "DD Waiver" with a Self-Direction Option**

24.  The Medicaid Act allows CMS to waive certain requirements under the Act in response to a state's application for waiver.  Among the waiver possibilities provided in the Act, under 42 U.S.C. § 1396n(c) (also known as § 1915(c) of the Social Security Act), a state may apply for a "Home and Community Based Services" ("HCBS") waiver.

25.  As part of an HCBS waiver, a state may provide for the optional choice of "self-directed personal assistance services."  42 U.S.C. § 1396n(j).

26.  The State of Idaho, through IDHW, has applied for and received HCBS waivers from CMS.  One of those waivers is called the "Idaho Developmental Disabilities Waiver" ("DD Waiver").  That waiver includes an optional choice for self-directed personal assistance services.

27.  The purpose of Idaho's DD Waiver program is "to prevent unnecessary institutional placement, provide for the greatest degree of independence possible, enhance the quality of life, encourage individual choice, and achieve and maintain community integration."  IDAPA 16.03.10.700.

28.  IDHW is required to renew the DD Waiver periodically and to get CMS approval of

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 11

certain amendments to the DD Waiver program.

29.   Amendments to the DD Waiver program that would result in a reduction in the number of persons served, services provided, or providers, can only take effect after CMS has approved the proposed amendments.

30.   Under the DD Waiver program in Idaho, IDHW has established limits on the amount of waiver services that an eligible participant can receive.  Specifically, IDHW sets a limit on the maximum dollar amount of waiver services authorized for each individual participant.

31.   IDHW sets the individual budget for each participant through initial, annual, and interim assessments and reassessments.  The assessments are conducted using a budget-setting methodology developed by IDHW and applied by an Independent Assessment Provider ("IAP"). The current IAP for these assessments is the Idaho Center for Disabilities Evaluation ("ICDE").

**C.  IDHW's Secret Individual Budget Rules**

32.   The Medicaid Act requires that IDHW make its individual budget-setting methodology "open to public inspection."  42 U.S.C. § 1396n(j)(5)(D).

33.   Although, in its last DD Waiver amendment application to CMS, IDHW represented that its budget-setting methodology is "documented publicly through Administrative rulemaking process and published Idaho Administrative Code," the budget-setting methodology is not open to public inspection and is not documented in administrative rulemaking or published in the Idaho Administrative Code.

34.   Rather, the Idaho Administrative Code and IDHW rulemaking only state that IDHW "sets an individualized budget for each participant according to an individualized measurement of the participant's functional abilities, behavioral limitations, and medical needs, related to the

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 12

participant's disability,"  IDAPA 16.03.10.514.01; *see also* IDAPA 16.03.13.190 ("The Department sets an individualized budget for each participant according to an individualized measurement of the participant's functional abilities, behavioral limitations, medical needs, and other individual factors related to the participant's assessed needs.").

35.   The only information that IDHW will provide the plaintiffs about its budget-setting methodology and the "individualized measurement" referred to in IDAPA 16.03.10.514.01 are the questions and factors that its IAP assessors inquire about during assessments, and a general description of the process IDHW used to develop the methodology.

36.   In fact, IDHW states that the methodology itself—which on information and belief consists of mathematical formulas used to compute each individual's budget—is a "trade secret."

37.   IDHW will not even release its budget-setting methodology to individuals to whom IDHW sends attempted notice of individual budget reductions.  Those attempted notices say that "[i]f you believe your individualized budget amount was calculated incorrectly . . . you have the right to appeal this decision."

38.   Even those who appeal their individual budget reductions, contending that their budgets were calculated incorrectly, cannot learn how their budgets were calculated.  They can only discover the assessor's input values to the methodology and the output—the budget amount—produced by the methodology.

39.   The budget setting methodology is an agency rule, but has never been promulgated as a rule under the Idaho Administrative Procedure Act.

40.   The methodology itself is a black box to these participants and their attorneys and advocates—no different than a hat from which IDHW magically pulls dollar figures.

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 13

41.  As a result, administrative appeals of individual budget reductions are meaningless hearings for the participant: they must somehow challenge a budget calculation without knowing how the budget was calculated.

42.  Even if administrative appellants could discover how their individual budget was calculated, the IDHW hearing officer cannot consider information that was not provided to IDHW at or before it made its budget reduction decision.  IDAPA 16.05.03.131.

43.  Additionally, IDHW's administrative hearing officers rule that they have no authority or ability review IDHW's budget calculations or the methodology used to produce them.

