Richard Alan Eppink
ritchieeppink@idaholegalaid.org
Idaho State Bar no. 7503
IDAHO LEGAL AID SERVICES, INC.
310 North Fifth Street
Boise, Idaho  83702
(208) 345-0106, ext. 1503
(208) 342-2561 (fax)

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare, *et al.*<br><br>Defendants. | Case No. 1:12-cv-00022-BLW<br><br>**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

The plaintiffs submit this brief in support of their MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, and show this Court:

## I.  BACKGROUND

The plaintiffs are assigned individual Medicaid budgets each year by the Idaho Department of Health and Welfare ("IDHW").  Recently, IDHW told the plaintiffs their individual budgets would be severely reduced—but it will not explain why.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 1

The plaintiffs are Idaho adults with disabling and chronic conditions such as epilepsy, muscular dystrophy, Down's Syndrome, schizophrenia, and developmental disabilities ranging from mild to severe.[1]  Their disabilities are so profound that they qualify for long-term institutional care.  But IDHW has determined that it would cost less for them to live in their own homes or in community settings, and they have chosen that option.  To maintain their health, they require a variety of services, such as a structured home environment with programming to treat their disabilities, community and developmental therapy, and personal supervision.[2]

They have access to these services through the Idaho Medicaid program, a cooperative federal-state program to provide medical assistance to low-income people.  42 U.S.C. §§ 1396–1396w-5.  The Medicaid Act allows states to set up "Home and Community-Based Services" ("HCBS") waiver programs "in response to the fact that a disproportionate percentage of Medicaid resources were being used for long-term institutional care and studies showing that many persons residing in Medicaid-funded institutions would be capable of living at home or in the community if additional support services were available . . . ."  *Ball v. Rodgers*, 492 F.3d 1094, 1098 (9th Cir. 2006).  The State of Idaho participates in Medicaid and has an HCBS waiver to serve adults with developmental disabilities (the "DD Waiver" program),[3] administered by IDHW and defendants Armstrong and Leary ("IDHW" or the "Department").

---

[1] *See* Decl. Drake ¶¶ 14–36 for a summary of the plaintiffs' conditions and circumstances; *see also* Compl. ¶¶ 2–13.

[2] Decl. Drake ¶ 9; Decl. D.W. ¶ 4; Decl. E.B. ¶ 10; Decl. D.B. ¶ 3; Decl. Caso ¶ 10; Decl. R.F. ¶ 2; Decl. Lee ex. B; Decl. C.M. ¶ 3; Decl. Mulkey ¶ 5; Decl. T.P. ¶ 3; Decl. S.S. ¶ 9; Decl. Kotts ex. G; Decl. T.W. ¶ 12.

[3] Decl. Eppink ex. J.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 2

The plaintiffs participate in the Idaho DD Waiver program. The purpose of Idaho's DD Waiver program is "to prevent unnecessary institutional placement, provide for the greatest degree of independence possible, enhance the quality of life, encourage individual choice, and achieve and maintain community integration." IDAPA 16.03.10.700. The Department must get approval from the Centers for Medicare and Medicaid Services ("CMS") for material amendments to the program. *Affiliates, Inc. v. Armstrong*, Nos. 1:09-cv-00149-BLW, 2011 U.S. Dist. LEXIS 86392 at *13 (D. Idaho Aug. 4, 2011) (citing four Ninth Circuit decisions).

The Department annually sets an individualized limit, called a "budget," on the maximum cost of services authorized for each participant. IDAPA 16.03.10.514.01; IDAPA 16.03.13.190. An individual's budget is computed by a budget-setting methodology that IDHW developed[4] and updates at irregular intervals.[5] The methodology is actually just a Microsoft Excel Spreadsheet with formulas that calculate a budget from assessment responses input by a contractor with IDHW,[6] the Idaho Center for Disabilities Evaluation ("ICDE").[7]

After an individual's budget is computed, IDHW mails the individual a notice of his budget amount, via ICDE. The notices do not explain how the budget was computed; rather, they obscurely state: "[u]sing information from the Individual Needs Inventory and a complete case file review conducted by the Regional Independent Assessor, your individual budget is

---

[4] Decl. Eppink exs. F, G-1, G-2, G-3, G-4.

[5] Decl. Larsen ¶ 3, 8.

[6] Decl. Larsen ¶¶ 3, 7–8.

