LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

MICHAEL S. GILMORE, ISB #1625
KATHERINE TAKASUGI, ISB #5208
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:     (208) 334-4130
Facsimile:      (208) 854-8073
mike.gilmore@ag.idaho.us
kathy.takasugi@ag.idaho.gov
      Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W.; *et al.*;<br>                            Plaintiffs,<br>vs.<br>RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare; PAUL LEARY, in his official capacity as Medicaid Administrator of the Idaho Department of Health and Welfare; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE, a Department of the State of Idaho,<br>                            Defendants. | Case No. 1:12-cv-00022-BLW<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER, DKT. NO. 4** |

      Defendants, by and through their counsel of record, Michael S. Gilmore and Katherine Takasugi, Deputy Attorneys General, hereby oppose Plaintiffs' Motion For Temporary Restraining Order (the "TRO Motion"), Dkt. No. 4.[1]  Defendants note at the outset that Plaintiffs are seeking "[a] mandatory injunction [that] goes well beyond simply maintaining the status quo *pendente lite*", which is "particularly disfavored."  *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citations and internal punctuation omitted).

---

[1]  Dkt. No. 4 was captioned as a Motion for Temporary Restraining Order and Preliminary Injunction.  It is Defendants' understanding that only the TRO is at issue in this stage of the litigation.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TRO, DKT. NO. 4 - page 1

## I. PRELIMINARY JURISDICTIONAL ISSUE REGARDING IDHW

The structure of the United States Constitution precludes assertion of unconsented Federal jurisdiction over the Idaho Department of Health and Welfare ("IDHW") as a Defendant. "Sovereign immunity principles enforce an important constitutional limitation on the power of the federal courts.  For over a century now, this Court has consistently made clear that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States." *Sossamon v. Texas*, 563 U.S. –, –, 131 S.Ct. 1651, 1657-1658 (2011) (citations and internal punctuation omitted).

Even if Article III's judicial power extended to IDHW, it is an agency or arm of the State of Idaho and thus is not a person who may be sued under 42 U.S.C. § 1983.  *E.g.*, *Flint v. Dennison*, 488 F.3d 816, 824-825 (9th Cir. 2007), *cert. denied*, 522 U.S. 1097, 128 S.Ct. 882 (2008), citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 2312 (1989).

Defendants Armstrong and Leary do not contest Federal jurisdiction to hear claims for injunctive and declaratory relief against them in their official capacities.  They do, however, contest jurisdiction over any claims that would provide monetary relief against them in their official capacities.  *Ass'n of American Physicians & Surgeons v. Brewer*, 494 F.3d 1145, 1146, *amended* 494 F.3d 1056 (9th Cir. 2007), citing *Will*, 491 U.S. at 71, 109 S.Ct. at 2312, for the principle that State officers are immune from suit for monetary relief in their official capacities.

## II. SUMMARY OF THE FACTS AND LEGAL BACKGROUND

Before reviewing the facts, Defendants offer some background about the law governing administration of Medicaid Enhanced Plan Benefits.  IDHW's rules on the subject are found at IDAPA 16.03.10.000 *et seq.*[2]  IDHW rules for adults eligible for Developmental Disability (DD)

---

[2] IDAPA is an acronym for Idaho Administrative Procedure Act.  Under Idaho law, agency rules are centrally published by an office known as the Administrative Rules Coordinator.  Idaho Code § 67-5203 (2011 Supp.).  The rules cited above are found at http://adminrules.idaho.gov/rules/current/16/0310.pdf.  Under the IDAPA numbering system, "16" is the agency code for IDHW, "03" is the title, and "10" is the chapter for Medicaid Enhanced Plan Benefits.  Individual rules have three-digit numbers and may have subdivisions.  All references to these rules will be to the 2011 codification.

services provide for setting an individual budget for DD and other services based upon measurement of the participant's functional abilities, behavioral limitations, and medical needs. IDAPA 16.03.10.514.01. Persons who qualify for individual Medicaid assistance can qualify for DD and other assistance that may be, but is not necessarily, a mix of funds for recurring needs (for example, medications or personal care services) and funds for non-recurring (or least not annually recurring) needs for items like durable medical equipment (e.g., wheelchairs) or home improvements like ramps.[3] One Plaintiff had a budget in effect for the 2010-2011 Plan Year that included items for non-recurring expenses like ramps, etc. Declaration of Elaine Ellison, ¶¶ 2-7.

Given this background, Defendants accept Plaintiffs' allegations that:

- Plaintiffs are twelve persons receiving social welfare benefits called individual Medicaid budgets from a mix of Federal and State funds that IDHW administers under Federal and State statutes commonly referred to as Medicaid Acts.

