LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

MICHAEL S. GILMORE, ISB # 1625
KATHERINE TAKASUGI, ISB #5208
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID 83720-0010
Telephone:   (208) 334-2400
Facsimile:    (208) 854-8073
      Attorney for Defendants

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W.; C.M.; C.L.; A.L., through her guardian E.B..; K.S., through his next friend S.S.; Matthew S., through his guardian V.S.; N.R., through her next friend G.R.; T.F., through her guardian R.F.; T.M., through his guardian T.W.; B.B., through his next friend D.B.; R.P., through her guardian T.P.; Marcia S., through her guardian D.S.,<br><br>               Plaintiffs,<br><br>vs.<br><br>RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare; PAUL LEARY, in his official capacity as Medicaid Administrator of the Idaho Department of Health and Welfare; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE, a department of the State of Idaho,<br><br>               Defendant. | Case No. 1:12-cv-00022-BLW<br><br>**DECLARATION OF PAIGE GROOMS** |

## DECLARATION OF PAIGE GROOMS

I, PAIGE GROOMS, declare as follows:

1.  I am employed by the Idaho Department of Health and Welfare ("Department") with the Division of Medicaid, Bureau of Developmental Disability Services ("BDDS") and work as a Developmental Disability Alternative Care Coordinator. I have held my current position since December 2007. Prior to assuming that position, I was employed in March 2005 by the Department, Division of Family and Children's Services ("FACS"), Region 4-Children's Mental Health, as a Clinician. I have a Bachelors of Science degree in Psychology from Boise State University and a Masters of Science in Rehabilitation Counseling from Western Oregon University. I have a national certificate as a Certified Rehabilitation Counselor from the Commission on Rehabilitation Counselor Certification and also hold a license as a Professional Counselor with the State of Idaho.

2.  In my current position, I provide subject matter expertise and guidance to the BDDS, FACS, service providers and the public on a variety of Medicaid-related matters, including Idaho's Medicaid state plan, waivers to such plan, and relevant statutes, administrative rules, Centers for Medicare and Medicaid Services ("CMS") operational guidelines insofar as they pertain to developmental disability benefits offered by Idaho Medicaid for adults. My responsibilities include preparing policy work analyses such as responses to inquiries and complaints from external and internal sources that warrant signature by the Department's Director or the Division's Administrator; Medicaid information releases; administrative rule promulgation and presentation; and ensuring that departmental policy, as initially formulated and thereafter implemented, remains consistent with state and federal requirements. Aside from these general duties, I have responsibility for preparing Medicaid state plan amendments, and amendments to Idaho's adult developmental disabilities program ("DD") waiver. With respect to the DD

waiver, I serve as liaison with the CMS with respect to annual monitoring utilization and cost effectiveness of the waiver.

3. On August 5, 2011, the Department submitted an amendment to the Adult Developmental Disabilities § 1915(c) Home and Community-Based Services Waivers ("HCBS") to the Centers for Medicare and Medicaid Services ("CMS"). The purpose of the waiver amendment was very specific and only related to the Department's offering residential habilitation program coordination services for certified family home providers as an administrative service by means of a selective contract. When the Department submits an amendment it only changes the selected sections of the waiver relevant to the change being made. The amendment only related to the section on Residential Habilitation-Affiliation and nothing more.

4. The Department's approved waiver has always described the selection of the prospective individual budget amount at Appendix C, C-4, a. The BDDS has not changed the budget-setting methodology that calculates the individualized budget for participants in the BDDS program and the information set forth in the Appendix is still correct. Attached hereto as Exhibit A is a true and correct copy of Appendix C, C-4, a. portion of the approved waiver. Information regarding the budget-setting methodology is set forth in IDAPA 16.03.10.514.01

5. There is no federal law requirement for reconsideration under § 1915(c) of the Social Security Act as that term is used in the pre-hearing stage.

6. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED this 30th of January 2012.

Kathy S Lee By Paige Grooms
PAIGE GROOMS
Notary Expires 8/21/2012

DECLARATION OF PAIGE GROOM - 3

*************************************************************

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _30th_ day of January 2012, I caused to be electronically filed the foregoing DECLARATION OF PAIGE GROOMS with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Richard Alan Eppink
ritchieepink@idaholegalaid.org

                                                _____
                                                KATHERINE TAKASUGI
                                                Deputy Attorney General

*to analyze and assess progress toward the performance measure. In this section provide information on the method by which each source of data is analyzed statistically/deductively or inductively, how themes are identified or conclusions drawn, and how recommendations are formulated, where appropriate.*

    ii. If applicable, in the textbox below provide any necessary additional information on the strategies employed by the State to discover/identify problems/issues within the waiver program, including frequency and parties responsible.
    See 8a

b. **Methods for Remediation/Fixing Individual Problems**
    i. Describe the State's method for addressing individual problems as they are discovered. Include information regarding responsible parties and GENERAL methods for problem correction. In addition, provide information on the methods used by the State to document these items.
    See 8a
    ii. **Remediation Data Aggregation**
    Remediation-related Data Aggregation and Analysis (including trend identification)

| Responsible Party (check each that applies): | Frequency of data aggregation and analysis (check each that applies): |
|---|---|
| ☐ State Medicaid Agency | ☐ Weekly |
| ☐ Operating Agency | ☐ Monthly |
| ☐ Sub-State Entity | ☐ Quarterly |
| ☑ Other<br>  Specify:<br>  8a | ☐ Annually |
| | ☐ Continuously and Ongoing |
| | ☑ Other<br>  Specify:<br>  8a |

c. **Timelines**
When the State does not have all elements of the Quality Improvement Strategy in place, provide timelines to design methods for discovery and remediation related to the assurance of Qualified Providers that are currently non-operational.
    ● No
    ○ Yes
    Please provide a detailed strategy for assuring Qualified Providers, the specific timeline for implementing identified strategies, and the parties responsible for its operation.

