Richard Alan Eppink
ritchieeppink@idaholegalaid.org
Idaho State Bar no. 7503
Howard A. Belodoff
howardbelodoff@idaholegalaid.org
Idaho State Bar no. 2290
IDAHO LEGAL AID SERVICES, INC.
310 North Fifth Street
Boise, Idaho  83702
(208) 345-0106, ext. 1503
(208) 342-2561 (fax)

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W, *et al.*, | Case No. 1:12-cv-00022-BLW |
| Plaintiffs, | |
| vs. | **REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare, *et al.* | |
| Defendants. | |

The plaintiffs submit this brief in reply to the DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TRO (Dkt. No. 25), and show this Court:

### I.  ARGUMENT

A.  **There are No Jurisdictional or Justiciability Barriers to the Plaintiffs' Claims.**

The Department is immune from the § 1983 and Supremacy Clause claims in this case,

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO – Page 1

but it is not immune from suit under Title II of the Americans with Disabilities Act or Section 504 of the Rehabilitation Act. *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 792 (9th Cir. 2004).[1] It has consented to lawsuits to void improperly promulgated rules, I.C. § 67-5231(1), and this Court has jurisdiction to make such a declaration, 28 U.S.C. §§ 2201(a). The plaintiffs have standing to challenge IDHW's statutory mandate to keep its budget methodology "open to public inspection," even more so now that IDHW has made that requirement contingent upon the plaintiffs signing a confidentiality agreement that would further harm them.[2]

**B.     A Post-Notice, Confidential Print-Out and a Phone Call Do Not Satisfy Due Process.**

The Department[3] offers to disclose a "spreadsheet print-out" of the items summed to determine the plaintiffs' budgets and the phone number of an IDHW employee "who can answer questions," but only under a confidentiality agreement. By this offer, it contends that it has provided the detailed, meaningful notice and ability to establish "all pertinent facts and circumstances" that Due Process and the Medicaid Act require. 42 C.F.R. § 431.242; *Goldberg v. Kelly*, 397 U.S. 254, 267–268 (1970). The Department's offer misses the plaintiffs' point: Due Process demands that public assistance recipients receive a notice "detailing the reasons for a proposed termination." *Id.* The detail must be sufficient enough for a recipient to challenge both the application of the law to their factual circumstances and the

---

[1] Compl. ¶ 16 (Dkt. 1) (raising ADA and Section 504 claims in claims 11 and 12).

[2] Among other immediate harm, the agreement would impose governmental obligations on private individuals, restrict *First Amendment* rights, expose the plaintiffs to liability for damages and attorneys fees, and require them to agree with premises they reject, including that the budget calculations meet their needs. *See* Decl. Takasugi ex. D (Dkt. 25-1).

[3] "The Department" and "IDHW" refer to the defendants collectively throughout the rest of this brief.

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO – Page 2

"factual premises" of the state's action. *Id*. The Department's argument is that when it cuts assistance, *only* those recipients who agree to IDHW's conditions, exposing themselves to damages and attorneys fees, are entitled to a detailed notice.

A post-notice print-out, supplemented with a phone number, does not satisfy Due Process. "[Phone] numbers cannot . . . be a substitute for the required written reasons." *Rodriguez v. Chen*, 985 F. Supp. 1189, 1195 (D. Ariz. 1996); *Vargas v. Trainor*, 508 F.2d 485, 489 (7th Cir. 1974); *Gray Panthers v. Schweiker*, 716 F.2d 23, 32 (D.C. Cir. 1983) (holding that phone number cannot cure notice that did not include "thorough and understandable explanation"). A confidentiality requirement is also a plainly invalid prior restraint on recipients' rights, under the *First Amendment* and *Fourteenth Amendment*, to speak freely about governmental affairs (including their own cases and IDHW's policies), for which IDHW has offered no justification. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 558 (1976) (holding that state bears a heavy burden to justify any prior restraint on speech).

