LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

MICHAEL S. GILMORE, ISB #1625
KATHERINE TAKASUGI, ISB #5208
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:	(208) 334-4130
Facsimile:	(208) 854-8073
E-mail:	mike.gilmore@ag.idaho.gov
	katherine.takasugi@ag.idaho.gov
	Attorneys for Defendants

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W.; *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare; *et al.*,<br><br>　　　　　　　Defendant. | Case No. 1:12-cv-00022-BLW<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO APPROVE DEFENDANTS' PROPOSED NOTICES** |

Defendants Richard Armstrong, *et al.*, by and through their attorneys of record, Michael S. Gilmore and Katherine Takasugi, Deputy Attorneys General, file this Memorandum in Support of Motion to Approve Defendants' Proposed Notices. Defendants move the Court to approve the notices attached to the Motion as the notices to be used for the Plaintiffs in their administrative proceedings before the Idaho Department of Health and Welfare (IDHW).

**I.**

**PROCEDURAL HISTORY AND THE MOTION'S PLACE IN THE PROCEEDINGS**

Plaintiffs are twelve persons (called "participants" under applicable IDHW rules) who receive Medicaid and additional State-plan services under Idaho Developmental Disability Waiver

program.  Complaint, Dkt. 1, ¶¶ 1-13.  State law requires Medicaid participants' eligibility for services to be reassessed no less often than annually.[1]  Federal and State laws provide that if a reassessment reduces eligibility for programs or budgets for services, a participant is entitled to State administrative procedural protections, including a right to appeal the reduction in a State administrative proceeding.[2]  In their annual reassessments, each Plaintiff's overall budget for eligible services was reduced.  In the budget setting process no Plaintiff had access to the numerical and statistical data that are called the "individual budget setting methodology" and the "budget tool".  See Complaint, ¶ 95, Dkt. 1, which uses these terms.

The day after the Complaint was filed, Plaintiffs moved for a TRO.  Dkt. 4.  One concern expressed in ¶ 2 of the TRO Motion itself was that Defendants had not made publicly available the "individual budget setting methodology" and the "budget tool" and needed to make them available to Plaintiffs if Plaintiffs wished to use them for their individual administrative hearings on their budgets.  TRO Motion ¶ 2 asked that Defendants

> make publicly available the methodology the defendants use under the Idaho Developmental Disabilities waiver to compute individual budgets for the

---

[1] See IDAPA 16.03.10, Rules 112.01 and 114 (annual review of participant eligibility for outpatient mental health services), 124.01 and 129.04 (annual review of participant eligibility for psychosocial rehabilitative services), 302.04 and 304.01.c (annual review of participant eligibility for personal care services), 328.04.c and 328.05.c (annual review of participant individual service plans), 509.02 (annual review of developmental disability participant eligibility for services), 514.01.b (participant individualized budgets will be re-evaluated annually); 512.03 and 512.04 (annual review of medical and developmental history and Scale of Independent Behavior – Revised (SIB-R) of participants on developmental disability (DD) waiver); 513.12 (participant plan of service annually re-authorized); 514.01.b (participant individual budgets re-evaluated annually); 653.05.c (annual review of participant Individual Program Plan), 702.06.a (annual review of participant financial eligibility); 727.02 (annual review of medical, psychiatric, social, educational and other services needed by participant); 728.02.b (service coordination plan updated at least annually); 584.09 (annual redetermination of level of care for community services).  See the 2011 codification of these rules on the web at http://adminrules.idaho.gov/rules/current/16/0310.pdf.

[2] 42 CFR §431.200(b) (State agency must have procedures for an opportunity for a hearing if it suspends, terminates or reduces services); §432.206(b)(1), -(b)(2) and -(c)(2) (when it takes action State agency must give notice to affected person of right to a hearing and how to obtain a hearing); §431.210(b) and -(c) (notice must contain reasons for intended action); §431.241(b) (when a hearing is requested, it must cover decisions changing the type or amount of services); §431.242(a) (when a hearing is held, participant must have opportunity to look at case file and documents that the agency will use at hearing a reasonable time before the hearing and during the hearing); IDAPA 16.03.10, Rules 513.13.b (participant who disagrees with Department authorization of services may appeal); 514.01.a (for DD budget waiver participants, notifications setting budget amount include how participant may appeal budget amount).

