IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W, et al., | |
| Plaintiff, | Case No.  1:12-CV-22-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare, et al. | |
| Defendants. | |

**INTRODUCTION**

The Court has before it a motion by the Idaho Department of Health and Welfare (IDHW) asking the Court to approve a form of Notice to be given to plaintiffs informing them that their budgets for home-care have been reduced. The motion is fully briefed and at issue.  For the reasons explained below, the Court will deny the motion.

**BACKGROUND**

Plaintiffs are developmentally disabled adults who qualify for benefits under Medicaid.  They are eligible for long-term institutional care but choose to live instead in their own homes or in community settings. When their Medicaid payments were reduced, they brought this action against IDHW, alleging, among other things, that the notices sent by IDHW informing them of the reductions were insufficient.  The Court enjoined the

**Memorandum Decision & Order - 1**

reductions, and the parties eventually agreed to the terms of a preliminary injunction that maintained the status quo and provided plaintiffs with information regarding their budget reductions.  IDHW then filed the present motion to approve the form of Notice that they sent to each plaintiff.  The Court will determine whether the Notice is sufficient after reviewing the Medicaid provisions at issue here.

Moving the disabled out of institutions, and into homes, can save money and improve care.  *See Ball v. Rodgers*, 492 F.3d 1094, 1098 (9th Cir. 2006).  Medicaid recognized this by allowing states to set up "Home and Community-Based Services" ("HCBS") to allow the disabled to "waive" their entitlement to institutional care in return for receiving community-based care.  The State of Idaho participates in Medicaid and the HCBS program.  In Idaho, the program is known as the Developmental Disabilities Waiver ("DD Waiver") program, and is administered by IDHW.

The plaintiffs all participate in the Idaho DD Waiver program.  The purpose of the program is "to prevent unnecessary institutional placement, provide for the greatest degree of independence possible, enhance the quality of life, encourage individual choice, and achieve and maintain community integration." IDAPA 16.03.10.700.

For each participant in the DD Waiver program, the IDHW annually prepares a "budget" that sets a limit on the expenses authorized for that person.  The budget is calculated by IDHW's budget tool software based on inputs from Independent Assessment Providers (IAPs) hired by an IDHW contractor, the Idaho Center for Disabilities Evaluation ("ICDE").

**Memorandum Decision & Order - 2**

The IAPs visit with participants and a "respondent," typically the legal guardian or family member, to assess that person's needs. *See Whilhite-Grow Declaration (Dkt. No. 42-6)* at ¶¶ 2-3. The IAP will also examine any medical provider's records. *Id.* Following these evaluations, the IAP fills out a form called an "Inventory of Individual Needs." *See Exhibit C (Dkt. No. 53-5)* at p. 20. The form has numerous boxes to check that in aggregate describe how the participant is affected by her disability. For example, the boxes to be checked describe such things as (1) type of disability, (2) need for psychotropic medications or nursing services, (3) level of hearing, vision and mobility, (4) assistance needed for feeding, dressing, and toileting, and (5) living situation, among other things. *Id.* The Inventory is about 6 pages long. *Id.*

The IAP fills out the Inventory by hand, and then enters the information into a computer form known as an Individualized Budget Calculation (IBC). The IBC contains fields corresponding to categories of needs. For example, there are fields for "Feeding," "Toileting," and "Need for Nursing Services," among others, corresponding to the boxes described above in the Inventory of Individual Needs.[1] The IAP carries over the data from the Inventory into the IBC.

When a field is completed on the IBC, the IDHW's budget tool software automatically calculates what Medicaid would pay toward meeting that need. For example, the IAP has four options to describe the level of assistance that a participant

---

[1] There are other inputs necessary to complete the form so this description is not intended to be exhaustive.

**Memorandum Decision & Order - 3**

might need with tolieting: (1) independent, (2) supervision, (3) assistance, or (4) total support.  On the IBC, there is a "Toileting" field; if the IAP enters "assistance" in that field, the budget software automatically calculates the dollar amount Medicaid would pay toward meeting the need of assistance with tolieting.  If the IAP enters "total support" instead, the software would automatically enter a higher dollar figure.  The important point here is that the IAP describes the need, and the budget software calculates the dollar figure Medicaid pays for that need.

