Richard Alan Eppink
ritchieeppink@idaholegalaid.org
Idaho State Bar no. 7503
**AMERICAN CIVIL LIBERTIES UNION**
**OF IDAHO FOUNDATION**
P.O. Box 1897
Boise, Idaho  83701
(208) 344-9750, ext. 206
(208) 344-7201 (fax)

James M. Piotrowski
Marty Durand
**HERZFELD & PIOTROWSKI, LLP**
P.O. Box 2864
824 W. Franklin
Boise, Idaho  83701
(208) 331-9200
(208) 331-9201 (fax)

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| K.W., by his next friend D.W, *et al.*, | ) | Case No. 1:12-cv-00022-BLW |
| | ) | (lead case) |
| Plaintiffs, | ) | |
| | ) | **BRIEF IN SUPPORT OF** |
| vs. | ) | **MOTION TO CERTIFY** |
| | ) | **A CLASS ACTION** |
| RICHARD ARMSTRONG, in his official capacity | ) | |
| as Director of the Idaho Department of Health and | ) | |
| Welfare, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| TOBY SCHULTZ, *et al.*, | ) | Case no. 3:12-cv-00058-BLW |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD ARMSTRONG, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## BACKGROUND AND DEVELOPMENTS

This consolidated class action challenges generic policies and procedures that the defendants ("IDHW") apply across the board to participants and applicants in one of its Medicaid programs—the Adult Developmental Disability Services program ("DDS program"). Of the about 3,600 participants in that program, 14 have brought this case as representatives of all those similarly situated. They challenge several systemic components of the program:

(1)     The assessment and budgeting methodology and formulas that IDHW uses to determine the maximum cost of services;

(2)     The form and method of notice that IDHW uses to inform participants and applicants about eligibility status, assessment results, and budget amounts; and

(3)     The administrative hearing procedures and practices that IDHW uses to decide appeals about eligibility, assessment, and budget decisions.[1]

This Court has already entered injunctions requiring IDHW to disclose its budgeting formula and methodology and prohibiting IDHW from using the form of notice it previously used for the DDS program.[2] Under those injunctions, the Court required IDHW to seek approval of a new form of notice.[3] The Department did move for approval of a new form of notice, but

---

[1] Thirteen of the plaintiffs—the plaintiffs from *K.W. v. Armstrong*, no. 12-cv-22, prior to consolidation—also made claims under the "free choice" provisions of the Medicaid Act and under *Olmstead v. L.C.*, 527 U.S. 581, 607 (1999). 1st Am. Compl. ¶¶ 101–114 [claims for relief nos. 8–11] (Dkt. 45, no. 12-cv-22). They do not move for class certification as to those claims. Instead, those claims should remain individual to the plaintiffs who brought them.

[2] Prelim. Inj. (Dkt. 41, no. 12-cv-22); Prelimin. Inj. re: Pl. E.L. (Dkt. 49, no. 12-cv-22); *cf.* Mem. Decision and Order (Dkt. 17, no. 12-cv-58).

[3] Prelim. Inj. at ¶ 1 (Dkt. 41, no. 12-cv-22).

BRIEF IN SUPPORT OF MOTION TO CERTIFY A CLASS ACTION – Page 2

this Court denied its motion, expressly holding that IDHW's proposed forms "cannot comply" with Medicaid regulations or with the U.S. Constitution.[4]

Yet even after this Court held that IDHW's proposed form of notice was unconstitutional, IDHW began sending it out to DDS program participants.[5]  Compounding the harm IDHW has knowingly caused by using these deficient notices, it also continues to operate an administrative hearing system in which participants are barred from challenging IDHW's budgeting methodology at all,[6] despite that the budget notices tell participants that they may appeal their budgets "based upon any issues you have with the budget calculating methodology used to calculate your budget."[7]  The first stages of discovery have also revealed that when IDHW does not agree with the legal interpretations of the hearing officers it employs, it trains its hearing officers to correct them and to ensure they issue rulings IDHW will agree with.[8]  For example, despite the clear command of *Goldberg v. Kelly*, that participants in programs like the DDS program must be permitted to appear "personally . . . before the official who finally determines

---

[4] Mem. Decision and Order 11–12 (Aug. 2, 2012) (Dkt. 66, no. 12-cv-22).

[5] 2d Decl. Klossner ex. B; Decl. Seiler ex. A; Decl. Henson ex. A; Decl. Wood ex. A; 4th Decl Eppink exs. W and X.