**D.  Unapproved Cuts to the DD Waiver Program**

44.  IDHW last received CMS approval to amended its DD Waiver program on or about October 17, 2011.  The amendments received an effective date of August 5, 2011.

45.  Under those last approved waiver amendments, participants who believe that their assigned budget does not accurately reflect their needs can ask for "reconsideration."  Those who are not satisfied by the outcome of a reconsideration review can request a fair hearing.

46.  However, without telling CMS, IDHW repealed the rules that previously entitled participants to reconsideration of their individual budgets.  The reconsideration process was formerly part of the Idaho Administrative Code at IDAPA 16.03.10.515.a ("Participants with developmental disabilities who are adversely affected by a Department decision regarding program eligibility and authorization of services under these rules may request a reconsideration . . . . [which] must be performed by an interdisciplinary team . . . .").  IDHW removed that procedure effective July 1, 2011.

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 14

47.  IDHW did not mention in its most recent DD Waiver amendment application to CMS that it had removed the reconsideration process from its rules.  Indeed, it still included the reconsideration process among the "safeguards" it told CMS it had in effect to protect participants when an individual budget is insufficient to meet a participant's needs.

48.  IDHW also did not mention to CMS that it had also removed another safeguard: negotiation between the participant and IDHW over the plan for services within each participant's individual budget.  This provision, formerly part of the Idaho Administrative Code at IDAPA 16.03.10.515.09 ("If the services requested on the plan of service fall outside the individualized budget or do not reflect the assessed needs of the participant, the plan developer and the participant will have the opportunity to negotiate the plan of service with the Department's care manager."), was also removed by IDHW effective July 1, 2011.

49.  Yet another safeguard that IDHW removed without telling CMS is its "exception review" process.  Under this process, IDHW used to have to complete a clinical review of a participant's plan of service if the plan exceeded the individual budget amount produced by IDHW's secret budget methodology.  Effective July 1, 2011, IDHW no longer has to conduct such a clinical review; rather, it must only conduct a review when there are services requested that are "required, based on medical necessity," and only if a plan requests High or Intense Supported Living.  IDAPA 16.03.10.515.03.

50.  Like the exception review process, DD Waiver participants also used to be able to modify their budgets during the year if their individual needs changed since the last assessment.  IDHW has removed this process as well, without telling CMS.  Like the changes to the exception review process, interim modification of individual budgets is now only allowed in cases of

"medical necessity," effective July 1, 2011.  IDAPA 16.03.10.514.01.b, 16.03.13.190.03; I.C. § 56-255(3)(f)(ii).

51.   The reconsideration, exception review, and budget modification processes were crucial in ensuring that the IDHW budget setting methodology works.

52.   Those processes were previously used by IDHW to identify the approximately 15% of individuals with needs that fall outside the usual Bell curve of common or predictable needs.

53.   In other words, according to IDHW itself, its budget setting methodology produces a budget that is adequate to meet an individual's needs only 85% of the time.

54.   IDHW's changes to the exception review and budget modification processes only allow for changes only for medical reasons.

55.   The Medicaid Act requires that individual budgets be subject to modification for other reasons beyond just medical reasons.  It requires that individual budgets also be modifiable for changes to functional status or living situation as well.  42 C.F.R. § 441.472(e) ("The State must have a procedure to adjust a budget when a reassessment indicates a change in a participant's medical condition, functional status or living situation.").

**E.  Deficient Notice of Budget Reductions**

56.   IDHW attempted to give notice of individual budget reductions to each of the plaintiffs.  It attempted to give notice by mailing a two page letter, via its contractor, ICDE.  The letters are titled "ANNUAL ICF/ID LEVEL OF CARE AND DD ELIGIBILITY APPROVAL NOTICE."

57.   The letters state that IDHW has determined that each plaintiff is eligible for developmental disability services under I.C. § 66-402(5) and IDAPA 15.03.10.584.

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 16

58. The letters also state the individual budget calculated for each plaintiff. They next state that each plaintiff may "select the Self-Direction Community Supports option or Traditional Waiver option."

59. The letters limit the grounds on which individuals can appeal the assigned budget amount.

60. However, different letters limit the grounds for appeal differently.

61. The rules and laws cited in the letters do not provide adequate authority for the individual budget reductions. All of the letters cite the following provisions: I.C. § 66-402(5) (defining "developmental disability"), IDAPA 16.03.10.584 (concerning eligibility for treatment in an Intermediate Care Facility), IDAPA 16.03.13.190 (generally describing budget setting methodology as "an individualized measurement of the participant's functional abilities, behavioral limitations, medical needs, and other individual factors related to the participant's assessed needs), and IDAPA 16.05.03.101 (establishing procedural requirement for filing of administrative appeals). Some of the notices also cite IDAPA 16.03.10.012.14 (defining "Medical Necessity").