[7] *See* Decl. Larsen ¶ 3.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 3

calculated to be" a certain number of dollars.[8]  Neither the reasons for individual budget reductions nor the budget methodology itself is ever explained.  In fact, IDHW refuses to disclose the spreadsheet or formulas it uses to compute budgets, claiming the formulas are "proprietary"[9] and "trade secrets."[10]  Although participants can administratively appeal their budget, even if they appeal IDHW will not tell them how it computed their budget,[11] and IDHW's hearing officers rule that they have no ability or authority to review the validity of the computations.[12]

The Department changed the budget tool effective July 1, 2011.[13]  Since then, many participants have received notice of severe budget reductions,[14] ranging up to 42% in this case.[15]  Because of these reductions, the plaintiffs will lose access to the services they need to maintain their health.  The harm will be irreparable if not enjoined.[16]

---

[8] *See, e.g.,* Decl. of D.W. ex. B.

[9]  Decl. Kotts ¶ 5 and ex. B.

[10]  Decl. Eppink ex. H (Dec. 13, 2011, letter from Takasugi to Eppink).

[11]  Decl. Eppink ex. H.

[12]  Decl. Eppink ex. I-1 at 7; I-2 at 15; I-3 at 5; I-4 at 9; I-5 at 7 ¶ 6; I-6 at 6 ¶ 4; I-7 at 10; Decl. C.M. ¶ 13 and ex. E at 8.

[13]  Decl. Kotts ¶ 5 and ex. A (noting changes to budget methodology effective July 1, 2011); *cf.* Decl. Larsen ¶ 3, 8.

[14]  *See, e.g.,* Decl. Kotts ¶¶ 4, 13 (noting that 33 of 55 (60%) of Kotts's clients' budget notices since July 2011 have been reductions).

[15]  Decl. T.W. ¶ 25; Decl. D.W. ¶ 9; Decl. E.B. exs. A and B; Decl. D.B. ¶ 4; Decl. Caso ¶ 12; Decl. R.F. exs. A and D; Decl. Kotts ¶ 9; Decl. Lee ¶ 4; Decl. Mulkey ¶ 9; Decl. S.S. ¶ 11.

[16]  *See, e.g.,* Decl. Drake, Ph.D. ¶ 37; Decl. Eggleston, M.D. ¶ 4.

## II.  LEGAL STANDARD

This Court properly issues a TRO or preliminary injunction where irreparable injury to the plaintiff is likely, there are serious questions going to the merits, the balance of hardships tips in the plaintiff's favor, and injunction is in the public interest.  *M.R. v. Dreyfus*, No. 11-35026, 2011 U.S. App. LEXIS 24986 at * 18, 663 F.3d 1100, ___ (9th Cir. Dec. 16, 2011).

However, the plaintiffs need not make an absolute showing of each of those four elements.  Rather, they can overcome a weak showing of one element with a strong showing of another. *Vanguard Outdoor, LLC, v. City of Los Angeles*, 648 F.3d 737, 739–740 (9th Cir. 2011).

## III.  ARGUMENT

**A.     Because IDHW will Not Explain the Budget Reductions, there are Serious Questions Going to the Merits of the Plaintiffs' Procedural Due Process and Medicaid Act Claims.**

### 1.     Procedural Due Process and the Medicaid Act Require IDHW's Budget Notices to Explain the Reasons for Reduction

The IDHW budget notices do not explain the reasons for the budget reductions.  The notices simply state that "[u]sing information from the Individual Needs Inventory and a complete case file review conducted by the Regional Independent Assessor, your individual budget is calculated to be" a certain number of dollars.[17]  Due process requires much more.

Recognizing that public assistance recipients can lose "the very means by which to live" while waiting for an assistance dispute to be decided, the U.S. Supreme Court held over 40 years ago that those recipients must receive adequate notice and a fair hearing before aid

---

[17]  Decl. of D.W. ex. B; Decl. of C.M. exs. C, D; Decl. of Reed Mulkey ex. D; Decl. of Eva Blecha ex. B; Decl. of S.S. ex. A; Decl. of Wendy Kotts ex. I; Decl. of R.F. ex. D; Decl. of T.W. ex. B; Decl. of D.B. ex. A; Decl. of R.P. ex. B; Decl. of Michaele Caso ex. E.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 5

can be taken away from them. *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970); *cf. Rosas v. McMahon*, 945 F.2d 1469, 1474 (9th Cir. 1991) (noting that *Goldberg* applies both to public assistance reductions and terminations). The notice requirement "lies at the heart of due process," *Gray Panthers v. Schweiker*, 652 F.2d 146, 168 (D.C. Cir. 1980), "for if notice is inadequate other procedural protections become illusory," *David v. Heckler*, 591 F. Supp. 1033, 1042 (E.D.N.Y. 1984). Adequate notice, in public assistance cases, must "detail[] the reasons for a proposed termination" sufficiently enough for a recipient to challenge both the application of the law to their factual circumstances and the "factual premises" of the state's action. *Goldberg*, 397 U.S. at 267–268; *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (holding that even a person classified as an enemy combatant is entitled to "notice of the factual basis for his classification").