- Plaintiffs participate in IDHW's Bureau of Developmental Disability (DD) Services program. At their most recent assessment Plaintiffs met the annual eligibility requirements for DD services and qualified for individual Medicaid budgets because they had various medical or developmental conditions that do not allow them to live independently. Plaintiffs' eligibility for services is not at issue. Plaintiffs have taken issue with the amounts of their calculated budgets.

- Plaintiffs' individual Medicaid budgets are derived in part from spreadsheets that contain formulas that use certain constants and variables to produce a "calculated budget" that is a floor (but not a ceiling) for determining the "assigned budget" that will become an individual Medicaid budget. Moneys for non-recurring items may be authorized in addition to those shown in the calculated budget.

---

[3] Defendants generally describe the program in the footnoted sentence above to illustrate the kinds of issues that may by considered in determining benefits. Medications can be included in a Plan of Care, IDAPA 16.03.10.013.09, including plans for adults living in non-institutionalized settings, 16.03.10.703.01.a.iii. So can personal assistance services, 16.03.10.703.01.b, and durable medical equipment, 16.03.10.010.38 and 16.03.10.513.03.a. Wheelchairs and ramps are among the expenditures for durable equipment specifically mentioned in the rules. 16.03.10.585.02 and 16.03.10.703.06.

- When the Complaint and later the TRO Motion were filed, IDHW had not provided Plaintiffs with the spreadsheet constants and variables showing any individual Plaintiff's calculated budget.  IDHW contends that the spreadsheets, formulas, constants and variables are exempt from disclosure under Idaho's Public Records Laws.  See Eppink Declaration, Dkt. 5, ¶¶ 9-12; Ex. G-1 through G-4, Dkts. 5-7 through 5-10.

IDHW has since conditionally offered counsel for Plaintiffs access to print-outs of the spreadsheets showing the constants and variables underlying each Plaintiff's calculated budget together with an opportunity to meet and obtain further explanation of the numbers in the spreadsheet.  The condition of the offer is that Counsel for Plaintiffs and every person with whom Counsel for Plaintiffs shares the information will sign a non-disclosure agreement to preserve the confidentiality of the information that IDHW has asserted under Idaho law.  See Declaration of Katherine Takasugi (Takasugi Dec.) and Exhibits A-D to her Declaration.

### III.  STANDARDS FOR ISSUING A TRO

"The standard for issuing a [TRO] is identical to the standard for issuing a preliminary injunction."  *NML Capital, Ltd. v. Spaceport Systems Intern., L.P.* 788 F.Supp.2d 1111, 1117 (C.D.Cal. 2011) (citations and internal punctuation omitted).  Usually the four-part standard is:

> To obtain a preliminary injunction, a plaintiff "must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter* [*v. Natural Resources Defense Council. Inc.*], 555 U.S. [7,] 20, 129 S.Ct. 365 [374 (2008)].

*M.R. v. Dreyfus*, 663 F.3d 1100, 1107-1108 (9th Cir. 2011) (bracketed numbering added).

However, when a Plaintiff asks for a mandatory injunction,[4] more is involved.  As the

---

[4]     In *F.T.C. v. Neovi, Inc.*, 604 F.3d 1150, 1160 (9th Cir. 2010), the Court turned to Black's Law Dictionary to define prohibitory and mandatory injunctions:  "See Black's Law Dictionary 855 (9th ed. 2009) (defining 'prohibitory injunction' as an injunction that 'forbids or restrains an act,' and 'mandatory injunction' as an injunction that 'orders an affirmative act or mandates a specified course of conduct')."  Plaintiffs' TRO Motion requests orders for affirmative acts or courses of conduct, *e.g.*, an order for Defendants to "continue or ***restore*** … Medicaid services" until Defendants "***first provide*** … notice,", TRO Motion, ¶ 1; for an order for Defendants "***to make publicly available*** the methodology" and to allow plaintiffs "***to inspect all materials*** in their own files", ¶ 2; and an order for Defendants "***to reinstate*** the level of services," ¶ 3. Dkt. 4 (emphasis added).  These are verbs that require future actions, not preservation of the status quo.

Court for the Western District of Washington summarized the precedents:

> Courts are generally more cautious about issuing mandatory preliminary injunctions. Such relief is subject to a heightened scrutiny and should not be issued unless the facts and the law clearly favor the moving party. A strong showing is required both as to the likelihood of success on the merits and the balance of harms.