# Appendix C: Participant Services
## C-3: Waiver Services Specifications

Section C-3 'Service Specifications' is incorporated into Section C-1 'Waiver Services.'

# Appendix C: Participant Services
## C-4: Additional Limits on Amount of Waiver Services


EXHIBIT A

a. **Additional Limits on Amount of Waiver Services.** Indicate whether the waiver employs any of the following additional limits on the amount of waiver services (*select one*).

- ○ **Not applicable** - The State does not impose a limit on the amount of waiver services except as provided in Appendix C-3.
- ◉ **Applicable** - The State imposes additional limits on the amount of waiver services.

When a limit is employed, specify: (a) the waiver services to which the limit applies; (b) the basis of the limit, including its basis in historical expenditure/utilization patterns and, as applicable, the processes and methodologies that are used to determine the amount of the limit to which a participant's services are subject; (c) how the limit will be adjusted over the course of the waiver period; (d) provisions for adjusting or making exceptions to the limit based on participant health and welfare needs or other factors specified by the state; (e) the safeguards that are in effect when the amount of the limit is insufficient to meet a participant's needs; (f) how participants are notified of the amount of the limit. (*check each that applies*)

- ☐ **Limit(s) on Set(s) of Services.** There is a limit on the maximum dollar amount of waiver services that is authorized for one or more sets of services offered under the waiver.
*Furnish the information specified above.*

- ☑ **Prospective Individual Budget Amount.** There is a limit on the maximum dollar amount of waiver services authorized for each specific participant.
*Furnish the information specified above.*

(a) All waiver services are included in the budget.

(b) The service and support desires and needs of participants measured by the Scales of Independent Behavior Revised (SIB-R), historical record of service expenditures, when available, and the characteristics of persons served measured by the Idaho Individual Budget Screen are used in a stepwise regression analysis to develop a prospective individual budget for each waiver participant. The budget-setting methodology will correlate a participant's characteristics with the participant's individualized budget amount, so participants with higher needs will be assigned a higher individualized budget amount. Maximum dollar amounts will be based on individual assessed needs and aggregate cost-effectiveness levels. This budget-setting is completed in advance of the person centered planning process and is used in the development of a person centered plan.

(c) The individualized budget is based on the perspective that funding should be tied principally to individual need. The model seeks out the factors that contribute the most to explaining observed variance in costs and discards those that do not appear to influence cost. A review will be done on an annual basis to evaluate the current variables to determine if they continue to contribute to the cost of individuals. In the end, the model identifies the mix and weight of variables that best fits the array of observed costs across the individuals receiving services. Ongoing monitoring of the statistical model, complaints, reconsiderations, appeals, and participant outcomes will be conducted by the Department to ensure that assigned budgets are sufficient to assure health and safety of participants in the community.

(d) Participants who believe that their assigned budget does not accurately reflect their needs may ask for a reconsideration. Participants who are still not satisfied by the outcome of the reconsideration review may request a fair hearing.

(e) The Department has processes in place for participants to be re-evaluated and have a new budget assigned when the participant has a change in condition that requires additional services or higher cost services. Participants may request a re-evaluation by submitting documentation of changes to individualized needs to the RMS. If the documentation supports the need for additional budget funds, the RMS staff forwards the request to the IAP for a new individualized budget evaluation. If the documentation does not support the need for additional budget funds, the RMS staff provides written notification to the participant of the decision and the right to request a reconsideration.

(f) Participants are notified of their eligibility for waiver services and given an annual individual budget at the time of their initial determination or annual re-determination. Each participant receives written notification of the set budget amount. The notification includes how the participant may request reconsideration of the set budget amount. Individualized budgets are re-evaluated annually and written notification of the set budget amount are sent annually.

☐ **Budget Limits by Level of Support.** Based on an assessment process and/or other factors, participants are assigned to funding levels that are limits on the maximum dollar amount of waiver services.
*Furnish the information specified above.*

☐ **Other Type of Limit.** The State employs another type of limit.
*Describe the limit and furnish the information specified above.*

# Appendix D: Participant-Centered Planning and Service Delivery

## D-1: Service Plan Development (1 of 8)

**State Participant-Centered Service Plan Title:**
Individual Support Plan (Traditional Waiver Services); Support and Spending Plan (Self-Directed Waiver Services)

a. **Responsibility for Service Plan Development.** Per 42 CFR §441.301(b)(2), specify who is responsible for the development of the service plan and the qualifications of these individuals *(select each that applies):*

☐ **Registered nurse, licensed to practice in the State**

☐ **Licensed practical or vocational nurse, acting within the scope of practice under State law**

☐ **Licensed physician (M.D. or D.O)**

☐ **Case Manager** (qualifications specified in Appendix C-1/C-3)

☐ **Case Manager** (qualifications not specified in Appendix C-1/C-3).
*Specify qualifications:*

☐ **Social Worker.**
*Specify qualifications:*

☑ **Other**
*Specify the individuals and their qualifications:*

The responsibility for service plan development and qualifications differ slightly based on the participants' selection of either traditional waiver services or self-directed waiver services.

Tradtional Waiver Services
Participants may develop their own plan or designate a paid or non-paid plan developer. Neither a provider of direct service to the participant nor the assessor may be chosen to be the paid plan developer. Family members and all others who wish to be paid for plan development must be employed as a service coordinator and must meet the following requirements:

• Must be employees or contractors of an agency that has a valid provider agreement with the Department.