The Department also cites three cases where courts protected privacy interests of private individuals and businesses from government disclosure of medical and business information. The Department is not asking this court to shield personal information from the general public. It is asking this court to limit the plaintiffs' access to their own personal information. Its authority is inapposite.[4]

---

[4] The Department also argues that its methodology is exempt from disclosure under the Idaho Public Records Law. Even if that state law could trump the Medicaid Act and the *Fourteenth Amendment*, IDHW has offered no evidence to overcome the "presumption that all public records in Idaho are open at all reasonable times for inspection." I.C. § 9-338(1). It can overcome this presumption only by "a specific demonstration that an exemption applies to the record being requested." *Ward v. Portneuf Med. Ctr., Inc.*, 150 Idaho 501, 504 (2011).

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO – Page 3

**C.     Due Process is Indeed the Remedy for Deprivation of Due Process.**

The Department is exactly right that "the appropriate remedy for the deprivation of due process rights is to order the process which was due."[5] Because cutting public assistance "may deprive an eligible recipient of the very means by which to live," the process the plaintiffs are due is advance notice *detailing* the reasons their budgets were reduced and a fair hearing *before* the cuts take effect. *Goldberg*, 297 U.S. at 264. The Department relies on cases where far different interests and notice and hearing rights were at stake—public employment and medical school enrollment—and argues that this Court cannot order assistance restoration. In public assistance cases, however, restoring prior assistance until adequate notice and fair hearing is both the appropriate and the usual injunctive remedy.[6] Indeed, the court in *Elkins* held that enjoining

---

For the I.C. § 9-340D(15) "computer programs" exemption to apply, IDHW would have to show that it had developed a computer program. Instead, it admits that it uses a Microsoft Excel spreadsheet to compute budgets. Def.'s Opp'n 5 (Dkt. 25). The plaintiffs don't want IDHW to give them Microsoft Excel; they want IDHW to give them the spreadsheet files it has used to compute DD Waiver budgets. That data, "produced by use of the program," and the "mathematical or statistical formulas" employed, are expressly *not* exempt. I.C. § 9-340D(15)(b), (c). For the I.C. § 9-340D(1) "trade secrets" exemption to apply, IDHW would have to show both that the exemption applies to government-created records and that IDHW "derives economic value" from keeping the methodology secret. It has not offered any such evidence. The legislature intended I.C. § 9-340D(1) to protect private businesses' trade secrets that agencies sometimes receive, not to permit state agencies to shield their decisionmaking processes from affected citizens. I.C. § 9-340D(1) (defining "trade secrets" with example of information received by an agency in response to requests for proposals).

[5] Def.'s Opp'n 7 (Dkt. 25).

[6] *Kimble v. Solomon*, 599 F.2d 599, 604 (4th Cir. 1979) (holding that because state "failed to comply with the notice regulations, it has not instituted a legally effective reduction in its Medicaid benefits," and therefore ordering "reinstatement of benefits"). See also, just for example, the following recent injunction decisions:

- *Oster v. Lightbourne*, No. CV 09-04668, 2011 U.S. Dist. LEXIS 138191 at *8 (N.D. Cal. Dec. 1, 2011): issuing preliminary injunction ordering that defendant Medicaid

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO – Page 4

an agency to reinstate all those who had received insufficient notice until the agency provided court-approved notice "is the only equitable remedy that makes sense." *Elkins v. Dreyfus*, No. C10-1366 MJP, 2011 U.S. Dist. LEXIS 86782 at *30 (W.D. Wash. Aug. 5, 2011).