>plaintiffs and other waiver participants, and to provide the plaintiffs with an opportunity to inspect all materials in their own files maintained by the defendants or their contractors, including the actual spreadsheets and formulas used to compute their individual budgets in this and prior years sufficiently in advance of any hearing concerning their budget or waiver services.

The TRO Motion also asked for an order preventing a reduction in Plaintiffs' services or restoring the former level of their services "unless and until the defendants first provide adequate advance notice, approved by this Court, and the opportunity for a fair hearing prior to the reduction or termination of services." Dkt. 4, ¶ 1.

After argument on the TRO Motion, the parties stipulated to the First TRO based upon the Court's oral ruling. Dkt. 31. Among other things the First TRO reinstated Plaintiffs' former level of services and required that "defendants first provide adequate advance notice, approved by this Court, and the opportunity for a fair hearing prior to the reduction or termination of services." *Id.*, p. 2. The First TRO reserved ruling on other issues. *Id.*, p. 3.

The Parties next stipulated to entry of a Second TRO. Dkt. 33. The Second TRO provided a list of materials personal to each Plaintiff's budget determination that Defendants would provide upon request. Second TRO, Dkt. 34, ¶ 1.a-c. The Second TRO also described additional materials that would be provided upon request. *Id.*, ¶¶ 2-3. These paragraphs of the Second TRO were thus directed to disclosure of what are elsewhere called the "individual budget setting methodology" and the "budget tool".

Lastly, the Parties stipulated to entry of a Preliminary Injunction. Dkt. 38. The Preliminary Injunction (PI), Dkt. 41, required reinstatement of prior service levels "unless and until the defendants first provide adequate advance notice, approved by this Court, and the opportunity for a fair hearing prior to the reduction or termination of services." Dkt. 41, ¶ 1. The PI specified in detail the information that Plaintiffs and members of the general public could request for inspection and copying regarding what is elsewhere called the "individual budget setting methodology" and the "budget tool". See *id.*, ¶¶ 2(a)-(e), including eighteen numbered subparts under 2(e).

The First and Second TROs and the PI did not resolve what notices the Court would approve for use in Plaintiffs' administrative proceedings. That matter was set for further briefing. Dkt. 39. This Memorandum addresses Defendants' position on the notices and urges the Court to approve the Notices attached to the Motion to Approve Defendants' Proposed Notices.

## II.

### THE COURT SHOULD APPROVE THE NOTICES ATTACHED TO DEFENDANTS' MOTION

**A.    Description of the Proposed Notices**

There are three notices attached to the Motion. They are described in turn in this Memorandum and in the Declaration of Arthur Evans, ¶ 8.

*Notice 1* is designed for use for five Plaintiffs: C.M and R.P., who appealed their budget and received final administrative decisions from IDHW; T.F., who never appealed the budget at all; and N.R. and T.M., who appealed their service plans. These Plaintiffs earlier had the opportunity to appeal issues other than their individual budget setting methodology and the budget tool. *Notice 1* identifies these two issues and gives them the opportunity to appeal regarding their individual budget setting methodology and the budget tool.[3] Evans Dec., ¶ 8.

---

3    *Notice 1* provides on pages 1-2:

   Using information from the Inventory of Individual Needs, a complete case file review conducted by the Regional Independent Assessor and the budget calculating tool, your individualized budget was calculated to be $_____ for the _____ budget year. Electronic copies of the spreadsheets/individual budget calculations used to compute your individual budget are available upon request.