The budget tool software program runs a spreadsheet that lists all the need categories and their corresponding dollar amounts.  The software starts with a dollar figure for the budget calculation that is called the "constant."  That is the budget the participant starts with, and it is either reduced or increased depending on the IAP's evaluation of the various needs of the participant.  In the case of plaintiff K.C. for the period 2011 to 2012, her constant was $24,476.75.  *See Exhibit C (Dkt. No. 43-4)*.  When the IAP entered K.C.'s age in the appropriate field in the IBC, the budget tool software subtracted $3,190.68 from the constant.  *Id.*  When the IAP inputted her specific type of living situation, the software added $8,881.87 to the constant.  *Id.*  There were other reductions and additions to the constant until the final budget – the Assigned Budget Amount – was calculated by the software.

When the IAP has finished filling out all the fields on the IBC, and the budget tool software has calculated a Assigned Budget Amount, the software automatically exports this data into a Notice that is then sent to the participant.  This is the Notice that the

**Memorandum Decision & Order - 4**

IDHW asks the Court to approve in its motion now before the Court.

The Notice starts out by informing the participant that they are eligible for the program, and then, after explaining in general terms how budgets are calculated, sets forth the specific Assigned Budget Amount for that participant.  Because the language of the Notice is critical to the IDHW's motion, the Court will set it out in pertinent part below:

> The Department has determined you eligible for developmental disability services according to Section 66-402(5), Idaho Code, and that you meet Intermediate Care Facility for People with Intellectual Disabilities ("ICF/ID") Level of Care criteria for adults with developmental disabilities, as defined in Medicaid Enhanced Plan rules at IDAPA 16.03.10.584.
>
> Pursuant to 42 CFR 441.302(c) and IDAPA 16.03.10.514, the Department notifies each participant of his or her annual individual set budget amount as part of the annual eligibility determination and redetermination process. The Department calculates your individualized budget using information entered on the Inventory of Individual Needs about your medical needs, abilities and limitations, service and support desires, history of expenditures (when available) and other relevant characteristics. This information was obtained through an interview with you and a person authorized to speak on your behalf during the Department's assessment, and from your complete case file, which was reviewed by a Regional Independent Assessor. Information from the Inventory of Individual Needs is entered into the Department's budget calculating tool, which uses a formula to calculate your individualized budget. For the _____ budget year, your individualized budget was calculated to be $ _____.
>
> Copies of the spreadsheet ("Individualized Budget Calculation Tool") and Inventory of Individual Needs used to compute your current individual budget are attached to this Notice. Additionally, you can request any information from your file at any time. Additional information on the Department's current budget tool methodology can be found at http://www .. _____

*See Exhibit C (Dkt. No. 53-5).*

As stated above, the Notice contains an attachment that includes copies of the IBC and the Inventory of Individual Needs for that participant.  That attachment is prefaced by

**Memorandum Decision & Order - 5**

a Cover Sheet that describes in general terms how the IDHW computes budgets and

defines the terms used in the IBC.  The Cover Sheet is titled "Understanding Your

Individualized Budget Calculation," and it states as follows:

> In preparation for the eligibility determination or annual reevaluation process
> to determine your eligibility for services in the upcoming year, an assessor was
> assigned to your case. You may recall that this assessor met with and obtained
> information from you, and/or your family member(s), caregiver(s), provider(s),
> or representative(s). The assessor asked various questions related to the
> information found in the enclosed Inventory of Individual Needs, may have
> observed you, and reviewed your file. The information collected by the
> assessor as part of this process was put into the enclosed filled out
> Inventory of Individual Needs. The information from the filled out Inventory
> of Individual Needs was then put into the enclosed "Individualized Budget
> Calculation," which is the basis for determining your annual budget amount.
> You or your family member(s), caregiver(s), provider(s), or representative(s)
> signed a statement verifying the truth and accuracy of the responses provided
> to the questions asked on the Inventory of Individual Needs as part of this
> process.  Enclosed with this cover sheet are three sets of documents: (1) your
> filled out Inventory of Individual Needs; (2) your Individualized Budget
> Calculation; and (3) a blank six-page Inventory of Individual Needs printout
> summary that describes all of the categories of information and possible
> answers used in preparing your Individualized Budget Calculation ("Blank
> Inventory of Individual Needs"). This six-page printout was used by the
> assessor assigned to your case in the evaluation process. For a description of
> the categories of information in your filled out Inventory of Needs and your
> Individualized Budget Calculation, along with the possible answers to the
> questions in these documents, please refer to the Blank Inventory of Individual
> Needs.  To determine your budget, the Idaho Department of Health and
> Welfare uses an Adult Developmental Disabilities Individual Budget model
> that determines your individual budget amount based on a mathematical
> equation. The formula calculates a level of funding for you according to
> specific responses in your filled out Inventory of Individual Needs. Those
> responses are weighted according to a current Budget Tool Methodology.' The
> enclosed Individualized Budget Calculation contains a spreadsheet of various
> budget amounts and two main columns. One set of columns is labeled "Model"
> and the other set of columns is labeled "Calculation." The scores from your
> Inventory of Individual Needs are also reflected in this spreadsheet.  The
> "Model" columns shows the default budget amounts that you could possibly

**Memorandum Decision & Order - 6**

qualify for depending on your scores from the Inventory of Individual Needs, i.e. these are the amounts that are weighted against your actual scores. The "Model" columns are further broken down into categories of "Model Coefficient," which represents a mid-level of funding, and also a "Lower Margin" and an "Upper Margin," which represents the model low and high level of funding. The "Calculation" set of columns represents your needs and the funding that has been assigned to you based upon the scores from your filled out Inventory of Individual Needs and again shows a "Model Coefficient" and a "Lower Margin" and "Upper Margin." [footnote 1: The Budget Tool Methodology uses a model that relies on the input of multiple variables. More detailed information about the Department's current Budget Tool Methodology can be found at http://www. , or upon request from the Department.].  Your current year's budget was calculated using the "Model Coefficient" in the "Calculation" set of columns on the spreadsheet and was compared with your previous year's budget to determine whether it is sufficient or excessive given your needs in the past. If the resulting budget calculation differs by more than 25% from the previous year's budget, the Department will instead use the "Lower Margin" or "Upper Margin" amounts for the current year's budget. [footnote 2:  For example, if your calculated budget is $40,800 using the "Model Coefficient," $24,000 at the lower margin and $57,600 at the upper margin, $40,800 would be compared with last year's budget. If last year's budget was $62,000, there is a -34% difference from last year and the assigned calculated budget would reflect the upper margin amount of $57,600. If the previous year's budget was $52,000, there would be a -22% difference, and the assigned calculated budget would remain at $40,800. If last year's budget was $32,000, there would be a 28% difference, and the assigned calculated budget would reflect the lower margin amount of $24,000. Your spreadsheet shows the three calculated amounts as well as last year's budget, and the percentage difference, if any.].   For additional information regarding how to interpret your Individualized Budget Calculation or any document contained with this cover sheet, please contact the Department.

*Id*. at p. 16.  Following this Cover Sheet is a copy of the participant's IBC and Inventory of Individual Needs.

Plaintiffs' main complaint with this Notice and its attachments is that it fails to explain any changes in the participant's budget.  For example, if a particular participant's budget is reduced, there is nothing in the language set forth above – and no place to add

**Memorandum Decision & Order - 7**

any language – that identifies the changes that resulted in that reduced budget.  IDHW

responds that the plaintiffs can figure out why their budget changed by examining the

attached IBC and Inventory of Individual Needs, both of which are specific to that

particular participant.  By comparing this year's IBC and Inventory with last year's, the

participant can identify the changes and understand why, for example, her budget was

reduced, according to IDHW.