[6] 4th Decl. Eppink exs. U at 6 ("The Hearing Officer has no authority to invalidate the statistical model adopted by the Department . . . or, by extension, any changes or adjustments made to that model from year-to-year."),  V ("The Hearing Officer possesses no authority (or the technical ability) to review the Department's methodology.").

[7] 2d Decl. Klossner ex. B.

[8] *See, e.g.,* 4th Decl. Eppink exs. B, S, and T (internal IDHW emails and emails between IDHW and hearing officers).

BRIEF IN SUPPORT OF MOTION TO CERTIFY A CLASS ACTION – Page 3

continued eligibility," IDHW explicitly instructs its hearing officers on ways to discourage in-person hearings.[9]  397 U.S. 254, 268 (1970).

The plaintiffs in both cases challenging the DDS program budget, notice, and hearing procedures recently moved for consolidation of their actions (Dkt. 73, no. 12-cv-22; Dkt. 19 no. 12-cv-58).  They now move to certify a class of

> all persons who are participants in or applicants to the Adults Developmental Disability Services program ("DDS program"), administered by the Idaho Department of Health and Welfare as part of the Idaho Medicaid program, and who undergo the annual eligibility determination or reevaluation process.

That class will challenge the across-the-board features of IDHW's budget, notice, and hearing practices and policies.

## STANDARD

A class action is appropriate where (1) the class is so numerous that joinder would be impractical, (2) there are common questions of law or fact, (3) the class representatives' claims are typical of those in the class, (4) the class representatives would fairly and adequately protect the class's interests, and (5) one of the F.R.C.P. 23(b) options applies.  Here, IDHW's across-the-board budget, notice, and hearing policies, by definition, "apply generally to the class," and therefore the F.R.C.P. 23(b)(2) option obviously applies.  Because the common questions of law and fact about the IDHW budget, notice, and hearing practices also predominate over questions affecting individual class members, the F.R.C.P. 23(b)(3) option also applies.

---

[9] 4th Decl. Eppink at ex. B [AGO-000205–206].

BRIEF IN SUPPORT OF MOTION TO CERTIFY A CLASS ACTION – Page 4

**ARGUMENT**

The class includes more than 3,500 DDS program participants and applicants.  It would challenge general policies and practices that IDHW applies to the entire class, rather than any decisions applicable only to a particular individual.  Counsel and the class representatives have already demonstrated their effective, successful prosecution of these cases prior to consolidation. Especially because IDHW continues to send notices using forms that this Court has held are inadequate, certification of an F.R.C.P. 23(b)(2) class is appropriate at this time.

**A.  Joining the Thousands of  DDS Program Participants Would be Impracticable.**

There are thousands of participants in the DDS program.[10]  All of them receive eligibility and budget notices at least once a year.[11]  Even under IDHW's previous, noncompliant notice system, some 10 to 15 percent[12]—as many as 540 every year—of these participants appeal their budget amount and enter IDHW's administrative hearing system.  All members of the class have significant disabilities, and many would require a guardian *ad litem* if they were joined as a named party.[13]  Joinder of over 3,500 adults with developmental disabilities, plus their guardians, plus appointment of guardians *ad litem* for DDS program participants who lack both F.R.C.P. 17(c) competency and any formal guardian, would be a colossal project.  But it is an unnecessary one, for a class of just forty members is presumed to be sufficiently numerous.  *In re Wash. Mut. Mortgage-Backed Sec. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011); *cf. Rannis v. Recchia*, 380 Fed. Appx. 646, 651 (9th Cir. 2010).

---

[10] Decl. Evans ¶ 4 (Dkt. 42-2, no. 12-cv-22) (stating that the DDS program serves "approximately 3,600 participants").