62. The letters do not state the reasons for the budget reduction. They do not explain the budget methodology or any of the calculations used to compute each plaintiff's individual budget. They do not cite the specific regulations that support the budget reduction.

63. Some of the letters state that "[t]o request a continuation of benefits, contact the regional Care Manager responsible for approving your plan with [sic] ten (10) days of the date this notice was mailed." Some of the letters, however, do not contain information about how to request continuation of benefits.

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 17

64.  Some of the letters require that the recipient provide "professional documentation" with any appeal request, from a "licensed specialist."  Others do not include that requirement, but state that the recipient can only appeal the assigned budget for two reasons: if there has been a change in circumstances or if a specific need was missed or inaccurately assessed.

65.  None of the letters inform the recipients that they may be represented by an attorney or spokesman.

## CLAIMS FOR RELIEF

### 1.  Due Process: Lack of Ascertainable, Non-Arbitrary Standards

66.  To comply with due process guarantees under the U.S. Constitution, IDHW must use reasonable, ascertainable, non-arbitrary standards and procedures for determining Medicaid eligibility and the extent of medical assistance it provides.

67.  IDHW's individual budget setting methodology uses vague, subjective, arbitrary and secret criteria for allocating Medicaid funds among waiver participants.

68.  The defendants' rules and implementation of the individual budget setting methodology is inconsistent with the Due Process Clause of U.S. CONST. amend. XIV.

69.  Under 42 U.S.C. § 1983, the plaintiffs are entitled to injunctive and prospective relief prohibiting the defendants from violating their rights, privileges, or immunities under federal law.

### 2. Due Process: Lack of Fair Hearing

70.  To comply with the due process guarantees under the U.S. Constitution, IDHW must provide the plaintiffs with a fair, predeprivation hearing prior to reducing the plaintiffs' assistance.

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 18

71.  IDHW's administrative appeal procedures and practices do not allow the plaintiffs to discover or confront the evidence against them.  Those procedures are therefore inconsistent with the Due Process Clause of U.S. CONST. amend. XIV and the Medicaid Act, Title XIX of the Social Security Act, Title 42 § 1396a, *et seq.*, and its implementing regulations.

72.  Under 42 U.S.C. § 1983, the plaintiffs are entitled to injunctive and prospective relief prohibiting the defendants from violating their rights, privileges, or immunities under federal law.

### 3. Due Process: Inadequate Notice

73.  To comply with the due process guarantees under the U.S. Constitution, IDHW must provide the plaintiffs with a meaningful notice that apprises of the reasons for a reduction in assistance and the authority for the reduction.

74.  IDHW's notice to the plaintiffs of their individual budget reductions does not adequately apprise them of the action against them, or of the reasons for the reduction, or of the authority for the reduction. The notices are therefore inconsistent with the Due Process Clause of U.S. CONST. amend. XIV and the Medicaid Act, Title XIX of the Social Security Act, Title 42 § 1396a, *et seq.*, and its implementing regulations.

75.  Under 42 U.S.C. § 1983, the plaintiffs are entitled to injunctive and prospective relief prohibiting the defendants from violating their rights, privileges, or immunities under federal law.

### 4. Violation of Medicaid Act Maintenance of Effort Requirements – 42 U.S.C § 1983

76.  The Medicaid Act, Title XIX of the Social Security Act, prohibits the defendants from implementing more restrictive eligibility standards, methodologies, or procedures as part of

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 19

the Idaho Medicaid program until the State of Idaho has a fully operational American Health

Benefit Exchange in compliance with 42 U.S.C. § 18031.

77.  The State of Idaho has not yet complied with 42 U.S.C. § 18031 and does not yet

have a fully operational American Health Benefit Exchange.

78.  The defendants have implemented more restrictive Medicaid standards,

methodologies, and procedures through their DD Waiver individual budget setting methodology,

in violation of the Medicaid Act and its implementing regulations.  42 U.S.C. §§ 1396a(a)(74),

(gg).

79.  The defendants have also removed the reconsideration process for individual budgets

and limited the grounds for budget modifications and adjustments for extenuating circumstances.

The defendants have implemented these changes retroactively, resulting in a reduction in

services provided, without approval from CMS, violation of the Medicaid Act and its

implementing regulations.

80.  Under 42 U.S.C. § 1983, the plaintiffs are entitled to injunctive and prospective relief

prohibiting the defendants from violating their rights, privileges, or immunities under federal

law.