The Department's DD waiver budget notices are not even as "detailed" as more specific notices that have been held inadequate in other public assistance cases. In *Barnes v. Healy*, parents receiving Aid to Families with Dependent Children ("AFDC") assistance were entitled to a "disregard" of the first $50 of child support that the state collected on their behalf each month. 980 F.2d 572, 575 (9th Cir. 1992). Notices that merely stated that there was no disregard for a month "because any money that was collected was not current support" were constitutionally inadequate, the Court held, because such a "general explanation is nothing more than a conclusory statement, the accuracy of which cannot be determined by the AFDC recipient without a brief statement of its factual underpinnings." *Id.* at 579. The notice gave a parent "no way of determining . . . what information she needs to challenge the agency's determination," forcing her to "respond[] to every possible argument against denial at the risk of missing the

critical one altogether." *Id.* (citation and internal quotation marks omitted). The court remanded for entry of a preliminary injunction requiring more detailed notice. *Id.* at 580.

In a case involving Medicaid, *Rodriguez v. Chen*, the State of Arizona sent notices stating that "medical assistance has been terminated for the person(s) listed below because Carlos Rodriguez is now in a new category for his age and no longer is eligible due to household excess income" and that "your application for medicare premium, coinsurance and deductible expenses under the Qualified Medicare Beneficiary (QMB) program has been denied effective 11/01/94 for the following reason(s): net income exceeds maximum allowable." 985 F. Supp. 1189, 1191–1192 (D. Ariz. 1996). The court held that this notice system did not comply with the Medicaid Act or the Fourteenth Amendment Due Process Clause, as it "is not meaningful because it does not allow the applicant to be fully informed of the case against him or her in order that the unfavorable decision can be adequately contested." *Id.* at 1194 (citing *Goldberg*, 397 U.S. at 266–268). The reasons given in the notices were "so vague in as much as they fail to provide any basis upon which to test the accuracy of the decision." *Id.* at 1194.

The notices in this case state: "[u]sing information from the Individual Needs Inventory and a complete case file review conducted by the Regional Independent Assessor, your individual budget is calculated to be" a certain amount.[18] A very recent case examined notice explanations that refer to a file review. The plaintiff in *Elkins v. Dreyfus* was receiving state-funded cash and medical assistance when he received a notice stating that "[w]e have completed our review of your case. Based on the information we have, you do not meet the SSI disability

---

[18] *See, e.g.,* Decl. of D.W. ex. B.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 7

requirements." No. C10-1366 MJP, 2011 U.S. Dist. LEXIS 86782 at *5 (W.D. Wash. Aug. 5, 2011). The notice did not state what documents were reviewed or what requirements were applied. *Id.* Thus, the court observed, "[i]t is difficult to know how the SSI determination was made, what documents [the agency] may or may not have reviewed or how the agency determined the person was capable of future work." *Id.* at *23–*24. It held that the notice was therefore not meaningful "because it does not allow the recipient to understand the reasons for denial and prepare an appeal." *Id.* at *24. Even a later notice in which the agency attempted to ameliorate deficiencies was held unconstitutional: it stated that "[w]e have determined that your condition is not severe enough to be considered disabled or to keep you from working for 12 months in a row as provided under federal SSI disability standards." *Id.* at *26. The court determined that this, too, was only a conclusory statement and that "[t]he lack of specificity makes it extremely difficult to determine the actual reason for why the recipient fails to meet the SSI standards." *Id.* The court entered a permanent injunction requiring the state to reinstate all those who received notices like those and that only court-approved notices could be sent in the future. *Id.* at *34; *see also Pimentel v. Dreyfus*, No. C11-119 MJP, 2011 U.S. Dist. LEXIS 38378 at *15–*16 (W.D. Wash. Feb. 17, 2011) (issuing preliminary injunction preventing termination of food assistance where notice listing reviewed documents still left it up to recipient to "guess" the reasons for adverse action); *Unthaksinkun v. Porter*, No. C11-0588JLR, 2011 U.S. Dist. LEXIS 111099 at *65, *71–*72, *92 (W.D. Wash. Sept. 28, 2011) (issuing preliminary injunction requiring state to re-enroll plaintiffs for medical assistance and give notice individually explaining adverse actions).

       The notices IDHW sent the plaintiffs in this case are not as detailed as those in *Elkins*.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 8

They merely state that the plaintiffs' budgets were calculated "[u]sing information from the Individual Needs Inventory and a complete case file review conducted by the Regional Independent Assessor."[19]  The notices offer no further explanation.