*Requa v. Kent School Dist. No. 415*, 492 F.Supp.2d 1272, 1277 (2007) (citations and internal punctuation omitted).

## IV. OPPOSITION TO THE TRO ON THE MERITS

### A. The Court Should Deny Paragraph 1 of Plaintiffs' Motion for a TRO Because Defendants Have Now Given Plaintiffs' Counsel a Procedure to Access the Information that Plaintiffs Contend They Have a Right to Examine

The first substantive paragraph of the TRO Motion asks for an order to Defendants to (1) "continue or restore the plaintiffs' Medicaid services … as provided in the Individual Support Plans before the last … budget assignment notice sent to them" and to prevent Defendants from (2) "reducing or terminating Medicaid services … based on the most recent assigned budget limits" unless Defendants (3) "first provide adequate advance notice … and the opportunity for a fair hearing prior to the reduction or termination of services." TRO Motion, Dkt. 4, page 2.[5]

Parts (1) and (2) of this paragraph ask for substantive relief – "continuing or restoring … services" and a prohibition against "reducing or terminating … services" — while part (3) focuses in part on procedural relief of "notice" and "opportunity for hearing" before referring again to substantive relief against "reduction or termination of services." Defendants first address the procedural issues of notice and hearing before the issue of substantive relief.

    1.    <u>Notice and Opportunity for Hearing.</u> Since the TRO Motion was filed, Defendants conditionally offered to provide the numerical data that Plaintiffs describe at page 3 ("The methodology is … a Microsoft Excel Spreadsheet with formulas") and page 4 ("the spreadsheet or formulas [IDHW] uses to compute budgets") of their TRO Brief, Dkt. 5-1. Takasugi Dec. and

---

[5] As an aside, Defendants note that this paragraph of the TRO Motion does not clarify whether it is asking that IDHW not be allowed to reduce a budget formerly in place, that included one-time expenditures for home improvements like ramps. If Plaintiffs continue to pursue their Motion for a TRO after receiving this Opposition, Defendants will ask for clarification on the scope of this request.

Exhibits A-C.  As noted in the Declaration, this offer was made to all Plaintiffs, regardless of the stage of their administrative process — before, during or after a contested case hearing and decision.  See Declaration of Sarah Spaulding regarding Plaintiffs' procedural status.  Plaintiffs appear to have rejected this offer.  Takasugi Dec., Ex. D.

If Plaintiffs had accepted Defendants' offer, that information, and the opportunity for follow-up discussions, would have satisfied the following procedural requirements of the Medicaid Regulations, 42 C.F.R. § 431.242[6] (2011), cited at TRO Brief, Dkt. 4-1, page 11:

> **§ 431.242.  Procedural rights of the applicant or recipient.**
>
> The applicant or recipient, or his representative, must be given an opportunity to —
>
> (a)   Examine at a reasonable time before the date of the hearing and during the hearing:
>
> (1)   *The content of the applicant's or recipient's case file*; and
>
> (2)   *All documents and records to be used by the State* or local *agency* or the skilled nursing facility or nursing facility *at the hearing*;
>
> (b)   Bring witnesses;
>
> (c)   *Establish all pertinent facts and circumstances*;
>
> (d)   Present an argument without undue interference; and
>
> (e)   *Question or refute any testimony or evidence, including opportunity to confront and cross-examine adverse witnesses*.

Emphasis added.  Had Plaintiffs accepted Defendants' offer, the matter of Plaintiffs' § 431.242 procedural rights would have become moot.  Now, however, more analysis is necessary.

Defendants contend that the formula and variables that they have offered to provide to Plaintiffs' counsel are confidential and not subject to disclosure under Idaho's Public Records Law.  See Dkt. 5-7, pages 1-4, and in particular page 4, the November 11, 2011 letter of Jan Hanke, IDHW Public Records Coordinator.  Given this, it is reasonable for IDHW to ask Plaintiffs' attorney and those with whom he shares the information to sign a confidentiality agreement before the information is disclosed.

---

[6]   Section 431.242 is part of the following organization of the Code of Federal Regulations:  Title 42. Public Health, Chapter IV. Centers for Medicare & Medicaid Services, Department of Health and Human Services, Subchapter C. Medical Assistance Programs, Part 431. State Organization and General Administration.