In a related argument, IDHW argues that the plaintiffs seek a "mandatory" injunction because they ask this Court to require that IDHW provide constitutionally mandated notice and a fair hearing before cutting their assistance. An injunction application gets heightened scrutiny, however, only when it seeks more from the defendants than they were giving before "the last

---

administrators, "to the extent Defendants have already taken any actions to implement those reductions, Defendants immediately undo any such actions."
- *Unthaksinkun v. Porter*, No. C11-0588JLR, 2011 U.S. Dist. LEXIS 111099 at * 92 (W.D. Wash. Sept. 28, 2011): ordering, in preliminary injunction, state Medicaid agency to "reenroll members of the Equal Protection and Due Process classes in Basic Health effective the date of this order" and that "Defendant may not terminate any Due Process class member's benefits without providing constitutionally sufficient notice."
- *Pimentel v. Dreyfus*, No. C11-119, 2011 U.S. Dist. LEXIS 12270 at *20 (W.D. Wash. Jan. 28, 2011): ordering, in preliminary injunction, "Defendant not to terminate or reduce Plaintiff and other Due Process Subclass members state-food assistance until they have been served adequate notice in accordance with Due Process."
- *Korab v. Koller*, No. 10-00483, 2010 U.S. Dist. LEXIS 131748 at *17 (D. Haw. Dec. 13, 2010): ordering in preliminary injunction that state Medicaid agency "shall reinstate the benefits that the COFA Resident was receiving through the Old Programs as of June 1, 2010."
- *Elkins v. Dreyfus*, No. C10-1366, 2010 U.S. Dist. LEXIS 110785, at *26–*27 (W.D. Wash. Oct. 6, 2010): issuing preliminary injunction ordering state Medicaid agency to "reinstate medical and monetary benefits to those who have been terminated from or denied DL benefits in or for the month of October pursuant to the notices at issue."
- *V.L. v. Wagner*, 669 F. Supp. 2d 1106, 1123 (N.D. Cal. 2009): enjoining state Medicaid agency to "rescind any directions or notices issued to any person or entity for the termination or reduction of IHSS benefits . . . [and] notify all persons and entities that have received such directions or notices that such IHSS benefits will not be terminated or reduced."
- *Ryan v. Dreyfus*, No. C09-0908RAJ, 2009 U.S. Dist. LEXIS 88206 at *9–*10 (W.D. Wash. Sept. 4, 2009): enjoining state Medicaid agency to "immediately reinstate and maintain the ADH program service funding at the level that DSHS previously assessed the class members to require and that they received prior to July 1, 2009, until such time as the Defendant reassesses their needs and they . . . receive a planned action notice."

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO – Page 5

uncontested status which preceded the pending controversy." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000); *see also Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994) (holding injunction would be "mandatory" where it would require university to pay plaintiff $28,000 a year more than under already expired contract). The "last uncontested status" refers to the time harm to the plaintiffs began. *GoTo.Com, Inc.*, 202 F.3d at 1210; *San Diego Minutemen v. Cal. Bus., Transp. & Hous.*, 570 F. Supp. 2d 1229, 1256 (S.D. Cal. 2008) (holding injunction to "reinstate Plaintiff's permit" and "reinstall Plaintiff's courtesy signs" was not "mandatory"). In any event, a mandatory injunction is appropriately issued when "very serious damage will result," and IDHW has not challenged that these plaintiffs' life and health are at risk.[7] *Marlyn Nutraceuticals, Inc. v. Mucos Pharms GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). The TRO motion should be granted as written.

**D.    It Will Not Strain this Court's Competence to Enforce an "Open" Inspection Requirement Intended to Benefit DD Waiver Participants.**

The Department argues that the requirement that DD Waiver budgets be computed using a methodology "open to public inspection" is not intended to benefit participants, and is so "vague and amorphous" that it would strain this Court's competence to enforce it. 42 U.S.C. § 1396n(j)(5)(D); *Ball v. Rogers*, 492 F.3d 1094, 1104 (9th Cir. 2007). The provision the plaintiffs enforce mandates that:

> (5) For purpose of this section, the term "approved *self-directed* services plan and budget" means, with respect to a *participant*, the establishment of a plan and budget for the provision of *self-directed* personal assistance services, consistent with the following requirements:
>
> . . . .