   …

   If you believe that your individualized budget amount for the _____ year was calculated incorrectly based upon any issues you have with the budget calculating methodology used to calculate your budget, you now have the right to appeal these issues consistent with the First Temporary Restraining Order entered by the U.S. District Court for the State of Idaho in *K.W., et al. v. Armstrong, et al.*, case no. 1:12-cv-00022.

   To appeal your individualized budget amount for the ____ year based on any issues you have with the budget calculating methodology, you must request a Department administrative hearing as stated in IDAPA 16.05.03.101. However, you must mail the request for an administrative hearing **within 28 days from the date this notice was mailed.** An attorney or any person of your choice may represent you.

MEMORANDUM IN SUPPORT OF MOTION TO APPROVE DEFENDANTS' PROPOSED NOTICES - 4

*Notice 2* is designed for use for six Plaintiffs — A.L., B.B., KI.S., KI.W., both M.S.s — who appealed their budgets and whose cases have not yet gone to administrative hearing. Their earlier appeal notices did not provide them the opportunity to appeal issues associated with their individual budget setting methodology and the budget tool. *Notice 2* identifies those issues and gives them the opportunity to appeal those issues along with other issues.[4]  Evans Dec., ¶ 8.

---

> Please note that your service plan will be continued until such time as you are provided an opportunity for fair hearing on the appeal referenced in this notice.
>
> Your attorney, Richard A. Eppink in the *K.W., et al v. Armstrong, et al.*, case no. 1:12-cv-00022, has made the request for, and the Department will provide copies of, the spreadsheets for calculating your individual budget, prior years' budgets, and all descriptions, reports, studies and other records concerning the Department's present and prior methodologies, models, tools, spreadsheets, memoranda, training manuals, instructions and other materials provided to the Independent Assessors that are in the custody, control and/or possession of the Department. The Department has information on the budget calculating methodology from the year 2008 forward.

The last two paragraphs quoted above (beginning with the words "Please" and "Your") are repeated in Notices 2 and 3 and are not reproduced in full in the footnotes below.

[4]   *Notice 2* provides on pages 1-2:

> Using information from the Inventory of Individual Needs, a complete case file review conducted by the Regional Independent Assessor and the budget calculating tool, your individualized budget was calculated to be $_____ for the ____ year. Electronic copies of the spreadsheets/individual budget calculations used to compute your individual budget are available upon request.
>
> …
>
> You have filed a timely appeal of the original Annual ICF/ID Level of Care and DD Eligibility Approval Notice and no fair hearing has been conducted to date (such appeal referred to as the pending appeal).
>
> You now have an additional basis to appeal the individual budget amount for the ___ year. If you believe that your Individualized budget amount was calculated incorrectly based upon any issues you have with the budget calculating methodology used to calculate your budget, you now have the right to appeal these issues consistent with the Temporary Restraining Orders entered by the U.S. District Court for the State of Idaho in *K.W., et al. v. Armstrong, et al.,* case no. 1:12-cv-00022. To appeal your Individualized budget amount based on issues with the budget calculating methodology, you must request a Department administrative hearing as stated in IDAPA 16.05.03.101. However, you must mail the request for an administrative hearing **within 28 days from the date this notice was mailed. An attorney or any person of your choice may represent you. Upon receipt of the notice of appeal, if you file one, the Department will consolidate the appeal with the pending appeal and hold a fair hearing.**

See the last two paragraphs quoted in footnote 3 for additional paragraphs contained in Notice 2.

*Notice 3* is designed for C.L., the Plaintiff whose appeal was dismissed by stipulation of the parties. Like Notice 2, *Notice 3* identifies issues with the individual budget setting methodology and the budget tool and gives C.L. the opportunity to appeal those issues along with other issues.[5] *Notice 3* could also be used for the other Plaintiffs. For example, if one of them is near an annual reevaluation and does not wish to initiate an administrative proceeding on a past budget that is likely to be superseded by a new budget, then Notice 3 would be sent to that Plaintiff when the new budget is established. Evans Dec., ¶ 8.