     In the motion now pending before the Court, IDHW asks the Court to approve the

Notice described above.

## ANALYSIS

     Medicaid requires that the IDHW notices "must contain . . . [t]he reasons for the

intended action."  *See* 42 C.F.R. § 431.210(b).  The notices must "detail[] the reasons for

a proposed termination" sufficiently enough for a recipient to challenge both the

application of the law to their factual circumstances and the "factual premises" of the

state's action.  *Goldberg v. Kelly*, 397 U.S. 254, 267–268 (1970).  The explanation in the

notice itself must be more than a "general explanation" or "conclusory statement," and

must provide at least "a brief statement of [the decision's] factual underpinnings."

*Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992).

     In other words, the law requires an explanation for any change.  The participant is

entitled to know why her budget was changed so she can determine whether to challenge

the change.  *Goldberg* recognized that without such an explanation, the right to challenge

the change is substantially impaired, if not meaningless.

**Memorandum Decision & Order - 8**

The Notice proposed by the IDHW fails this test.  It contains no language explaining why a particular participant's budget was changed.  The attachments likewise contain no explanation. For example, plaintiff K.S.'s budget was reduced by $8,668.41 in 2011 as compared to 2010, but this reduction is nowhere explained.[2]  IDHW claims that the explanation can be found by studying the IBC and Inventory of Individual Needs to determine how certain factors listed therein changed from the prior year.  However, the Court has examined the IBC spreadsheets for plaintiff K.S. and cannot determine from them why her budget was reduced by $8,668.41.  *Compare Exhibit C (Dkt. No. 43-4) with Exhibit D (Dkt. No. 43-5)*.[3]

The IDHW claims that an explanation, along with the other changes proposed by plaintiffs, would be unduly expensive to provide.  The additional work would require, the agency claims, "an additional two analysts" at a cost of $131, 600 annually at a time when the agency "does not have money in its budget for these positions."  *See Evans Declaration (Dkt. No. 42-2)* at ¶ 7.  The IDHW also points out that its notices "are currently auto generated from the database with one database record" and that "[t]he database would need to be upgraded to pull historical data in order to do a historical

---

[2]  This is computed by using the figures on K.S.'s IBC for 2011-12.  *See Exhibit C (Dkt. No. 43-4)*.  It shows her "Previous Year Budget" as being $42,887.07 and her current year's budget as being $34,218.66.  The difference between these two figures is $8,668.41, the figure referred to above.

[3]  In comparing the two IBC's, it is not apparent that anything changed with regard to the plaintiff K.S.'s condition or personal needs.  It does appear that the form changed, making comparisons more difficult.  There may also have been system-wide changes to the way payment was allocated for the constant, nursing services, waiver, psychotropic medications, and transportation.  But none of this is clear from the forms.

**Memorandum Decision & Order - 9**

budget data analyses for the notices.  *See Wilhite-Grow Declaration (Dkt. No. 53-1)* at ¶ 4.  A data base upgrade, according to IDHW, "would involve implementing a completely new system with custom programming from a team of very skilled programmers. This could potentially cost millions of dollars." *Id.*

This cost estimate is based on the IDHW's perception that plaintiffs' proposed notice would require the agency to provide plaintiffs "with a ready-made defense for this litigation." *See IDHW Reply Brief (Dkt. No. 53)* at p.6.  That is far more than the law requires, and far more than plaintiffs seek, rendering IDHW's cost estimate far more than is necessary.

Adding a simple explanation for any change need not be a million dollar budget-buster.  For example, the IAP could, without much effort, describe the changed circumstances she observed in the participant.  Former IAP Laurel Larsen described this process in her Declaration:

> An IAP who has completed a valid re-assessment will already have determined exactly which "Inventory of Individual Needs" factors have changed since the prior year, and will know exactly what the prior assessment for that factor was and what the current assessment is.  Obviously, an IAP will know why he or she assessed that factor differently.  Often, an assessment change is because of what the respondent reports. In those cases, for example, an IAP could easily explain the assessment change by simply stating who the respondent was and what the respondent said (e.g., "Jim Guardian reported that participant is now able to do laundry with supervision") . . . .
> [T]he additional work of listing the changed assessment factors and briefly explaining the reason for any changes—as called for in the draft budget notice revision—would take 30 minutes or less in cases where there are any changes at all. But in some cases, there are no changes. Usually, there are changes in only a few areas.