[11] Decl. Grooms ex. A at 7 (Dkt. 25-4, no. 12-cv-22) ("Participants are notified of their eligibility for waiver services and given an annual budget at the time of their initial determination or annual

BRIEF IN SUPPORT OF MOTION TO CERTIFY A CLASS ACTION – Page 5

**B.     The Class Challenges Policies and Procedures that IDHW Applies Class-wide.**

This class action is only about the across-the-board policies and practices that make up IDHW's budget, notice, and hearing system.  By definition and design, this case challenges only the aspects of that system that are common to all members of the DDS program class.  This Court has already, in its preliminary injunction and notice approval decisions, recognized that the questions in this case can "generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc., v. Dukes*, ___ U.S. ___, ___, 131 S. Ct. 2541, 2551 (2011).  For instance, the Court determined that IDHW's proposed notice forms "cannot comply with Medicaid regulations . . . and *Goldberg*."[14]   Indeed, IDHW itself acknowledges that these issues present common questions that must be resolved with common answers.  The Bureau Chief of its Bureau of Adult Developmental Disabilities, when analyzing the impact of notice changes, assumed all along that those changes would have to be made system-wide, for all DDS program participants and applicants.[15]  The Department recognized that in response to the Court's

---

re-determination. . . .  Individualized budgets are re-evaluated annually and written notification of the set budget amount are sent annually."); *see also* Decl. Wilhite-Grow ¶ 3 (Dkt. 42-5, no. 12-cv-22).

[12] Decl. Evans ¶ 4 (Dkt. 42-2, no. 12-cv-22).  The fact that sometimes only as few as 10% of participants have appealed their calculated budgets corroborates other evidence that the budget-notice-hearing system is failing, because IDHW admits its budget methodology produces an amount too low for *more* than 10% of participants.  Decl. Christensen ¶ 6 (Dkt. 25-3, no. 12-cv-22).

[13] *See, e.g.,* Decl. Drake, Ph.D. ¶¶ 6, 14 – 37 (Dkt. 6, no. 12-cv-22).

[14] Mem. Decision and Order 11–12 (Dkt. 66, no. 12-cv-22).

[15] *See* Decl. Evans ¶¶ 6–7 (Dkt. 42-2, no. 12-cv-22) (estimating cost of changes using system-wide assumptions).

decision on the adequacy of its proposed notices, it would need to use the new forms of notice

with all DDS program participants "on a going-forward basis . . . ."[16]

     The DDS program budget methodology, including the assessment practices and software

tool, is also applied to all class members.[17]  The hearing system, too, is the same for all class

members and is set out by formal agency rule.  IDAPA 16.05.03 (prescribing rules governing

IDHW administrative appeals).  Internal IDHW guidance that governs the appeal and hearing

system is also expressed in terms of "general policy."[18]  *Dukes*, ___ U.S. at ___, 131 S. Ct. at

2553.  The Department even instructs and corrects its hearing officers on substantive issues,

including at trainings led by a Lead Deputy Attorney General and IDHW staff involved in the

program decisions that the hearing officers review.[19]  For instance, despite the holding in

---

[16] 2d Decl. Evans ¶ 6 (Dkt. 53-2, no. 12-cv-22).

[17] *See* 2d Decl. Eppink exs. A (Dkt. 43-2, no. 12-cv-22) and B (Dkt. 43-3, no. 12-cv-22) (IDHW descriptions of budget methodology and formula); Decl. Larsen ¶¶ 3–12 (Dkt. 43-13, no. 12-cv-22) (describing assessment practices and policies); 2d Decl. Wilhite-Grow ex. A (Dkt. 42-7, no. 12-cv-22) (IDHW contract with ICDE, describing assessment policies); Decl. Grooms ex. A (Dkt. 25-4 at 5, no. 12-cv-22) (IDHW application to CMS describing across-the-board budget, notice, and hearing system); 4th Decl. Eppink ex. C ("Budget Reconsideration Review" completed for E.L. [AGO-010285–10286]).

[18] 4th Decl. Eppink at exs. D ("Appeals Process Outline for the Department of Health and Welfare" [AGO-000017 –40]), E ("Fair Hearing Process" [AGO-000083–87], F ("Fair Hearing Process Flow" [AGO-000082]), G ("Guide to Administrative Appeals" [AGO-000043–59]), H ("Medicaid-Appeals Tracking Slip" completed for class representative A.L. [AGO-010244]), I ("Care Manager Appeal Review" completed for class representative E.L. [AGO-010283–10284]), J (email from IDHW to hearing officers with guidelines for administrative hearings [AGO-000041]).