**5. Violation of Medicaid Act Maintenance of Effort Requirements – Supremacy Clause**

81.  Because the defendants' implementation of more restrictive standards,

methodologies, and procedures, through its budget setting methodology, removal of the

individual budget reconsideration process, and limiting of the exception review and modification

processes violate the requirements of the Medicaid Act, the defendants' changes and

methodology are entirely preempted by the operation of the Supremacy Clause, U.S. CONST. Art.

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 20

VI, cl. 2.

82.  The plaintiffs are entitled to injunctive and prospective relief prohibiting the defendants from violating their rights, privileges, or immunities under federal law.

**6. Violation of Medicaid Act Budget Methodology Requirements – 42 U.S.C. § 1983**

83.  The Medicaid Act, Title XIX of the Social Security Act, requires the defendants to compute individual budgets for the plaintiffs through a methodology that uses valid, reliable cost data, is open to public inspection, includes a calculation of the expected cost of the services if self-directed or non-self-directed, and does not restrict access to other medically necessary care and services not included in the budget.  42 U.S.C. § 1396n(j)(5)(D).

84.  The defendants' budget-setting methodology is not open to public inspection and on information and belief does not use valid and reliable cost data, does not include a calculation of expected costs of self-directed and non-self-directed services, and restricts access to medically necessary care and services not included in the budget.

85.  Under 42 U.S.C. § 1983, the plaintiffs are entitled to injunctive and prospective relief prohibiting the defendants from violating their rights, privileges, or immunities under federal law.

**7. Violation of Medicaid Act Budget Methodology Requirements – Supremacy Clause**

86.  Because the defendants' individual budget-setting methodology is in violation of the Medicaid Act, the methodology is entirely preempted by the operation of the Supremacy Clause, U.S. Const. Art. VI, cl. 2.

87.  The plaintiffs are entitled to injunctive and prospective relief prohibiting the defendants from violating their rights, privileges, or immunities under federal law.

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 21

**8. Violation of Medicaid Act Free Choice Requirements – 42 U.S.C. § 1983**

88. The Medicaid Act, Title XIX of the Social Security Act, requires the defendants to give the plaintiffs a meaningful choice between institutional or home and community-based services.  42 U.S.C. § 1396n(c)(2)(C).

89. The defendants' reduction of the plaintiffs' individual Medicaid budgets deprives the plaintiffs of services that they require to avoid serious risk of segregation in an institution, denying them a meaningful choice between institutional or home and community-based services.

90. Under 42 U.S.C. § 1983, the plaintiffs are entitled to injunctive and prospective relief prohibiting the defendants from violating their rights, privileges, or immunities under federal law.

**9. Violation of Medicaid Act Free Choice Requirements – Supremacy Clause**

91. Because the budget reductions are in violation of the Medicaid Act, the defendants' policies are entirely preempted by the operation of the Supremacy Clause, U.S. CONST. Art. VI, cl. 2.

92. The plaintiffs are entitled to injunctive and prospective relief prohibiting the defendants from violating their rights, privileges, or immunities under federal law.

**10. Invalid Rule under Idaho Administrative Procedure Act – Declaratory Judgment**

93. The DD Waiver individual budget-setting methodology is an agency rule under the Idaho Administrative Procedure Act, and therefore the defendants are required to give the public notice and an opportunity to comment on the methodology, and they must submit the methodology to the Idaho legislature for approval.

94. The defendants have never published the methodology, allowed public participation

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 22

in the rulemaking concerning the methodology, or obtained legislative approval for the rule.  The defendants have not substantially complied with the requirements of the Idaho Administrative Procedure Act in implementing the methodology.

95.  Under 28 U.S.C. §§ 2201–2202 and I.C. § 67-5231, the plaintiffs are entitled to a declaration that the DD Waiver individual budget setting methodology and budget tool are void as a rule not adopted in substantial compliance with the Idaho Administrative Procedure Act.

**11. Discrimination in Violation of Title II of the Americans with Disabilities Act**

96**.**  The plaintiffs are individuals with disabilities in that they have physical, mental or other impairments that substantially limit one or more of their major life activities, including, but not limited to walking, speaking, standing, and engaging in activities of daily living.

97.  The plaintiffs are qualified persons with disabilities in that they are capable of safely living at home and in other community-based residential settings and they meet the essential eligibility requirements for the receipt of services from and participation in the State Medicaid program with reasonable modification to the rules, policies, and practices of that program. 42 U.S.C. § 12131(2).