A constitutional analysis, however, is not even necessary because the Medicaid Act requires this.  Under 42 C.F.R. § 431.206(c), IDHW must give the plaintiffs notice of any action that will affect their assistance. Under 42 C.F.R. § 431.210(b), that notice must contain the "reasons for the intended action."  *See* 42 U.S.C. § 1396a(a)(3).  The IDHW notices contain no reasons for the budget reductions other than a conclusory statement.  The Act also requires that IDHW provide the "specific regulations" that support its action.  42 C.F.R. § 431.210(c).  The citations in IDHW's budget notices are general at best.  Some of the notices[20] refer to I.C. § 66-402(5), defining "developmental disability," to IDAPA 16.03.10.584, containing general eligibility criteria, to IDAPA 16.03.13.190, generally referring to IDHW's secret budget methodology for self-directed participants, and to IDAPA 16.05.03.101, about filing administrative appeals.  A few of the notices also refer to IDAPA 16.03.10.012.14, defining "medical necessity."[21]  None of them even refer to IDAPA 16.03.10.514, which generally refers to IDHW's undislcosed bugeting methodology for traditional DD Waiver participants.  And none refer to the methodology itself, which has never been properly promulgated as a rule.  These

---

[19]  Decl. of D.W. ex. B; Decl. of C.M. exs. C, D; Decl. of Reed Mulkey ex. D; Decl. of Eva Blecha ex. B; Decl. of S.S. ex. A; Decl. of Wendy Kotts ex. I; Decl. of R.F. ex. D; Decl. of T.W. ex. B; Decl. of D.B. ex. A; Decl. of R.P. ex. B; Decl. of Michaele Caso ex. E.

[20]  Decl. D.B. ex. A; Decl. Caso ex. E; Decl. R.F. ex. D; Decl. Lee ex. B; Decl. C.M. exs. C, D; Decl. Mulkey ex. D; Decl. T.P. ex. B;

[21]  Decl. E.B. ex. B; Decl. Kotts ex. H; Decl. S.S. ex. A;

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 9

general references are not sufficient to comply with the Medicaid requirements.  *See Rodriguez*, 985 F. Supp. at 1196.  Procedural due process requires more, too.  *Id.*[22]

Accordingly, there are very serious questions going to the merits on these issues.

### 2. IDHW Cannot Keep Its Individual Budget Methodology a Secret.

The statutory and constitutional problems with the specificity of IDHW's budget notices are only symptoms, however, of a more fundamental problem with its budget-setting scheme.  The DD Waiver budget changes must be based upon discernible standards.  They are not.

For the mere reason that IDHW cloaks its budget-setting methodology as a "proprietary"[23] "trade secret[],"[24] the plaintiffs are likely to prevail in this case.  "[T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error."  *Al Haramain Islamic Found., Inc. v. United States Dep't of the Treasury*, 660 F.3d 1019, 1033 (9th Cir. 2011) (quoting *American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995)).  This principal is long-standing, as the *American-Arab Anti-Discrimination Comm.* court observed: "democracy implies respect for the elementary rights of men . . . and must therefore practice fairness; and fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights."  70 F.3d at 1069 (quoting

---

[22] The notices also limit the grounds of appeal and place the burden of proof on the appellant, in violation of state law and due process.  IDAPA 16.05.03.132 ("[t]he Department has the burden of proof if the action being appealed is to limit [or] reduce . . . benefits"); *Tappen v. IDHW*, 98 Idaho 576, 578, 570 P.2d 28, 30 (1977); *Goldberg*, 397 U.S. at 267–68.  The notices also fail to notify the recipient "[t]hat he may represent himself or use legal counsel, a relative, a friend, or other spokesman," as explicitly required.  42 C.F.R. § 431.206(b)(3).

[23] Decl. Kotts ¶ 5 and ex. B.

[24] Decl. Eppink ex. H (Dec. 13, 2011, letter from Takasugi to Eppink).

*Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring)). The U.S. Supreme Court held that a state utilities commissions valuation methodology violated due process where the method was based in part "upon a principle known only to itself." *West v. Chesapeake & Potomac Tel. Co.*, 295 U.S. 662, 670 (1935).  The Court made clear in *Goldberg* that public assistance recipients must have a chance to confront all the evidence about their cases, noting that "[c]ertain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Goldberg*, 397 U.S. at 270 (quoting *Greene v. McElroy*, 360 U.S. 474, 496-497 (1959)). Despite that the Medicaid regulations plainly require as much, IDHW will not let individuals who contest their budget computations see the Department's math.  42 C.F.R. § 431.242 (requiring Medicaid recipient to be given an opportunity to examine his entire file, to question or refute any evidence, and to establish "all pertinent facts and circumstances").