The issue here is not whether this Court would issue a protective order as a condition of turning over these data if the Medicaid budgets were being litigated before this Court; the issue is whether the Due Process Clause or § 431.242 forbids IDHW from requiring a confidentiality agreement before doing so.  Defendants cannot find any cases on point, but analogous case law suggests that requiring such a confidentiality agreement is not a due process violation.  For example, in civil litigation in Federal Court, "courts have consistently granted protective orders that prevent disclosure of many types of information, such as … medical and psychiatric records confidential under state law." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) (citations and internal punctuation omitted).  Also, *United States v. W. R. Grace*, 401 F.Supp.2d 1093, 1101 (D.Mont. 2005) (Court could protect due process rights of access to information by conditioning disclosure of medical records upon a strong protective order).  Similar practices have been followed in State administrative agencies.  *Great Falls Tribune v. Montana Public Service Com'n*, 319 Mont. 38, 56, 82 P.3d 876, 887 (Mont. 2003) (if agency finds information is a trade secret, secrecy can be preserved through reasonable means, including protective orders and ordering persons involved in the litigation not to disclose an alleged trade secret without prior court approval).

  2. <u>Request for Substantive Relief.</u>  As noted earlier, TRO Motion ¶ 1 requested "restoration" of services or prevention from "reducing or terminating" services, *i.e.*, a substantive outcome for a claimed failure to give adequate notice and opportunity for hearing.  Dkt. 4, page 1.  This is not an appropriate remedy for a claimed failure to provide processes that are due.  "[T]he appropriate remedy for the deprivation of due process rights is to order the process which was due." *Levine v. City of Alameda*, 525 F.3d 903, 906 (9th Cir. 2008), citing *Brady v. Gebbie*, 859 F.2d 1543, 1551 (9th Cir. 1988), *cert. denied* 489 U.S. 1100, 109 S.Ct. 1577 (1989).  "In general, however, the remedy for a denial of due process is due process." *University of Texas Medical School at Houston v. Than*, 901 S.W.2d 926, 933 (Tex. 1995), citing *Perry v. Sindermann*, 408 U.S. 593, 603, 92 S.Ct. 2694, 2700-01 (1972) (upon proof of protected interest, professor whose contract was not renewed is not entitled to reinstatement but to hearing comporting

with due process).

At this stage of the case, neither the Court nor the parties can know the outcome of an administrative hearing that would consider the additional information that can be made available to Plaintiffs. Prejudging the outcome of possible hearings by "restoring" services or preventing "reducing or terminating" services before such hearings are held is a remedy far beyond ordering the processes that might be due and is inconsistent with the processes that are due under the Federal Regulations. See footnote 9, page 16, *infra*.

3.      Summary.  Defendants ask the Court to deny Paragraph 1 of the TRO Motion on the merits because Defendants are not now denying Plaintiffs access to relevant information that they contend is necessary for their administrative processes before IDHW, but are reasonably conditioning disclosure on signing a confidentiality agreement. Plaintiffs have made no heightened showing on the facts and law that they meet the four TRO factors for a mandatory injunction:  (1) Plaintiffs are not likely to succeed on the merits, especially where they ask for substantive relief in addition to procedural relief for an allegation of denial of procedures due to them. (2) Plaintiffs will not suffer irreparable harm; in fact, they can have access to the information by accepting Defendants' reasonable offer.  (3) The equities do not favor Plaintiffs when they can receive the information they request by accepting a confidentiality agreement.  (4) The public interest is in preserving the confidentiality of information protected from disclosure by Idaho law and in following the processes quoted in footnote 9, *infra*.

**B.    The Court Should Deny Paragraph 2 of Plaintiffs' Motion for a TRO Because Part of It Duplicates Paragraph 1 and the Rest of It Is Not Cognizable Under § 1983**

The second substantive paragraph of Plaintiffs' TRO Motion asks for an order to Defendants (1) "to make publicly available the methodology the defendants use … to compute individual budgets for the plaintiffs and other waiver participants," and (2) "to provide the plaintiffs with an opportunity to inspect all materials in their own files maintained by the defendants or their contractors, including the actual spreadsheets and formulas used to compute their individual budgets in this and prior years sufficiently in advance of any hearing concerning their budget or

waiver services." Dkt. 4, page 2.

Part (2) of this paragraph is similar to Paragraph 1 of the TRO Motion and is not further discussed. Part (1) is different: It requests public disclosure of additional information, not disclosure to Plaintiffs. The simple answer to Part (1) is that IDHW's methodology is already publicly available. See Dkt. 5-6 (Summary of Statistical Modeling Methodology of the Idaho Medicaid Adult DD Individualized Budget); Dkt. 5-8, pp. 3-5 (Overview of Methodology and Individualized Budget Calculations); Dkt. 5-9 (Adult Development Disabilities Individualized Budget Model Analysis); Dkt. 5-10 (Idaho Medicaid Adult DD Individual Budget Review Analysis). Plaintiffs argue that this documentation is not good enough, saying: "[T]he Medicaid Act also plainly requires IDHW to open its budget-setting methodology to public inspection. 42 U.S.C. § 1396n(j)(5)(D); 42 C.F.R. § 441.472(a)." TRO Brief, Dkt. 4-1, page 11. The issue then becomes whether Plaintiffs may pursue the "public availability" prong of paragraph (2) by arguing that what is publicly available is not good enough.