---

[7] See the declaration references at nn. 74–76 in the plaintiffs' opening brief (Dkt. 4-1).

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO – Page 6

> (D) A budget for such services and supports for *the participant* has been developed and approved by the State based on such assessment and plan and on a methodology that uses valid, reliable cost data, is open to public inspection, and includes a calculation of the expected cost of such services if those services were not *self-directed*.

42 U.S.C. § 1396n(j)(5) (emphasis added). This provision is just the kind, "phrased in terms of the persons benefited," that meets the *Blessing* and *Gonzaga* tests. *Ball*, 492 F.3d at 1107 (quoting *Gonzaga v. Doe*, 536 U.S. 273, 284 (2002)). That the provision references the "assessment" and "plan" provisions above it emphasizes this conclusion: the assessment must identify a participant's "needs, strengths, and preferences" and the plan must "respect[] the participant's preferences, choices, and abilities." 42 U.S.C. § 1396n(j)(5)(C), (B). Indeed, all of § 1396n(j)(5) is about participant "*self*-direction" and enabling participant "choice and *control over the budget* . . . ." *Id.* § 1396n(j)(5)(A) (emphasis added).

The Department concedes that the provision imposes a binding obligation but argues that the phrase "open to public inspection" is too "vague and amorphous" for this Court's competence. The word "open" is a plain language answer to the "[h]ow much public documentation is enough?"[8], and the answer is: "allowing access . . .; not closed, fastened or restricted." CONCISE OXFORD ENGLISH DICTIONARY 1001 (2004). Even when Section 203 of the Communications Act of 1934 allowed the FCC to "modify any requirement" of that section, the Supreme Court held that the FCC could not modify the requirement to file tariffs and keep them "open for public inspection," because that would be a "fundamental revision." *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 237 (1994). The Department's confidentiality

---

[8] Def.'s Opp'n (Dkt. 25) at 14.

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO – Page 7

conditions likewise fundamentally revise the Medicaid Act's open inspection requirement.[9]

The Department's secrecy also directly conflicts with state law, and the controlling law in the Ninth Circuit allows the plaintiffs to enforce the requirements of 42 U.S.C. § 1396n(j)(5)(D) under the Supremacy Clause. *Indep. Liv. Ctr. of So. Cal. v. Shewry*, 543 F.3d 1050, 1065 (9th Cir. 2008). As this Court recently observed, "[a]lthough the Supreme Court's recent grant of certiorari in *Indep Liv. Ctr. v. Maxwell-Jolly*, 131 S. Ct. 992 (2011), raises some question as to the long-term viability of the Ninth Circuit's holding" in *Shewry*, "the Ninth Circuit's position is clear, and controls the outcome . . . ." *Inclusion, Inc. v. Armstrong*, No. 09-cv-00634, 2011 U.S. Dist. LEXIS 142488 at *11 (D. Idaho Dec. 12, 2011). As IDHW relies on state Public Records Law exemptions to overcome the federal "open to public inspection" requirement, it is hard to imagine a clearer example of conflict preemption, which occurs "when compliance with both federal and state regulations is a physical impossibility." *PG&E Co. v. State Energy Res. & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (internal quotation marks and citations omitted). A methodology cannot be both "open to public inspection," 42 U.S.C. § 1396n(j)(5)(D), and "exempt from disclosure," I.C. § 9-340D.