## B.     Application of Governing Legal Standards to Defendants' Proposed Notices

The legal standards for notice come from:

Code of Federal Regulations, Title 42.  Public Health

Chapter IV.  Centers for Medicare & Medicaid Services, Department of Health and Human Services

Subchapter C.  Medical Assistance Programs

Part 431.  State Organization and General Administration

Subpart D.  Appeals Process, §§ 431.151 through 431.250

---

5      *Notice 3* provides on pages 1-2:

> Using information from the Inventory of Individual Needs, a complete case file review conducted by the Regional Independent Assessor and the budget calculating tool, your individualized budget was calculated to be $_____ for the ___ year. Electronic copies of the spreadsheets/individual budget calculations used to compute your individual budgets are available upon request.
>
> …
>
> The appeal you had previously filed has been dismissed by stipulation of the parties. However, you now have another opportunity to appeal your calculated budget for the _____ year if you believe:
>
> - Your individualized budget amount was calculated incorrectly based upon any issues you have with the budget calculating methodology used to calculate your budget; and/or
> - A specific need was inaccurately assessed or missed; and/or
> - There have been documented changes in your condition since the time of your assessment that result in need(s) that meet medical necessity criteria and these need(s) are not reflected on your current inventory of individual needs.
>
> To appeal your calculated budget for the _____ year, you must request a Department administrative hearing as stated in IDAPA 16.05.03.101. However, you must mail the request for an administrative hearing **within 28 days from the date this notice was mailed.** An attorney or any person of your choice may represent you.

See the last two paragraphs quoted in footnote 3 for additional paragraphs contained in Notice 3.

Sections 431.200 and -.201 provide that a State agency decision to reduce services is an "adverse determination".[6]  Section 431.206 provides that an individual who receives an adverse determination must receive a written notice of appeal rights within the agency.[7] Section 431.210 describes the required notice:

> **Notice**
> **§431.210 Content of notice.**
>
> A notice required under §431.206(c)(2), (c)(3), or (c)(4) … must contain —
>
> (a)  A statement of what action the State … intends to take;

---

[6]  42 CFR §§431.200 and -.201 provide in pertinent part.

>  **General Provisions**
>  **§431.200 Basis and scope.**
>
>  This subpart —
>  …
>  (b)  Prescribes procedures for an opportunity for a hearing if the State agency … takes action, as stated in this subpart, to suspend, terminate, or reduce services, … .
>
>  **§431.201 Definitions.**
>
>  For purposes of this subpart:
>
>  Action means a termination, suspension, or reduction of Medicaid eligibility or covered services. …
>
>  Adverse determination means a determination made in accordance with sections 1919(b)(3)(F) or 1919(e)(7)(B) of the Act … that the individual does or does not require specialized services.
>
>  ….
>
>  Notice means a written statement that meets the requirements of §431.210.

[7]  42 CFR §431.206 provides in pertinent part:

>  **§431.206 Informing applicants and recipients.**
>  …
>  (b)  The agency must, at the time specified in paragraph (c) of this section, inform every applicant or recipient in writing —
>
>   (1)  Of his right to a hearing;
>   (2)  Of the method by which he may obtain a hearing; and
>   (3)  That he may represent himself or use legal counsel, a relative, a friend, or other spokesman.
>
>  (c)  The agency must provide the information required in paragraph (b) … —
>   …
>   (2)  At the time of any action affecting his or her claim;
>   …
>   (4)  At the time an individual receives an adverse determination by the State with regard to the preadmission screening and annual resident review requirements of section 1919(e)(7) of the Act.

  (b) The reasons for the intended action;

  (c) The specific regulations that support, or the change in Federal or State law that requires, the action;

  (d) An explanation of —

   (1) The individual's right to request an evidentiary hearing if one is available, or a State agency hearing; or

   (2) In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and

  (e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested.