**Memorandum Decision & Order - 10**

*See Larsen Declaration (Dkt. No. 43-13)* at ¶¶ 10-11.  IDHW argues that the IAPs will be stretched beyond their expertise by having to explain the reductions because they are not required to know (1) the dollar amounts set automatically by the budget tool software, and (2) any system-wide changes in the way that Medicaid reimburses for services.  It is true that the IAPs do not need to understand points (1) and (2) to do their job.  As explained above, the IAP describes the need, and the software calculates the dollar figures to address that need.  And the IAP does not need to know that Medicaid is, for example, paying less this year for hearing loss on a system-wide basis – once again, the software takes care of the dollar amount of that reduction.

But while the IAPs may be unable to identify system-wide adjustments or changes in dollar amounts, they are well within their expertise in describing the participant's changed circumstances.  By sticking to what they know, the IAPs would move the Notice toward compliance with the law discussed above.  It would not, however, be entirely sufficient.  The system-wide changes that the IAPs cannot describe must be identified because they could be a big component of any budget reduction.  For example, if Medicaid reduced its payments for hearing loss on a system-wide basis, and a participant had received payment for hearing loss in the past, the participant may see a reduction in her budget as a result.  These system-wide changes would be well-known to IDHW officials, and they must briefly describe in the Notice those that affect the participant.

Without a summary of changes in individual circumstances and system-wide procedures, the Notice cannot comply with Medicaid regulations, quoted above, and

**Memorandum Decision & Order - 11**

*Goldberg.*[4]  While it is true that an astute respondent, scouring the Inventory attached to the Notice, might be able to discern changes in individual circumstances, it is just as likely that he may be confounded – the Court could not identify the changes in the K.S. example, discussed above.  And any system-wide adjustments are even harder to divine from the Notice and its attachments.

IDHW offered no rebuttal to plaintiffs' arguments on the K.S. example, but argues instead that providing explanations would upend its highly efficient computer-driven system and require expensive alterations.  Providing the explanations discussed above will require a modification to this system.  For example, where a reduction in budget was caused by both individual circumstances and system-wide changes, the Notice would need additional input from both the IAP and an IDHW official to explain those changes.  Even if the change was due to just one factor or the other, an additional explanation from either the IAP or an IDHW official would need to be made on the Notice.

While this will require some expense, IDHW has overstated the cost impact.  The required explanations will not require the agency to provide plaintiffs "with a ready-made

---

[4]  This analysis is supported by both cases cited by IDHW in its reply brief.  In *Baker v. State*, 191 P.3d 1005 (Alaska 2008), the court held that a form similar to the Inventory in this case must be provided to participants, although its provision would not constitute full compliance with *Goldberg*.  *Id*. at 1012.  The State had conceded at oral argument that it was now providing the form, *id.*, and yet the court still found the notice insufficient, reversed the trial court's approval of the notice, and remanded the case to the trial court.  *Id*. at 1013.  The case was later settled when the State agreed to "insert [a] short narrative statement explaining change" for both individual changes and system-wide changes.  *See Exhibit A to Order (Dkt. No. 59-1) Id.*  That is essentially what plaintiffs seek here.  In the other case, *Kuehl v. State*, 2011 WL 4830182 (Wash.App.Civ. 2011), the court found sufficient a notice that contained "explanations of and commentary on all of the State's determinations."  *Id*. at *7.  Again, that is what plaintiffs seek here.

**Memorandum Decision & Order - 12**

defense for this litigation," as IDHW fears.  *See IDHW Reply Brief (Dkt. No. 53)* at p.6.
The explanations need not be long, and would be prepared by IAPs and/or IDHW
personnel within the area of their expertise.