[19] 4th Decl. Eppink at exs. K (email arranging training for new hearing officers [AGO-000074–75]), L (agenda for training [AGO-000080]), M (agenda for second training, including segment on developmental disabilities programs [AGO-000090]), N (internal IDHW email about scheduling time for training hearing officers on developmental disabilities program [AGO-000089]), O (internal IDHW email about training new hearing officers on "the decisions the

*Goldberg* that procedures that "do not permit recipients to appear personally" are "fatal to the constitutional adequacy of the procedures," IDHW has explicitly instructed its hearing officers to deny personal appearance by participants at hearings "unless there is a compelling reason . . . ."[20] And following the entry of a TRO in *K.W. v. Armstrong*, IDHW staff urged its hearing officers, *ex parte*, to modify procedures so that IDHW could be better prepared, with expert testimony, for DDS program budget hearings.[21]  These are just a few examples of many *ex parte* discussions between IDHW staff and hearing officers about substantive issues and patterns bearing on DDS program appeals.[22]  As the Supreme Court noted in *Dukes*, where a defendant applies procedures or general policies across the class, "a class action on behalf of every applicant or [participant] who might have been prejudiced by the [procedures] clearly would satisfy the commonality and typicality requirements of *Rule 23(a)*."  *Dukes*, ___ U.S. at ___, 131 S. Ct. at 2553.

The class's common contention is that the *form* of the notices that IDHW uses are inadequate, that the budget and assessment *methodology* are flawed, and that the *policies and guidance* that make up the hearing system are unfair.  The Department's forms, methodologies,

---

Department makes that result in administrative hearings" [AGO-000149]), P (internal IDHW email about need to instruct hearing officers on burden of proof [AGO-000157–158]), Q (internal IDHW emails about needing to correct hearing officers about a "reversal decision" that "we weren't too happy about," as well as another case where IDHW staff were told that the hearing officer may have been "swayed by the defense's argument" [AGO-000166–167]), R (internal IDHW email stating that the "bureau is interested in . . . making sure the hearing officers understand the process the bureau is using related to budgets for services" and that "[t]hey also want to discuss burden of proof in the hearings to make sure we all have the same understanding" [AGO-000174]).

[20] 4th Decl. Eppink at ex. B [AGO-000205–206].

[21] 4th Decl. Eppink at ex. S [AGO-000285–286].

BRIEF IN SUPPORT OF MOTION TO CERTIFY A CLASS ACTION – Page 8

policies, and guidance are used across the DDS program.  They will "stand or fall together,"

*Conn. Ret. Plans and Trust Funds v. Amgen, Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011), and thus

this Court can resolve the class's challenges to them "in one stroke," *Dukes*, ___ U.S. at ___, 131

S. Ct. at 2551.

**C.      Because All Class Members are Subject to IDHW's Budget, Notice, and Hearing
         Policies, the Plaintiffs' Challenges to Those Policies are Typical of the Class's.**

For the same reasons, the plaintiffs' claims are typical of the class's because they are "co-

extensive" with the absent class members' claims.  *Meyer v. Portfolio Recovery Assocs., LLC*,

707 F.3d 1036, 1042 (9th Cir. 2012).  Although each plaintiff—just like each class member—

will have different budget amounts and different experiences with the IDHW hearing system,

representative claims do not have to be even substantially identical to satisfy F.R.C.P. 23(a)(3).

*Id.*  Instead, typicality "refers to the nature of the claim or defense of the class representative, and

not to the specific facts from which it arose or the relief sought."  *Ellis v. Costco Wholesale

Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).  The claims in this class action are all of the same

nature: challenges to the across-the-board features of IDHW's budget, notice, and hearing

system.  All DDS program applicants and participants who undergo annual eligibility

determination or reevaluation are subject to that system.  The plaintiffs' challenges to that system

are not just typical of, but are essentially identical to, the class's challenges.

---

[22]  *See, e.g.,* 4th Decl. Eppink at ex. T (email between IDHW Medicaid staff and hearing officers
re: IDHW's position on budget adjustment for Certified Family Home residents [AGO-000289–
290]).
BRIEF IN SUPPORT OF MOTION TO CERTIFY A CLASS ACTION – Page 9

**D.    The Class Representatives and Counsel Have Already Demonstrated Their Adequacy as Advocates in These Cases.**

Determining whether the plaintiffs and their counsel will adequately protect the class means asking whether (1) there are any conflicts of interest with other class members and (2) the class representatives and attorneys will prosecute the action vigorously on behalf of the class. *Ellis*, 657 F.3d at 985.  When plaintiffs seek to vindicate statutory rights that were created to protect a class of individuals, they "cannot be said to have interests antagonistic to [the] class." *White v. Local 942, Laborers Int'l Union of N. Am.*, 90 F.R.D. 368 (D. Alaska 1981), *rev'd on other grounds*, 688 F.2d 850 (9th Cir. 1982) (unpublished).