98.  Without reasonable modification of the rules, policies, and procedures governing the Idaho Medicaid program, Plaintiffs will be at serious risk of being forcibly isolated and segregated in harmful institutional settings against their will.

99.  The defendants' reduction of the plaintiffs' individual Medicaid budgets deprives the plaintiffs of services that they require to avoid serious risk of segregation in an institution and remain at home, the most integrated residential setting that appropriate to their needs, and so constitutes unlawful discrimination in violation of Title II of the ADA, 42 U.S.C. §§ 12132 *et*

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT – Page 23

*seq.*, and its implementing regulation, 28 C.F.R. § 35.130(d).

100.  By failing to make reasonable modifications to the policies, practices, or procedures governing the provision of Medicaid services in Idaho to ensure they are provided in the most integrated setting appropriate to the needs of disabled people, the defendants discriminated against the plaintiffs because of their disability, in violation of Section II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132, *et seq.*

101.  The defendants have utilized criteria and methods of administration that subject the plaintiffs to discrimination on the basis of disability, including serious risk of institutionalization, by (1) failing to assess the services that would enable the plaintiffs to remain at home or in the community, (2) failing to ensure that the plaintiffs have access to Medicaid-covered services that will meet their needs at home or in the community, and (3) compelling providers to stop working through these programs designed to keep people at home or in the community, in violation of Title II of the ADA and implementing regulations.

**12. Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973**

102.  The plaintiffs are "qualified person[s] with disabilities" within the meaning of Section 504 of the Rehabilitation Act of 1973 because they have physical, mental or other impairments that substantially limit one or more of their major life activities, and they meet the essential eligibility requirements for Idaho's Medicaid program.

103.  The defendants' reduction of the plaintiffs' individual Medicaid budgets, which they require to avoid serious risk of segregation in an institution and remain at home, the most integrated residential setting that are appropriate to their needs, constitutes unlawful discrimination in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and its

implementing regulation, 28 C.F.R. § 41.51(d).

104.  The defendants have utilized criteria and methods of administration that subject the plaintiffs to discrimination on the basis of disability, including serious risk of institutionalization, by (1) failing to assess the services that would enable Plaintiffs to remain at home or in the community, (2) failing to ensure that Plaintiffs have access to Medicaid-covered services that will meet their needs at home or in the community, and (3) compelling providers to stop working for programs designed to keep people at home or in the community, in violation of Section 504 and its implementing regulations.

## CONCLUSION

WHEREFORE, the plaintiffs pray that this Court order the following relief and remedies:

1. Declare that the defendants' reduction of the plaintiffs' DD Waiver individual budgets without proper, particular notice of the reasons for the reductions, without a publicly available budget methodology, and without opportunity for meaningful fair hearings constitutes a denial of the plaintiffs' constitutionally protected right to due process guaranteed by 42 U.S.C. §1983, the Fourteenth Amendment to the Constitution, and the Medicaid program, Title XIX of the Social Security Act, Title 42 § 1396a, *et seq.*

2. Declare that the defendants' reduction of plaintiffs' DD Waiver individual budgets presents a serious risk of unnecessary institutionalization, in violation of the Medicaid Act, and of Title II of the ADA and Section 504 of the Rehabilitation Act of 1973, which prohibit discrimination on the basis of disability and unjustified institutionalization and require the defendants to administer its services and programs in the most integrated setting appropriate to the needs of the individual with disabilities.

COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND
DECLARATORY JUDGMENT – Page 25

3.  Declare that the defendants' individual budget setting methodology and budget tool for calculating individual budgets for DD Waiver participants is void, as an improperly promulgated agency rulemaking.

4. Grant a temporary restraining order, preliminary injunction, and permanent injunction enjoining the defendants and their officers, agents, employees, attorneys, and all persons who are in active concert or participation with them from reducing the plaintiffs' Medicaid DD Waiver services without proper notice of the specific reasons for any individual budget reduction, full due process appeal rights, notice of alternative institutional or home and community-based Medicaid services, and a publicly available budget calculation methodology.

5.  Waive the requirement for the posting of a bond as security for the entry of preliminary relief.

6.  Award the Plaintiffs the costs of this action and reasonable attorney's fees pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12133, 42 U.S.C. § 12205 and as otherwise may be allowed by law.

7. All such other and further relief as the Court deems to be just and equitable.

DATED this 18th day of January, 2012, at Boise, Idaho.

IDAHO LEGAL AID SERVICES, INC.

/s/ Richard Alan Eppink

Attorneys for Plaintiffs