Moreover, the Medicaid Act also plainly requires IDHW to open its budget-setting methodology to public inspection.  42 U.S.C. § 1396n(j)(5)(D); 42 C.F.R. § 441.472(a).  The Act requires that IDHW base individual budgets "on a methodology that uses valid, reliable cost data, is open to public inspection, and includes a calculation of the expected cost of such services if those services were not self-directed." 42 U.S.C. § 1396n(j)(5)(D).  Yet, IDHW refuses to release anything but heavily redacted and general descriptions of its methodology.[25]  The little

---

[25] Decl. Eppink exs. F, G-1, G-2, G-3, G-4, H; Decl. Kotts ex. B.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 11

information it has released suggests that the underlying cost data is now five years old and that the tool does not make a comparison calculation between the costs of self-directed versus traditional service plans.[26]  Even those who have administratively appealed their computed budgets are not allowed to see the secret formula.[27]

The defendants must also have "procedures to safeguard participants when the budgeted service amount is insufficient to meet a participant's needs." 42 C.F.R. § 441.472(b); 42 U.S.C. § 1396n(c)(2)(A), (j)(2)(A).  Last year, IDHW had some safeguards in place, but last July it eliminated them or sharply limited their availability.  Last July it eliminated the "reconsideration" process, through which participants could have an interdisciplinary team review the individual's budget to determine if it fell outside of the 85% for whom IDHW's methodology allegedly works.[28]  After reconsideration, participants could use the "exception review" process to exceed their assigned budget.  That process is now limited to those requesting High or Intense Supported Living and is no longer available to these plaintiffs.[29]  Previously participants could also negotiate their services and supports if the costs fell outside the assigned budget.[30]  Although IDHW has removed its rule providing for negotiated support plans—and

---

[26] Decl. Eppink exs. G-3, G-4.

[27] Decl. Eppink ex. H.

[28] Decl. Eppink ex. A at 163 (showing former reconsideration process rule in stricken text); Decl. C.M. ¶ 9, ex. E ¶ 3 at 2; Decl. T.P. ¶ 9 and ex. C ¶ 5 at 2; Decl. D.W. ¶ 8 and ex. A.

[29] Decl. Eppink ex. A at 166 (showing redlined amendments to former process).

[30] Decl. Eppink ex. A at 161 (showing former negotiation process in stricken text).

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 12

long ago formally eliminated negotiated budgeting[31]—it still negotiates budgets with select individuals in a sort of off-the-(rule)-books practice.[32]

These safeguards previously worked to mitigate obvious deficiencies in IDHW's budget methodology: a number of these plaintiffs had their budgets effectively adjusted through reconsideration[33] and exception review.[34] The defendants currently lack the required procedure "to adjust a budget when a reassessment indicates a change in a participant's . . . functional status or living situation." 42 C.F.R. § 441.472(e). The remaining safeguard of administrative hearing is meaningless, however, as IDHW's hearing officers routinely state that they have no authority to adjust the budget that IDHW' secret methodology has deemed appropriate.[35] The IDHW

---

[31] Decl. Eppink ex. A at 164 (showing negotiated budget rule, applicable prior to October 1, 2006, in stricken text).

[32] Decl. Kotts ¶ 12 and ex. K.

[33] Decl. Caso ¶ 11; Decl. R.F. ¶ 5 and ex. C; Decl. C.M. ¶ 8 and ex. B; Decl. T.P. ¶ 7; Decl. Scott ¶ 6; Decl. T.W. ¶ 19; Decl. D.W. ¶ 9

[34] Decl. D.B. ¶ 6 and ex. C; Decl. Caso ¶ 11; Decl. S.S. ¶ 10; Decl. T.W. ¶ 19.

[35] Decl. Eppink ex. I-1 at 7 ("It seems that Joyce's real complaint is with the formula the Department uses to calculate the budgets for participants under the Self Directed option. Hearing officers are not given the authority to overrule, change or invalidate Department policies or rules. . . . . [T]he hearing officer cannot direct the Department to apply a different formula in calculating [redacted] budget."); I-2 at 15 ("The Hearing Officer possesses no authority (or the technical ability) to review the budgeting algorithm adopted by the Department. . . . The Hearing Officer may only determine whether the Department followed the applicable rules and regulations in establishing the budget, and whether its determination was based on accurate information."); I-3 at 5 (stating merely that "[t]here has been no showing of error"); I-4 at 9 (requiring appellant to produce evidence "indicating that there are necessities not provided for in the budgeting methodology" despite that the budget methodology is secret); I-5 at 7 ¶ 6; I-6 at 6 ¶ 4; I-7 at 10 ("The Hearing Officer has no authority to invalidate the statistical model adopted by the Department . . . or, by extension, any changes or adjustments made to that model from year-to-year."); Decl. C.M. ¶ 13 and ex. E at 8.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 13