1.   Threshold Jurisdictional Issue: Standing. If Plaintiffs obtain the information they seek through a confidentiality agreement, or barring that, through an order of this Court, their personal interests in obtaining the information would be satisfied. Would they then, after receiving the information or obtaining a Court order giving them a right to receive the information, have standing to pursue a claim regarding public availability? The case law indicates not.

Standing is a threshold issue that must be addressed before the merits. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010). Standing requires proof of an injury in fact that (1) is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) is fairly traceable to the challenged action of the defendant, and (3) is likely, as opposed to merely speculatively, to be redressed by a favorable decision. *Id* (citation omitted).

If Plaintiffs can obtain the information, they will not satisfy the first criterion. They will have no injury in fact because they will have the information that they want to be made publicly available. Thus, they would lack standing and could not pursue the public availability issue.

2.   *Blessing* Analysis. If Plaintiffs had standing, that would not mean that they have

a private right of action to demand public availability of the information. Instead, the individual public availability provision at issue must be examined to determine whether it creates a private right enforceable under § 1983. See *Blessing v. Freestone*, 520 U.S. 329, 343-344, 117 S.Ct. 1353, 1361 (1997) (a statutory requirement that a State's Aid to Families with Dependent Children program be in substantial compliance with Federal law "was not intended to benefit individual[s]" and "does not constitute [an individually enforceable] federal right"; it "is simply a yardstick for the Secretary to measure the systemwide performance").

Section 1396n of the Medicaid Act, which Plaintiffs cite in their TRO Brief, has over 11,000 words and is titled "Compliance with State plan and payment provisions." It has 85 provisions for Secretarial approval, waiver, receipt of information from the States, etc. Its subdivisions have generated numerous cases about which of them create privately enforceable rights under § 1983 and which do not. *Compare Ball v. Rodgers*, 492 F.3d 1094, 1107-11 (9th Cir. 2007) (§§ 1396n(c)(2)(C) and 1396n(d)(2)(C) create privately enforceable rights regarding certain waiver services) *with Clayworth v. Bonta*, 295 F.Supp.2d 1110, 1126 (E.D.Cal. 2003) (no private right to enforce § 1396n(b)(4) requiring State plan to be consistent with access, quality, and efficient and economic provision of covered care and services), *rev'd on other grounds*, 140 Fed.Appx. 677 (9th Cir 2007). Defendants cannot find any cases addressing whether any part of subsection (j) creates a private right enforceable under § 1983, but the common thread in these kinds of cases appears to turn on whether the statutory provision at issue provides a specific benefit to the individual (then it is enforceable under § 1983) or whether it is part of a general direction to the State (then it is not).

Let us review subsection 1396n(j)(5). It provides definitions for subsection (j)(2), which authorizes Secretarial approval of State self-directed personal services assistance programs. Subsection (j)(5) defines five criteria such a plan and budget must have with respect to a participant: (A) Self-direction (the participant may exercise choice and control over the budget), (B) Assessment of needs (self-explanatory), (C) Service plan (the service plan is built upon the participant's capacities and is based upon required services and supports), (D) Service budget (set forth in full

below), and (E) Application of quality assurance and risk management (self-explanatory). Sub-paragraph (j)(5)(D), cited by Plaintiffs as the source of the requirement that IDHW must "open its budget-setting methodology to public inspection" more than it already has, provides:

> (5)  For purpose of this section, the term "approved self-directed services plan and budget" means, with respect to a participant, the establishment of a plan and budget for the provision of self-directed personal assistance services, consistent with the following requirements:
>
> …
>
> (D) Service budget
>
> A budget for such services and supports for the participant has been developed and approved by the State based on such assessment and plan and on *a methodology* that uses valid, reliable cost data, *is open to public inspection*, and includes a calculation of the expected cost of such services if those services were not self-directed. The budget may not restrict access to other medically necessary care and services furnished under the plan and approved by the State but not included in the budget.

Emphasis added.