E. **The Department Has Not Complied with the Medicaid Act.**

The Department does not argue that the plaintiffs cannot enforce the Medicaid Act's maintenance of efforts requirement, 42 U.S.C. § 1396a(gg), or that it isn't required to get CMS approval for material amendments to its DD Waiver program, *Affiliates, Inc. v. Armstrong*, Nos. 1:09-cv-00149-BLW, 2011 U.S. Dist. LEXIS 86392 at *13 (D. Idaho Aug. 4, 2011). It argues

---

[9] Decl. Eppink ex. G-3 (Dkt. 5) (redacting over 25% of content); Decl. Takasugi exs. B, C (Dkt. 25-1) (offering disclosure of "spreadsheet print-out" only and prohibiting public disclosure).

only that its declarations "rebut" the noncompliance the plaintiffs have pointed out.[10]

The Department's declarations prove that IDHW has imposed more restrictive standards, methodologies, and procedures, in violation of 42 U.S.C. § 1396a(gg)(1), and implemented changes resulting in reduction of services without CMS approval. *Affiliates, Inc.*, 2011 U.S. Dist. LEXIS 86392 at *14–*15. Though Paige Grooms states that the IDHW's waiver application "is still correct,"[11] Jean Christensen admits that the reconsideration process was "eliminated."[12] Yet in at least five places, the waiver application states the participant can request reconsideration.[13] Similarly, Christensen acknowledges that the IDHW budget methodology "has been updated" to adjust the model "within" it.[14] Although she nevertheless contends that the methodology has somehow "not changed,"[15] the evidence is clear that the methodology is the process that actually calculates budgets,[16] that it has severely restricted individual budgets,[17] and that IDHW intended these methodology, standards, and procedures

---

[10] Def.'s Opp'n (Dkt. 25) at 17.

[11] Decl. Grooms ¶ 4 (Dtk. 25-4).

[12] Decl. Christensen ¶ 5 (Dkt. 25-3); *see also* Decl. Ellison ¶ 6 (Dkt. 25-2).

[13] Decl. Grooms ex. A at 6–7 (Dkt. 25-4) (*e.g.*, "The notification includes how the participant may request a reconsideration"); Decl. Eppink ex. J at 87, 88 (Dkt. 5-19).

[14] Decl. Christensen ¶ 4 (Dkt. 25-3); *see also* Decl. Kotts ex. A (Dkt. 7-1) ("[w]ith the new revision, the analysis did result in some changes to the variables and the weighting used in the calculation," according to Christensen).

[15] Decl. Christensen ¶ 4 (Dkt. 25-3).

[16] Decl. Eppink ex. A at 164 (Dkt. 5-1) ("the budget-setting methodology will correlate a participant's characteristics with the participants individualized budget amount").

[17] *See, e.g.*, Decl. Kotts ¶¶ 4, 13 (Dkt. 7) and ex. B (Dkt. 7-2).

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO – Page 9

changes to restrict those budgets by $2,000,000.[18] The Department admits that it did not even request CMS approval for these restrictions,[19] and IDHW cannot implement them until it establishes a Health Benefit Exchange. 42 U.S.C § 1396a(gg)(1).[20]

## II. CONCLUSION

WHEREFORE, the plaintiffs respectfully ask this Court to grant their motion.

DATED this 2nd day of February, 2012, at Boise, Idaho.

IDAHO LEGAL AID SERVICES, INC.

/s/ Richard Alan Eppink

Attorneys for Plaintiffs

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of February, 2012, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Michael S. Gilmore
mike.gilmore@ag.idaho.gov
Katherine Takasugi
katherine.takasugi@ag.idaho.gov
*Attorneys for Defendants*

DATED this 2nd day of February, 2012.

/s/ Richard Alan Eppink

---

[18] Decl. Eppink ex. A at 125 (Dkt. 5-1) ("The estimated cost savings for these rule changes are . . . $2,000,000 through refinements to the developmental disabilities (DD) individual budget modification process . . . ."); ex. B at 191 (Dkt. 5-2).

[19] Decl. Grooms ¶ 3 (Dkt. 25-4).

[20] The Department argues that enforcing these requirements would "grandfather" the plaintiffs' pre-July 1, 2011, service levels. That is the intent of 42 U.S.C. § 1396a(gg). If IDHW later shows this Court that it has both established a Health Benefit Exchange and received CMS approval for any program changes, it may be able to impose more restrictive tests.

REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRO – Page 10