With regard to the issue before the Court, Defendants' Notices 1, 2 and 3 inform the participants about their individual budgets as follows:

  (a) a statement of the actions to be taken (setting an individual budget using information from the Inventory of Individual Needs, a complete case file review and the budget calculating tool),

  (b) the reasons for the intended action (the budget is set using information derived from the Inventory of Individual Needs, a complete case file review and the budget tool),

  (c) that the Inventory of Individual Needs, a complete case file review and the budget tool are the reasons for the action taken,

  (d) a statement of the participant's right to request an evidentiary hearing, and

  (e) an explanation of the circumstances under which Medicaid will be continued if a hearing is requested.

Accordingly, without referring to any of the evidentiary materials filed in support of the Motion, Notices 1, 2 and 3 attached to the Motion should be approved as a matter of law because they comply with the requirements of 42 CFR §431.210.  However, in discussions with Plaintiffs' counsel regarding the notices to be provided, Defendants believe that Plaintiffs may propose a notice along the line of notices informally exchanged between the parties.  The remainder of this brief discusses the evidentiary materials filed in support of this Motion that describe why Plaintiffs' proposed notice is administratively impracticable.

Defendants also maintain that the only issue now before the Court is whether Defendants' proposed Notices meet the requirements of Federal law, which is a straight up-and-down call. If Plaintiffs later propose alternative notices and maintain that their alternative notices should be adopted by the Court, Defendants as representatives of a Sovereign will maintain that Plaintiffs have a right to adjudicate whether IDHW's proposed notices comply with Federal law and to enjoin Defendants from using a notice that does not comply with Federal law, but Plaintiffs have no right to compel the Sovereign to use the notice that Plaintiffs prefer in place of other notices that comply with Federal law. *Cf. Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101-103, n.11 (1984) (in a class action regarding treatment of mentally retarded, suits in law and equity were barred by the Eleventh Amendment if the judgment sought would require expenditures from the public treasury, interfere with public administration, or would restrain the State from acting, or to compel it to act, except as required by Federal law).

### III.

### PLAINTIFFS' PROPOSED NOTICES EARLIER EXCHANGED BETWEEN THE PARTIES ARE ADMINISTRATIVELY IMPRACTICABLE

The Declaration of Dayna Wilhite-Grow provides as Exhibits C (a blank notice) and D (a notice giving an example of how Exhibit C's blanks might be filled in) two notices that Plaintiffs earlier proposed that IDHW use as its notices to Plaintiffs. Wilhite-Grow Declaration, ¶ 6. These notices are five pages long and have several places where textual information or narrative must be inserted. Looking at Ex. D, page 2 of the notice, which is page 3 of the ECF document, contains two places where text specific to the individual participant must be inserted and two more places where a combination of text and numerical data specific to the individual participant must be inserted (these are shown in bold). The following page of Ex. D has three more places where a combination of text and numerical data specific to the individual participant must be inserted (also shown in bold). Examination of Ex. C and D shows that the blanks that would need to be filled in would require knowledge of, *e.g.*, what categories of services may or may not

be included as possible budget items from one year to the next and which categories change in maximum amount that may be provided from one year to the next.

Ms. Wilhite-Grow is a Medical Program Specialist with IDHW who is the contract monitor for IDHW's contract with Idaho State University's Idaho Center for Disabilities Evaluation (ICDE), which furnishes Independent Assessment Providers (IAPs) who determine eligibility to participate in IDHW's Developmental Disability programs.  Wilhite-Grow Dec., ¶ 2; Ex. A., pp. 2-3 (contract cover sheet designates Wilhite-Grow as contract monitor); pp. 4-12 (contract).  The persons who now generate the notices and who would create the notices proposed by Plaintiffs are fourteen IAPs furnished under that contract.  *Id.*, ¶¶ 2-3; Ex. A, pp. 4-13 (contract), pp. 38-41 (Attachment A—Staffing).  IAPs generate the notices by entering their assessments into IDHW software (a part of the budget tool), which produces the budget from information in the medical/social/developmental history or evaluation, the Scale of Independent Behavior – Revised (SIB-R), and the Inventory of Individual Needs.  *Id.*, ¶¶2-4; Ex. A, pp. 18-26 (Scope of Work).  Exhibit B contains templates for those notices.  *Id.*, ¶ 2.