To this point, the parties have been adversaries in litigation, a posture that ensures
creative solutions will be ignored.  With guidance from this decision, the Court would
urge the parties to at least partially step out of that confined role, while still remaining
zealous advocates, and craft a solution that provides sufficient notice at a reasonable cost.

**Conclusion on Requirement that Notice Contain Explanation**

Because IDHW's proposed Notice fails to contain a sufficient explanation of
changes to the participant's budget, that Notice cannot pass muster under the law.  The
Medicaid regulations and *Goldberg* require that the IDHW Notice include a brief
statement explaining changes in the Assigned Budget Amount.  The Notice must include,
if applicable, a brief summary of changes affecting the participant's budget caused by
either (1) changes in the individual's condition or circumstances, or (2) changes to the
Medicaid system.  By "Medicaid system," the Court means either the national Medicaid
provisions or the State of Idaho provisions.  Changes to these provisions could include
changes to the assessment factors or "coefficients" – or changes in the mathematical
formulas themselves – used to compute dollar amounts, and changes resulting from a "tier
change" where the participant was placed in a different budget level because her budget
changed by a large amount.

**Notice and Appeal Rights**

In their opening brief, plaintiffs challenged the proposed Notice because it unduly limited participants' appeal rights.  Plaintiffs claimed that IDHW's original proposed notice inaccurately confined the circumstances under which a participant had the right to appeal.

Under the Medicaid regulations, IDHW must "grant an opportunity for a hearing to . . . [a]ny recipient who requests it because he or she believes the agency has taken an action erroneously." 42 C.F.R. §431.220(a)(2).  Apparently in response to plaintiffs' argument, IDHW redrafted its proposed Notice, broadening the language describing appeal rights to include the instance where IDHW "has acted erroneously with respect to the determination of your eligibility or the calculation of your budget, [or] has not acted with reasonable promptness."  That statement now appears sufficient under the regulations.

Plaintiffs also challenge IDHW's proposed Notice for its 28-day appeal requirement.  That proposed Notice states as follows:

> [Y]ou must mail the request for an administrative hearing within 28 days from the date this notice was mailed. You may choose to represent yourself, or an attorney or another person of your choice may represent you. See 42 CFR 431.200 et al. . . . If you request an administrative hearing within 28 days from the date this notice was mailed, your current services will continue until a decision is rendered after the administrative hearing.

*See Exhibit C (Dkt. No. 53-5)* at p. 4.  IDHW set the 28 day limit pursuant to 42 C.F.R. § 431.221 (d) that states that the "agency must allow the applicant or recipient a reasonable

**Memorandum Decision & Order - 14**

time, not to exceed 90 days from the date that notice of action is mailed, to request a

hearing."  IDHW argues that 28 days is a "reasonable time not to exceed 90 days."

This particular regulation, however, seems to conflict with 42 C.F.R. § 431.230(a),

which requires IDHW to maintain a participant's current level of services so long as the

participant requests a hearing before the "date of action."  The phrase "date of action"

means "the intended date on which a termination, suspension, reduction, transfer, or

discharge becomes effective."  42 C.F.R. §431.201.

Suppose an appeal request is filed after the 28-day deadline but before the "date of

action"?  Does the participant lose his right to appeal but at the same time maintain his

right to keep receiving the same level of services?  How are the two regulations to be

reconciled?  This is a conundrum and the briefs do little to sort it out.  The Court will

either need further briefing on the issue to resolve the apparent conflict, or the parties can

negotiate a compromise at the same time they discuss how to provide an explanation in

the Notice.

**<u>Other Issues</u>**

While the plaintiffs raise other issues, these matters may be sorted out as the

parties work toward an agreement on the form of the Notice.  It is enough at this point to

deny IDHW's motion.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for approval of

notice (docket no. 42) is DENIED.

IT IS FURTHER ORDERED, that the parties meet together in an attempt to reach agreement on a form of Notice given the direction in this decision.

DATED:  **August 2, 2012**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order - 16**