Counsel, after a review, has not identified any likely conflict of interest with absent class members or between plaintiffs or class members.[23]  That counsel have already (1) won a preliminary injunction against IDHW and (2) prevailed on IDHW's motion to approve a still-unconstitutional form of notice shows that counsel will adequately protect the class.  Counsel are experienced not only with Medicaid litigation,[24] but also have focused their practices on constitutional and federal law.[25]  Moreover, among the class representatives are plaintiffs with providers, guardians, and next friends who have extensive experience as advocates for adults with developmental disabilities.[26]  Both counsel and the class representatives will be fair and vigorous advocates for the class.

---

[23] 4th Decl. Eppink ¶ 26; Decl. Piotrowski ¶ 2.

[24] Decl. Piotrowski ¶ 3–4.

[25] 4th Decl. Eppink ¶ 27.

[26] *See, e.g.,* Decl. Mulkey ¶ 2 (Dkt. 10, no. 12-cv-22); Decl. Kotts ¶¶ 1–7 (Dkt. 7, no. 12-cv-22); Decl. Scott, LSW-I ¶ 1 (Dkt. 19, no. 12-cv-22).

BRIEF IN SUPPORT OF MOTION TO CERTIFY A CLASS ACTION – Page 10

**E.      A Single Injunction and Declaratory Judgment as to All Participants and Applicants is the Best Way to Address the Systemic Features of IDHW's Processes.**

An F.R.C.P. 23(b)(2) class is appropriate if IDHW "has acted or refused to act on grounds that apply generally to the class." The Department acknowledges that its assessment and budget methods, its DDS program notices, and its administrative hearing procedures apply generally to all DDS program participants and applicants: it uses, after all, the same methods, notices, and procedures across the board.[27] What is more, even after this Court considered IDHW's new proposed forms of notice and held that they "cannot pass muster under the law,"[28] IDHW has nevertheless used those noncompliant forms in giving notice to members of the class. Because the forms of notice that IDHW uses are just that—forms—"a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, ___ U.S. at ___, 131 S. Ct. at 2557. Individual class members would not be entitled to different injunctions or declaratory judgments on across-the-board defects in IDHW's budget, notice, and hearing procedures, and thus this action is precisely the kind where F.R.C.P. 26(b)(2) applies.[29] *Id.* As there is no prayer for damages in this case—only for declaratory and injunctive relief—the Court should certify the class under F.R.C.P. 23(b)(2).

---

[27] *See* Decl. Grooms ex. A (excerpting portions of IDHW's application to CMS, explaining the budget, notice, and hearing features of the DDS program) (Dkt. 25-4, no. 12-cv-22).

[28] Mem. Decision and Order at 13 (Dkt. 66, no. 12-cv-22).

[29] Because the questions of law and fact about the budget, notice, and hearing processes obviously "predominate over any questions affecting only individual members" as to the class claims, and because it would not make sense to decide these systemic issues on a participant-by-participant basis, certification is also appropriate under F.R.C.P. 23(b)(3). The plaintiffs ask for certification under F.R.C.P. 23(b)(3), in the alternative.

BRIEF IN SUPPORT OF MOTION TO CERTIFY A CLASS ACTION – Page 11

**CONCLUSION**

For all of these reasons, the Court should grant the motion for class certification.

DATED this 17th day of May, 2013.

                              AMERICAN CIVIL LIBERTIES UNION
                              OF IDAHO FOUNDATION

                              /s/ Richard Alan Eppink

                              Attorneys for Plaintiffs


**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on the 17th day of May, 2013, I transmitted the foregoing electronically, via email to the email address(es) of record or most recently known, as set forth below, to the following parties or counsel:

Michael S. Gilmore
mike.gilmore@ag.idaho.gov
Katherine Takasugi
katherine.takasugi@ag.idaho.gov
Cynthia Lin Yee-Wallace
cynthia.wallace@ag.idaho.gov
Carl Withroe
carl.withroe@ag.idaho.gov
*Attorneys for Defendants*

DATED this 17th day of May, 2013.

                              /s/ Richard Alan Eppink


BRIEF IN SUPPORT OF MOTION TO CERTIFY A CLASS ACTION – Page 12