Regional Medicaid Services Manager told one service coordinator that the service coordinator's clients simply were not going to win their hearings because IDHW rules no longer allow hearing officers to approve support plans over assigned budgets.[36]

In August 2011 IDHW affirmatively represented to the federal supervising agency—the Centers for Medicare and Medicaid Services ("CMS")—that it still had these safeguards in place, despite removing them as of July 2011.[37] Its waiver amendment application, submitted on about August 25, 2011, stated that "[p]articipants who believe that their assigned budget does not accurately refelct their needs may ask for a reconsideration"[38] and that, for self-directed services participants, "[t]he first step in this process is to request a reconsideration."[39] The defendants have sharply limited the process for adjusting a budget for a change in condition,[40] but told CMS that process still includes a reconsideration procedure, even though it no longer does.[41]

The information in IDHW's recent waiver amendment application about its budget setting methodology is also false. It told CMS that the "[b]udget setting methodology is documented publicly through Administrative rulemaking process and published [sic] Idaho Administrative Code."[42] The Idaho Administrative Code only refers to the budget setting

---

[36] Decl. Kotts ¶ 7.

[37] Decl. Eppink. ex. A, B, C, D (containing temporary rules effective July 1, 2011).

[38] Decl. Eppink ex. J at 69.

[39] Decl. Eppink ex. J at 87.

[40] Decl. Eppink ex. A at 164, B at 198.

[41] Decl. Eppink ex. J at 69.

[42] Decl. Eppink ex. J at 86.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 14

methodology, it hardly documents it. It says, "[u]sing . . . specific participant factors, the budget-setting methodology will correlate a participant's characteristics with the participant's individualized budget amount, so participants with higher needs will be assigned a higher individualized budget amount."[43] The defendants also told CMS that the methodology "is reviewed with each participant, during the initial and annual level of care assessment."[44] Although some may be aware that IDHW *has* a budget setting methodology, it is never explained to them,[45] and even those in administrative appeals about their budget amount are not allowed to inspect the methodology.[46] Even if IDHW were to apply today for a waiver amendment correcting its misrepresentations to CMS, because the changes would result in a reduction of services to the plaintiffs, it could not impose the changes retroactively. *Affiliates, Inc.*, 2011 U.S. Dist. LEXIS 86392 at *14–*15.

The budgeting methodology is required to be published in the Idaho Administrative Code. Idaho's Administrative Procedure Act requires an agency's policies, procedures, and practices to be adopted only after public notification, disclosure of the complete text of the proposal, and public comment. I.C. §§ 67-5201(19), 67-5221, 67-5222. All adopted rules must be published in the Idaho Administrative Code. I.C. § 67-5204. If an agency does not follow this process, the resulting policy, procedure, or practice is voidable. I.C. § 67-5231. IDHW has not

---

[43] Decl. Eppink ex. B at 198, A at 164.

[44] Decl. Eppink ex. J at 86.

[45] Decl. Larsen ¶ 7; Decl. D.W. ¶ 7; Decl. E.B. ¶ 12; Decl. D.B. ¶ 8; Decl. Caso ¶ 10; Decl. R.F. ¶ 7; Decl. Kotts ¶ 14; Decl. C.M. ¶ 9; Decl. Mulkey ¶ 8; Decl. Scott ¶ 6; Decl. S.S. ¶ 12.

[46] Decl. Eppink ex. H; Decl. Kotts ¶ 5 and ex. B.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 15

published the methodology or allowed public comment through the rulemaking process, either upon initially adopting its budget setting methodology or making changes to it last year.[47]

The changes IDHW made last year to the methodology plainly violate the Medicaid Act as well.  A state cannot impose more restrictive standards, methodologies, or procedures as part of any Medicaid wavier program until the state has established a fully operational American Health Benefit Exchange under 42 U.S.C. § 18031.  42 U.S.C. § 1396a(gg)(1).  Not only has IDHW stripped its reconsideration, plan negotiation, budget re-evaluation, and exception review procedures substantially,[48] it has adjusted its budget methodology resulting in dramatic individual budget cuts.[49]  The defendants expressly intended their changes to the methodology and related practices to restrict assigned budgets and save $2,000,000.[50]  As IDHW's Adult Developmental Disabilities Services Manager for southwestern Idaho said, "it's a different world now."[51]  Idaho has not established an operational Health Benefit Exchange and has reportedly requested an extension until 2015.[52]  Until then, IDHW cannot adopt a more restrictive individual budgeting methodology or eliminate its standards that protect participants.

---

[47] Decl. Kotts ¶ 5 and ex. A (noting changes to budget methodology effective July 1, 2011); *cf.* Decl. Larsen ¶ 3, 8.