42 CFR § 441.472(a) (2011), also cited by Plaintiffs, elaborates on the requirements for a State's budget methodology:

> **§ 441.472  Budget methodology.**
>
> (a)  *The State shall set forth a budget methodology that* ensures service authorization resides with the State and *meets the following criteria*:
>
> (1)  The State's method of determining the budget allocation is objective and evidence based utilizing valid, reliable cost data.
>
> (2)  The State's method is applied consistently to participants.
>
> (3)  *The State's method is open for public inspection*.
>
> (4)  The State's method includes a calculation of the expected cost of the self-directed PAS and supports, if those services and supports were not self-directed.
>
> (5)  The State has a process in place that describes the following:
>
> (i)  Any limits it places on self-directed services and supports, and the basis for the limits.
>
> (ii)  Any adjustments that will be allowed and the basis for the adjustments.

Emphasis added.

If the Court were to assume without deciding that § 1983 provides a private enforcement right under subsection (j)(5)(D) giving participants a statutory right to review IDHW's methodology and its application to his or her individual budget items before or during a contested case (fair hearing) regarding the budget, the question then becomes: Does the participant, who may challenge the methodology and its application in his or her own individual hearing, have an additional private right to challenge whether the description of the State's methodology that is publicly available is sufficient within the meaning of subsection (j)(5)(D)? Put another way, and in the language of § 1983, does a participant also have a personal "right, privilege or immunity" secured by subsection (j)(5)(D) to litigate whether IDHW's publicly available methodology is a sufficient disclosure of the methodology?

In cases of legislation enacted pursuant to Congress's spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but action by the Federal Government against the State. *Ball v. Rodgers*, 492 F.3d 1094, 1104 (9th Cir. 2007). However, spending power legislation may create private rights of action, and *Ball* used the following analytical framework derived from *Blessing*, 520 U.S. at 340-341, 117 S.Ct. at 1359, to determine whether there is a private right enforceable under § 1983 under various sections of the Medicaid Act:

> [*Blessing*] developed a three-prong framework for determining whether a particular statutory provision gives rise to a federal right redressable via § 1983. Specifically, courts must consider whether: (1) Congress intended that the provision in question benefit the plaintiff; (2) the plaintiff has demonstrated that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence; and (3) the statute unambiguously imposes a binding obligation on the States, such that the provision giving rise to the asserted right is couched in mandatory, rather than precatory terms.

492 F.3d at 1104-1105 (citations and internal punctuation omitted).

Applying these principles, *Ball* held that § 1396n(c)(2)(C) and -(d)(2)(C) gave individuals a right to be informed of feasible alternatives to certain services and created individually enforceable rights. 492 F.3d at 1107. In contrast, *Ball* referred to *Sanchez v. Johnson*, 416 F.3d 1051 (9th Cir. 2005), which held that § 1396a(a)(30)(A) did not confer individual rights because

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TRO, DKT. NO. 4 - page 12

it spoke not of an individual's right but of the State's obligation to develop methods and procedures for providing services generally.[7] As *Ball* explained, a statutory provision that referred to the individual only in the context of describing the necessity of developing state-wide policies and procedures did not reflect a clear Congressional intent to create individual rights enforceable under § 1983. 492 F.3d at 1109. *See also San Lazaro Ass'n, Inc. v. Connell*, 286 F.3d 1088, 1099 (9th Cir. 2002), *cert. denied* 537 U.S. 878, 123 S.Ct. 78 (2002) (§ 1396a(a)(5) did not give Medicaid providers a right of action under § 1983 because it is "a structural programmatic requirement that facilitated federal oversight of state Medicaid programs," and "[t]o the extent there is a benefit to … individuals, it is an indirect one"). Let us use *Ball's* teaching to examine subsection (j)(5)(D)'s requirement of a method open to public inspection under *Blessing*.

        a. The First *Blessing* Prong. Subsection (j)(5)(D) contains two provisions about the methodology that are personal to the determination of a participant's budget — that it use "valid, reliable cost data" and that it include "a calculation of the expected cost of such services" — and one that is structural and programmatic — that the methodology be "open to public inspection." If there were any doubt that the public inspection provision of subsection 1396n(j)(5)(D) is structural and not personal, one need look no farther than 42 C.F.R. § 441.472(a), which puts public inspection among a laundry list of programmatic requirements in which individual participants are not mentioned at all. In the language of *Ball* and *Sanchez*, the statutory requirement that the methodology be publicly available does not show a clear Congressional intent to create individually enforceable rights. Applying the first prong of *Blessing*, the public inspection provision is not intended to be enforceable under § 1983 because it is a structural programmatic requirement and not one individually benefiting the participant. *Cf. John B. v. Goetz*, 626 F.3d 356, 362-363 (6th Cir. 2010) (§ 1396a(a)(30) dealing with