The Independent Assessment Providers are not involved in developing or updating IDHW's budget tool and are not required to provide budget analyses.  Their job qualifications do not require such training.  IDHW's contract does not contemplate that Independent Assessment Providers will provide budget analysis services.  IAPs are not required to understand the development or operation of the budget tool.  Wilhite-Grow Dec., ¶¶ 3-4; Ex. A, pp. 18-26 (Scope of Work), pp. 36-37 (Attachment A—Staffing).  Ms. Wilhite-Grow declares that "the notices proposed by the plaintiffs in this case … would assign many new and costly duties to the IAPs who are not trained to carry them out" and "many of the new duties would be outside the scope of the current contract."  *Id.*, ¶ 6.

Declarant Arthur Evans is the Bureau Chief for the IDHW Division of Medicaid Bureau of Adult Developmental Disabilities.  Evans Declaration, ¶ 1.  As he explains, Idaho provides services to developmentally disabled adults that are not required by Federal law under a waiver approved by the US Department of Health and Welfare.  Those services include Residential

Habilitation, Chore Services, Respite, Supported Employment, Transportation, Environmental Accessibility Adaptations, Specialized Equipment and Supplies, Personal Emergency Response System, Home Delivered Meals, Skilled Nursing, Behavioral Consultation/Crisis Management, Adult Day Care and Self Directed Community Supports. *Id.*, ¶ 3.

The Bureau of Adult Developmental Disability Services (DDS) program serves about 3,600 participants, who must be initially assessed or re-assessed each year. A participant's budget may change from year to year to reflect the annual reassessment of needs. In a given year about 10%-15% of the participants appeal their calculated budgets. Even without a formal appeal every participant's individual service plan is reviewed and approved by DDS Care managers to ensure that the participant's health and safety needs are fully met. Evans Dec., ¶ 4.

The notices proposed by the Plaintiffs are voluminous and provide more information than required by 42 C.F.R. §431.210. The DDS program writes its notices in plain language, not in the more complicated language that Plaintiffs propose. Moreover, Plaintiffs' proposed notices are not notices of legal rights of appeal, but are budget analyses. A participant's budget details will be provided upon request to any participant. Evans Dec., ¶ 5. If past patterns were to continue, only 10%-15% of the participants would ask for this additional information. *Id.*, ¶ 6.

The Idaho Center for Disabilities Evaluation completes about 15 eligibility determinations per business day. Plaintiffs' proposed notices would require it to spend additional time to incorporate the information concerning specific budgeted amounts, etc., and ICDE does not now have the staff to perform that work, which is beyond the scope of work in IDHW's contract with ICDE. Mr. Evans estimates that it would take two additional analysts to perform the work required by the proposed notices at a cost of $131,600. Evans Dec., ¶ 7; Ex. B.

The Wilhite-Grow and Evans Declarations show that it would be administratively impracticable to use the notices earlier proposed by Plaintiffs. Without regard to whether the Plaintiffs have a legal right to dictate the contents of a notice, their notices should not be used because of administrative impracticability.

## IV.

## CONCLUSION

For the reasons stated in this memorandum and its supporting Declarations, the Court should grant Defendants Motion to Approve Defendants' Proposed Notices.

DATED this 23rd day of March, 2012.

                                                 STATE OF IDAHO
                                                 OFFICE OF THE ATTORNEY GENERAL


By     /s/ Michael S. Gilmore
          MICHAEL S. GILMORE
          Deputy Attorney General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of March, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Richard Alan Eppink
ritchieepink@idaholegalaid.org

Howard A. Belodoff
howardbelodoff@idaholegalaid.org

                                                 /s/ Michael S. Gilmore
                                                 MICHAEL S. GILMORE