[48] Decl. Eppink ex. A at 161, 163, 164, 166, ex. B at 198.

[49] Decl. Kotts ex. B.

[50] Decl. Eppink ex. A at 125 ("The estimated cost savings for these rule changes are . . . $2,000,000 through refinements to the developmental disabilities (DD) individual budget modification process . . . ."); ex. B at 191.

[51] Decl. Kotts ¶ 7.

[52] Audrey Dutton, "Idaho asked feds to extend health exchange deadline," *Idaho Statesman*, January 13, 2012.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 16

In summary, IDHW cannot explain to participants why their budgets have been reduced because IDHW has not complied with the federal and state laws that require it to adopt a public and reliable budget methodology. The Medicaid Act requires IDHW to open its methodology to public inspection, to use reliable cost data, and to calculate comparisons between self-directed and traditional-plan services, yet IDHW still contends that it is a "proprietary" "trade secret." The Act also requires IDHW to keep safeguards in place to protect individual participants, yet IDHW gutted those protections last July. The Act also prohibits IDHW from making its methodology more restrictive until Idaho establishes a Health Benefit Exchange. Instead IDHW has used the secret methodology to implement $2,000,000 in cost savings without actually allowing anyone to review the changes, in violation of the Idaho Administrative Procedure Act.

Because IDHW's methodology cannot comply with preemptive federal law, the plaintiffs are very likely to succeed in obtaining a permanent injunction requiring compliance. And because IDHW has never published notice of rulemaking about its budget setting methodology, or for that matter even disclosed it,[53] the plaintiffs are very likely to succeed in having it voided.

**B.     These Substantial Reductions in Care will Irreparably Harm the Plaintiffs.**

As the Supreme Court noted in *Goldberg*, public assistance meets a "brutal need" of these plaintiffs. *Goldberg*, 397 U.S. at 261. Irreparable injury is sufficiently likely when reductions in a person's Medicaid assistance may deny them needed medical care or exacerbate the risk of institutionalization. *M.R.*, 2011 U.S. App. LEXIS 24986 at *38, *28, 663 F.3d at ___.

All of the plaintiffs are already experiencing, or will imminently experience, substantial

---

[53] Decl. Eppink ex. H (Dec. 13, 2011, letter from Takasugi to Eppink); Decl. Kotts ¶ 5 and ex. B.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 17

reductions in the services needed to maintain their health and safety.[54]  This increases the risk of institutionalization for the plaintiffs, placing some of them at serious risk of removal from the home and community settings they have chosen,[55] and even at risk of serious injury to themselves or others, or death.[56]  These grevious risks accompany their inability to effectively prepare for their administrative hearings, which will be meaningless without an injunction.[57]

No other remedy is available to these plaintiffs on their due process, declaratory judgment, and Medicaid Act claims because of the Eleventh Amendment. *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 952 (9th Cir. 2009), *cert. granted on other grounds*, 131 S. Ct. 992 (2011).  Indeed, "[a]n injunction barring the termination of benefits unless and until [IDHW] sends out proper notices that satisfy *Due Process* is the only equitable remedy that makes sense" on the due process claims.  *Elkins*, 2011 U.S. Dist. LEXIS at *29–*30.

**C.     Life and Health Outweigh Uncertain Cost Savings for IDHW.**

A state's claim of budgetary hardship does not outweigh the harm to a person with

---

[54]  Decl. Drake, Ph.D. ¶¶ 10–13 (explaining importance of maintaining services), ¶¶ 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 34, 36; Decl. E.B. ¶ 14; Decl. D.B. ¶ 10; Decl. Caso ¶¶ 5, 14–15, ex. A at 9; Decl. R.F. ¶ 9; Decl. Kotts ¶¶ 8, 10, ex. F at 7, 10, ex. I at 7, 10; Decl. Larsen ¶ 5; Decl. Lee ¶¶ 6–7, 9–10, ex. A at 8, ex. E at 8; Decl. C.M. ¶¶ 14–15 and ex. F; Decl. Mulkey ¶ 10 and ex. F at 10; Decl. T.P. ¶¶ 4, 13; Decl. Scott ¶ 3; Decl. S.S. ¶ 13; Decl. T.W. ¶¶ 6, 15, 20–22.

[55]  Decl. Drake, Ph.D. ¶¶ 37, 14–36; Decl. Powell, M.D. ¶ 9; Decl. Hodges, D.O. ¶ 2–3; Decl. E.B. ¶¶ 9, 13, 14, and exs. C at 8, D at 9, E at 9; Decl. Caso ¶¶ 3–4, 12, ex. A at 9; Decl. C.M. ¶¶ 12, 15 and ex. F; Decl. Mulkey ¶ 4; Decl. Scott ¶¶ 2, 7–8; Decl. D.W. ¶¶ 11, 13, ex. A.