---

[7] A trio of cases, (1) No. 09–958, *Douglas, Director, Cal. Dep't of Health Care Services v. Independent Living Center of Southern California, Inc.*; (2) No. 09–1158, *Douglas, Director, Cal. Dep't of Health Care Services v. California Pharmacists Ass'n*; and (3) No. 10–283, *Douglas, Director, Cal. Dep't of Health Care Services v. Santa Rosa Memorial Hospital*; presenting these and similar issues were argued before the United States Supreme Court on October 3, 2011, and are now awaiting decision. The following website contains a summary of the issues presented: http://www.kff.org/medicaid/upload/8240-2.pdf.

requirement that State plan provide methods and procedures relating to use of and the payment for care and services not privately enforceable); *Westside Mothers v. Olszewski*, 454 F.3d 532, 542 (6th Cir. 2006) (same, noting that § 1396a(a)(30) has an aggregate focus rather than an individual focus); *Watson v. Weeks*, 436 F.3d 1152, 1162-1163 (9th Cir. 2006), *cert. denied* 549 U.S. 1032, 127 S.Ct. 598 (2006) (§ 1396a(a)(17)'s provision that the State adopt reasonable standards for determining eligibility is not privately enforceable). Given the general, unfocused, programmatic nature of the public availability requirement, and given that other provisions of the statute protect Plaintiffs' statutory due process rights, Plaintiffs' position fails the first *Blessing* prong.

      b. The Second *Blessing* Prong. The question: "How much public documentation is enough?" fails the second *Blessing* prong because it is too vague and amorphous to be within the normal judicial competence, which does include an intimate understanding of the administration of the DD programs. Oversight about how much information is required to be public is better left to the Secretary, who is charged with reviewing structural programmatic issues.[8] And oversight by a District Court rather than by the Secretary could lead to inconsistent results from one judicial district to another. Plaintiffs' position fails the second *Blessing* prong.

      c. The Third *Blessing* Prong. Defendants concede that the statute imposes a binding obligation on the State regarding a publicly available methodology and that it is couched in mandatory terms. Nevertheless, Plaintiffs do not have a private right to require the State to restructure its public disclosure of the methodology. Their individual rights are protected with regard to their own budget issues by IDHW's offering to provide them with the information that it has tendered subject to a confidentiality agreement, and they have no standing to represent others' interests. Plaintiffs' position fails the third *Blessing* prong.

Lastly, as a practical matter, Plaintiffs run a substantial risk that they could not contain the information that they would make public. Plaintiffs filed their individual Declarations under

---

[8] The following subsections of § 1396n contain provisions for Secretarial approval of waivers or monitoring of waivers for State plans: (c)(1), (d)(1), (f)(2), h(2)(B), (i)(1), (j)(2), (k)(3)(E).

seal.  See Dkts. 6 - 17.  How would they separate the general information that they would make public from the specific calculated budget for each of them as individuals?  That is not apparent.

        3.      <u>Summary.</u>  Plaintiffs do not have standing to pursue public availability of information to which they may obtain private access.  But even if they did, Plaintiffs are not likely to succeed on the merits of the second paragraph of the TRO Motion because it is most likely that there is no private right of action regarding public availability of the methodology, they will not suffer irreparable harm (in fact, they will suffer no harm because they may obtain other access to the information), they have no equities in their favor when they may receive this information from IDHW, and the public interest is served by protecting information protected by Idaho law.

**C.**      **Plaintiffs Have No Right to Grandfather Their Prior Service Levels**

The third substantive paragraph of the TRO Motion asks for an order "to reinstate the level of services authorized for the plaintiffs prior to July 1, 2011, until the Court issues a final judgment in this case."  TRO Motion, Dkt. 4, pages 2-3.  Plaintiffs cite no statute or rule in favor of this extraordinary remedy because there is none.  And, as noted before, if there were a deprivation of procedural process rights, the remedy is a new proceeding with those rights.  See Part IV.A.2, beginning on page 7, *supra*.

Plaintiffs are in essence asking this Court to create a one-way ratchet that, regardless of circumstances, prohibits the Department from reducing any Plaintiff's budget during the pendency of the case, but allows increasing their budgets.  What would this mean?  If a doctor were to change a Plaintiffs' prescription to fewer or less expensive medications, the Plaintiff would keep the difference, and the difference would not be available to assist non-Plaintiff participants.  If a Plaintiff received moneys for a one time capital improvement or durable medical equipment in the prior plan year, the Plaintiff would again get that money in the following year, and it would not be available to assist non-Plaintiff participants.  Such Plaintiffs would be the indefinite beneficiaries of a system that robs Peter to pay Paul, and they would be in Paul's shoes.