[56]  Decl. Powell, M.D. ¶¶ 5–7; Decl. Eggleston, M.D. ¶ 4; Decl. Garges, M.D. ¶ 4; Decl. Williams, M.D. ¶ 3–4; Decl. C.M. ¶ 14; Decl. T.P. ¶ 5; Decl. Scott ¶¶ 3, 8; Decl. S.S. ¶ 3; Decl. T.W. ¶ 10; Decl. Drake, Ph.D. ¶ 17, 14–36.

[57]  Decl. D.B. ¶ 9; Decl. Kotts ¶ 14; Decl. Mulkey ¶ 12; *see also* Decl. Lee ¶ 4; Decl. R.F. ¶ 8; Decl. T.P. ¶ 11.

chronic, disabling conditions forced to forego necessary health care. *Blum v. Cladlwell*, 446 U.S. 1311, 1316 (1980) ("[O]n the other side of the balance are the life and health of . . . [respondents] who are aged, blind, or disabled and unable to provide for necessary medical care because of lack of resources. . . . The balance of equities therefore weighs in favor of the respondents."). Indeed, the Ninth Circuit has "several times held"—including last month—"that the balance of hardships favors beneficiaries of public assistance who may be forced to do without needed medical services over a state concerned with conserving scarce resources." *M.R.*, 2011 U.S. App. LEXIS 24986 at *38, 663 F.3d at ___. Enjoining these cuts may in fact conserve IDHW's resources by preventing institutionalization or more costly care as the plaintiff's conditions deteriorate under inadequate service plans.[58] "The government must be concerned not just with the public fisc but also with the public weal." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). The balance of equities tips sharply in favor of the plaintiffs.

D. **Safeguarding the Health and the Safety of the Plaintiffs and Those Around Them is the Paramount Public Interest.**

Similarly, "[s]tate budgetary considerations do not . . ., in social welfare cases, constitute a critical public interest that would be injured by the grant of preliminary relief. In contrast, there is a robust public interest in safeguarding access to health care for those eligible for Medicaid, whom Congress has recognized as 'the most needy in the country.'" *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. Cal. 2009) (quoting *Schweiker v.. Hogan*, 457 U.S. 569, 590, 102 S. Ct. 2597, 73 L. Ed. 2d 227, (1982)). The plaintiffs pose a risk

---

[58] Decl. Drake ¶¶ 37, 12–13, 14–36; Decl. Powell, M.D. ¶¶ 5–7; Decl. Eggleston, M.D. ¶ 4; Decl. Garges, M.D. ¶ 4; Decl. Williams, M.D. ¶ 3–4; Decl. C.M. ¶ 14; Decl. T.P. ¶ 5; Decl. Scott ¶¶ 3, 8; Decl. S.S. ¶ 3.

BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION – Page 19

of harm to themselves and the public if their services are so drastically reduced.[59] The defendants' compliance with federal law is also always in the public's interest. *Cal. Pharmacists Ass'n*, 563 F.3d at 853. The public interest, accordingly, strongly favors the plaintiffs' request.

**E.     No Bond Should be Required of These Indigent Plaintiffs.**

In cases involving the public interest, no bond or a nominal bond is appropriate when granting a TRO or preliminary injunction. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005). This is so in Medicaid cases even where the plaintiffs are Medicaid providers rather than the actual aid recipients, as in this case. *Santa Rosa Mem. Hosp. v. Maxwell-Jolly*, 380 Fed. Appx. 656, 658 (9th Cir. 2010). Especially considering the indigency of the plaintiffs as well,[60] the Court should not set a bond for the preliminary relief they seek.

## IV.  CONCLUSION

WHEREFORE, the plaintiffs respectfully request that this Court enter an order granting their motion for a temporary restraining order and a preliminary injunction.

DATED this 19th day of January, 2012, at Boise, Idaho.

IDAHO LEGAL AID SERVICES, INC.

/s/ Richard Alan Eppink

Attorneys for Plaintiffs

---

[59] Decl. Drake ¶¶ 37, 14–36; Decl.   Decl. T.W. ¶ 25; Decl. D.W. ¶ 9; Decl. E.B. exs. A and B; Decl. D.B. ¶ 4; Decl. Caso ¶ 12; Decl. R.F. exs. A and D; Decl. Kotts ¶ 9; Decl. Lee ¶ 4; Decl. Mulkey ¶ 9; Decl. S.S. ¶ 11.

[60] See the *in forma pauperis* applications. *See also* Decl. Drake ¶ 8.