Freezing Plaintiffs' budgets so that they could not be reduced because of changing conditions would violate the following Federal Regulations in 42 CFR Part 441.

- Subpart G. Home and Community-Based Services: Waiver Requirements, § 441.302 State assurances, subsection (c)(2) Periodic reevaluations: "Reevaluations, at least annually, of each recipient receiving home or community-based services to determine if the recipient continues to need the level of care provided and would, but for the provision of waiver services, otherwise be institutionalized in one of the following institutions … ."

- Subpart J. Optional Self–Directed Personal Assistance Services Program, § 441.468 Service plan elements, subsection (c)(7): "Ensure the State reviews the service plan annually, or whenever necessary due to a change in the participant's needs or health status."

Given the CFR's explicit requirement for annual evaluations of a number of services that Plaintiffs receive, preventing downward adjustment of any budget in place on any prior date, even after the conclusion of an administrative appeal,[9] for the duration of this lawsuit would be contrary to the law. Plaintiffs are not likely to succeed on the merits, it is not a hardship in the legal sense if their budget were to be reduced in accordance with law, Plaintiffs have no equities on their side, and it is in the public interest to allow annual assessments to proceed as provided by 42 CFR Part 441.

**D.  There Is No Federal Jurisdiction to Determine Whether Defendants Complied With State Law**

Plaintiffs suggest that Defendants did not comply with Idaho law concerning publication of rules, TRO Memo, Dkt. 4-1, pages 14-16, and violated due process provisions of Idaho law,

---

[9]  42 CFR § 431.230 (2011) prohibits reduction of services previously in place during the pendency of administrative procedures unless certain conditions are met:

**§ 431.230 Maintaining services.**

(a)  If the agency mails the 10-day or 5-day notice as required under § 431.211 or § 431.214 … , and the recipient requests a hearing before the date of action, the agency may not terminate or reduce services until a decision is rendered after the hearing unless —

(1)  It is determined at the hearing that the sole issue is one of Federal or State law or policy; and

(2)  The agency promptly informs the recipient in writing that services are to be terminated or reduced pending the hearing decision.

(b)  If the agency's action is sustained by the hearing decision, the agency may institute recovery procedures against the applicant or recipient to re-coup the cost of any services furnished the recipient, to the extent they were furnished solely by reason of this section.

Plaintiffs' proposed TRO paragraph (3) does not recognize or incorporate these provisions.

*id.*, page 10, n.22.  Resolution of those State law issues is beyond Federal jurisdiction:

> [W]hen a plaintiff alleges that a state official has violated state law … the entire basis for the doctrine of [*Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908)] and [*Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347 (1974)] disappears.  A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.  On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.  Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.  We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911 (1984).

"As the district court held, all of Cholla's state law claims are barred by the Eleventh Amendment, which precludes the adjudication of pendent state law claims against nonconsenting state defendants in federal courts."  *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004), *cert. denied*, 544 U.S. 974, 125 S.Ct. 1828 (2005), citing *Pennhurst*.  Accordingly, Defendants will not address any State law issues in the TRO Brief, even though Defendants maintain that they complied with State law.

E.  **Although It Is Irrelevant to the Issues Before the Court, Idaho Is Not Out of Compliance With a Number of Federal Requirements Discussed in the TRO Brief**

Finally, there are a number of statements in the TRO Brief to the effect that Idaho is not complying with various provisions of the Medicaid statutes.  They are not relevant to the issues before the Court of whether Plaintiffs have statutory rights under the Medicaid Act for the relief requested in paragraphs (1)-(3) of the TRO Motion, Dkt. 4.  Nevertheless, Defendants have provided the Declarations of Paige Grooms and Jean Christensen to rebut these accusations.

////////////////////////////////

////////////////////////////////

////////////////////////////////

## V. CONCLUSION

The Court should deny Plaintiffs' Motion for a Temporary Restraining Order, Dkt. 4, in its entirety.

DATED this 30th day of January, 2012.

>                                       STATE OF IDAHO
>                                       OFFICE OF THE ATTORNEY GENERAL
>
>                                       By      /s/ Michael S. Gilmore
>                                            Deputy Attorney General

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of January, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Richard Alan Eppink
ritchieepink@idaholegalaid.org

>                                       By      /s/ Michael S. Gilmore
>                                            Deputy Attorney General