# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W., et al.,<br><br>    Plaintiffs,<br><br> v.<br><br>RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare; PAUL LEARY, in his official capacity as Medicaid Administrator of the Idaho Department of Health and Welfare; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE, a department of the State of Idaho,<br><br>    Defendants. | Case No. 1:12-cv-00022-BLW (lead case)<br><br>**MEMORANDUM DECISION AND ORDER** |
| TOBY SCHULTZ, et al.<br><br>    Plaintiffs,<br><br> v.<br><br>RICHARD ARMSTRONG, et al.,<br><br>    Defendants. | Case No.  3:12-CV-58-BLW |

# INTRODUCTION

Before the Court are motions filed by Plaintiffs to (1) certify a class, (2) extend the existing preliminary injunction to the class members, and (3) file a consolidated class action complaint. The defendants (collectively referred to as Idaho Department of Health and Welfare or IDHW) have filed a second motion to approve their form of notice. The motions are fully briefed and at issue. For the reasons explained below, the Court will deny IDHW's motion and grant the Plaintiffs' motions.

## LITIGATION BACKGROUND

Plaintiffs are developmentally disabled adults who qualify for benefits under Medicaid. They are eligible for long-term institutional care but choose to live instead in their own homes or in community settings. When their Medicaid payments were reduced, they brought this action against the Idaho Department of Health & Welfare (IDHW), alleging, among other things, that the notices sent by IDHW informing them of the reductions were insufficient. The Court enjoined the reductions, and the parties eventually agreed to the terms of a preliminary injunction that maintained the status quo and provided plaintiffs with information regarding their budget reductions. That injunction restored the Plaintiffs' budgets to the levels they were at prior to July 1, 2011, the date IDHW sent the unconstitutional budget notices. The injunction also prohibited IDHW from reducing Plaintiffs budgets until it (1) provided Plaintiffs with notices, approved by this Court, and (2) made available for copying specified documents it used to calculate Plaintiffs' budgets.

IDHW responded by filing a motion to approve the form of Notice that they sent to each plaintiff. The Court denied the motion, holding that the Notice failed to provide due process because it did not explain budget reductions. *See Memorandum Decision (Dkt. No. 66)* at p. 8. The Notice provided by the IDHW made it very difficult for a participant to determine why his budget had been reduced and left him unable to effectively challenge the reduction.

In the meantime, another group of named plaintiffs filed a nearly identical case entitled *Schultz v. Armstrong, CV-12-58-BLW.* On April 6, 2013, the Court ordered that case consolidated with the present case. *See Order (Dkt. No. 77)*

The Plaintiffs have now filed (1) a motion to certify a class; (2) a motion to extend the existing preliminary injunction to the proposed class members; and (3) a motion to file a consolidated class action complaint. IDHW has filed a second motion to approve its form of Notice. Those are the four motions now before the Court for resolution. The Court will resolve the motions after reviewing the budgeting process that is under review.

**Budget Setting Process for Participants**

Moving the disabled out of institutions, and into homes, can save money and improve care. *See Ball v. Rodgers*, 492 F.3d 1094, 1098 (9th Cir. 2006). Medicaid recognized this by allowing states to set up "Home and Community-Based Services" ("HCBS") to allow the disabled to "waive" their entitlement to institutional care in return for receiving community-based care. The State of Idaho participates in Medicaid and the

HCBS program. In Idaho, the program is known as the Developmental Disabilities Waiver program ("DD Waiver program"), and is administered by IDHW.

The plaintiffs all participate in the DD Waiver program. The purpose of the program is "to prevent unnecessary institutional placement, provide for the greatest degree of independence possible, enhance the quality of life, encourage individual choice, and achieve and maintain community integration." IDAPA 16.03.10.700.

For each participant in the DD Waiver program, the IDHW annually prepares a "budget" that sets a limit on the expenses authorized for that person. The budget is calculated by IDHW's budget tool software based on inputs from Independent Assessment Providers (IAPs) hired by an IDHW contractor, the Idaho Center for Disabilities Evaluation ("ICDE").

The IAPs visit with participants and a "respondent," typically the legal guardian or family member, to assess that person's needs. See *Whilhite-Grow Declaration* (Dkt. No. 42-6) at ¶¶ 2-3. The IAP will also examine any medical provider's records. *Id.*

Following these evaluations, the IAP fills out a form called an "Inventory of Individual Needs." *See Exhibit C* (Dkt. No. 53-5) at p. 20. The form has numerous boxes to check that in aggregate describe how the participant is affected by her disability. For example, the boxes to be checked describe such things as (1) type of disability, (2) need for psychotropic medications or nursing services, (3) level of hearing, vision and mobility, (4) assistance needed for feeding, dressing, and toileting, and (5) living situation, among other things. *Id.* The Inventory is about 6 pages long. *Id.*

The IAP fills out the Inventory by hand, and then enters the information into a computer form known as an Individualized Budget Calculation (IBC). The IBC contains fields corresponding to categories of needs. For example, there are fields for "Feeding," "Toileting," and "Need for Nursing Services," among others, corresponding to the boxes described above in the Inventory of Individual Needs. The IAP carries over the data from the Inventory into the IBC.

When a field is completed on the IBC, the IDHW's budget tool software automatically calculates what Medicaid would pay toward meeting that need. For example, the IAP has four options to describe the level of assistance that a participant might need with toileting: (1) independent, (2) supervision, (3) assistance, or (4) total support. On the IBC, there is a "Toileting" field; if the IAP enters "assistance" in that field, the budget software automatically calculates the dollar amount Medicaid would pay toward meeting the need of assistance with toileting. If the IAP enters "total support" instead, the software would automatically enter a higher dollar figure. The important point here is that the IAP describes the need, and the budget software calculates the dollar figure Medicaid pays for that need.

The budget tool software program runs a spreadsheet that lists all the need categories and their corresponding dollar amounts. The software starts with a dollar figure for the budget calculation that is called the "constant." That is the budget the participant starts with, and it is either reduced or increased depending on the IAP's evaluation of the various needs of the participant. For example, in the case of plaintiff

K.C. for the period 2011 to 2012, her constant was $24,476.75. *See Exhibit C* (Dkt. No. 43-4). When the IAP entered K.C.'s age in the appropriate field in the IBC, the budget tool software subtracted $3,190.68 from the constant. *Id.* When the IAP inputted her specific type of living situation, the software added $8,881.87 to the constant. *Id.* There were other reductions and additions to the constant until the final budget – the Assigned Budget Amount – was calculated by the software.

When the IAP has finished filling out all the fields on the IBC, and the budget tool software has calculated an Assigned Budget Amount, the software automatically exports this data into a Notice that is then sent to the participant. This is the Notice that has been the subject of dispute in this case. As stated above, the Notice contains an attachment that includes copies of the IBC and the Inventory of Individual Needs for that participant.

**From Budget to Service Plan**

Once a participant receives his budget Notice, the next step is for the participant to develop a service plan designed to meet his needs. The cost of the service plan must stay within the participant's budget. *See* IDAPA 16.03.13.190 ("The participant must work within the identified budget and acknowledge that he understands the budget figure is a fixed amount."). The participant then submits his service plan to a "Care Manager" employed by IDHW for review.

After reviewing the plan, the Care Manager makes a determination that the plan meets the participant's needs and is within budget or not. If the Care Manager approves the plan, it goes into effect for the next budget year. If the plan does not satisfy the Care

Manager, either because it does not meet the participant's needs or is over budget, the Care Manager can work with the participant to address those issues. In those cases where resolution cannot be reached, the Care Manager will deny the plan in total, or in part. Whatever the determination, the Care Manager then prepares a "Service Plan Notice."[1] *E.g.*, Dkt. 94-1 at 59-61. The Service Plan Notice informs the participant of what services were approved or denied, and it notifies him of his right to appeal the Care Manager's decision.

If the participant files an appeal within 28 days of receipt of the Service Plan Notice, a hearing is held before a hearing officer. The hearing officer has the authority to affirm the Care Manager's decision or remand the matter back to the Care Manager to reevaluate his decision. However, the hearing officer has no authority to modify a budget or approve services rejected by the Care Manager.

The losing party at the hearing then has the right to appeal to the Director of IDHW or his designee. The Director's decision can then be appealed to this court.

## The Application Process

An individual applying to the program goes through the same process described above after completing two preliminary steps. First, the applicant must submit the necessary financial information so that his eligibility for Medicaid can be verified. If the applicant passes this step, the second step is for the applicant to submit documentation that allows an IAP to make a preliminary determination that the applicant has a

---

[1] The generic term "Notice" refers to the budget notice, not the Service Plan Notice.

developmental disability. If the IAP so determines, the applicant is treated exactly like a participant throughout the budget and service process.

## ANALYSIS

### __Motion to File Consolidated Class Action Complaint__

Having consolidated this case with *Schultz v. Armstrong, CV-12-58-BLW,* the Court is now faced with a single case that has two separate complaints. To avoid the inevitable confusion that will result, the Plaintiffs request leave to file a consolidated complaint. The defendants do not object, and the Court will grant the motion.

### __Motion for Class Certification__

Plaintiffs seek to certify a class to challenge the generic policies and procedures that IDHW applies across-the-board to participants and applicants in the DDS Waiver program. Of the 3,600 or so participants in that program, 14 have brought this case as representatives of all those similarly situated. They challenge several systemic components of the program: (1) The assessment and budgeting methodology and formulas that IDHW uses to determine the maximum cost of services; (2) The form and method of notice that IDHW uses to inform participants and applicants about eligibility status, assessment results, and budget amounts; and (3) The administrative hearing procedures that IDHW uses to decide appeals about eligibility, assessment, and budget decisions.

More specifically, Plaintiffs seek to certify a class defined as follows: All persons who are participants in or applicants to the DDS Waiver program administered by the

IDHW as part of the Idaho Medicaid program, and who undergo the annual eligibility determination or reevaluation process.

Under Rule 23, Plaintiffs must "affirmatively demonstrate" that class certification is appropriate. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Under Rule 23(a), the Plaintiffs must show that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

These four requirements of Rule 23(a) are designed to "ensure that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart*, 131 S. Ct. at 2550. This Court must, following a "rigorous review," be satisfied that Plaintiffs will fulfill that role. *Id.* at 2551.

Second, Plaintiffs must show that the proposed class satisfies at least one of the Rule 23(b) requirements. Plaintiffs rely on 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

IDHW challenges Plaintiffs' motion on the commonality, typicality, and adequacy requirements of Rule 23(a). Furthermore, IDHW disputes whether final injunctive relief can be granted to the class.

**Numerosity**

Though not disputed, the Court readily finds that the proposed class satisfies the numerosity requirement. As of March 2012, there were approximately 3,600 participants in the DDS Waiver program who underwent an initial or annual eligibility determination, each of whom received a budget notice. *Evans Decl. I (Dkt. No. 42-2)* at p. 3. The number of participants has remained at the same level in the interim. *Evans Decl. II (Dkt. No. 94-1)* at p. 2. Of those participants who receive a budget, ten to fifteen percent – between 352 to 529 participants – appeal their budgets. *Evans Decl. I*, *supra,* at p. 3. In order to litigate the claims individually, each participant likely would need the assistance of a guardian ad litem due to the severity of their disabilities. Thus, "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).

**Commonality**

A class action satisfies the commonality requirement when it has "'the capacity . . . to generate common answers' to common questions of law or fact that are 'apt to drive the resolution of the litigation.'" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart*, 131 S. Ct. at 2551). That requirement is satisfied here. Plaintiffs challenge IDHW's generic method for making budget decisions, the forms IDHW uses to notify people of those decisions, and IDHW's system for handling budget appeals. These system-wide challenges avoid the type of individualized inquiries that destroy commonality. *See Wal-Mart,* 131 S.Ct. at 2552 ("respondents wish to sue about literally millions of employment decisions at once").

For these reasons, the primary case cited by IDHW – *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012) – offers no guidance here. In that case, there was "no such thing as a systemic failure," and resolution of the case would require "an inherently particularized inquiry into the circumstances of [each plaintiff's] case." *Id.* at 498. Accordingly, the Seventh Circuit denied class certification. In contrast, the class challenge in this case focuses entirely on systemic failures that are capable of class-wide resolution.

IDHW argues that Plaintiffs have not demonstrated commonality because the class contains "applicants who do [sic] have not yet been ascertained nor met the qualifications for services in the DDS Waiver program." *IDHW Brief (Dkt. No. 94)* at p. 12. As a result, IDHW argues, the class is not sufficiently definite. This argument ignores an important limitation in the proposed class. By definition, only those applicants "who undergo the annual eligibility determination . . . process" are included in the class. This limits class membership to those applicants whose financial eligibility for Medicaid has been verified and who have been evaluated by an IAP. These applicants are entitled to receive the same notice as participants. 42 C.F.R. §431.231(c)(2); § 431.210. Thus, the parameters of class membership are sufficiently definite. *See* Wright, Miller, & Kane, *Federal Practice & Procedure* §1760 (3d ed. 2005) ("[I]t has been held that the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action. . . . If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist.").

IDHW's final challenge to the commonality requirement is that not all members of the proposed class have been injured by the alleged due process violations.  IDHW admits that all DDS Waiver program applicants and participants have a common interest in receiving due process.  Nonetheless, IDHW argues that that shared interest is insufficient because (1) not all participants have had their budgets reduced, and (2) some of those who have had their budgets reduced are satisfied with their budgets despite the reduction.

This argument injects an issue of standing into the commonality discussion.  But whether analyzed as a standing issue or a commonality issue, the courts have rejected the argument.  Treated as a standing issue, the Supreme Court has held that the denial of due process is an injury in its own right regardless of the outcome of the hearing.  *Carey v. Piphus*, 435 U.S. 247, 266 (1978).   Treated as a class action issue, the Ninth Circuit has held that "[a]ll the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)."  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.1998).  An example similar to our own case is found in *Vietnam Veterans of America v. C.I.A.,* 288 F.R.D. 192 (N.D. Cal. 2012).  There, military veterans claimed that arbitrators deciding their benefit claims were not neutral and unbiased.  The defendant agency countered that many in the proposed class received favorable rulings from those arbitrators and hence were not injured in any way.  The court rejected this argument, citing *Walters* and holding that the class action "seeks to remedy, not the denial of benefits, but the denial of a neutral, unbiased adjudicator to

review a claim for benefits." *Id.* at 212. That type of systemic challenge, the court held, was proper for class resolution. *Id.* The same type of systemic due process challenge is involved in the present case.

Thus, it is not necessary for every participant to experience a budget reduction or to desire to challenge IDHW's procedures. Rather, applicants and participants' shared interest in receiving constitutionally adequate notice and hearings is sufficient to maintain this suit.

**Typicality**

Representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012). In practice, the typicality and commonality analyses tend to overlap, *id.* at 1041, and IDHW makes essentially the same challenges here that the Court reviewed above in the commonality discussion. IDHW argues that the named plaintiffs may not have claims typical of those of proposed class members because some of the class membership might be satisfied with their current budgets or did not experience a budget reduction. As discussed above, all proposed class members have a shared interest in the constitutional and statutory adequacy of the budget notice form, the methodology by which budgets are determined, and the sufficiency of the hearing process.

Nor are the Plaintiffs atypical of the class because 237 of the 3,525 DDS Waiver program participants receive Medicaid funding alone, as IDHW argues. Although IDHW

does not explain the significance of this statistic, the inference is that these participants do not receive individualized budgets. Once again, this argument ignores the fact that the class definition limits membership to those participants "who undergo the annual eligibility determination or reevaluation process." *Plaintiffs' Brief (Dkt. No. 81-1)* at p. 4. Thus those 237 participants will not be affected by this litigation.

**Adequacy**

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

IDHW argues that Plaintiffs are not adequate class representatives because they have a conflict of interest with the absent class members. That conflict, IDHW warns, arises because Plaintiffs have an incentive to prolong this litigation because of the preliminary injunction extends to Plaintiffs their pre-July 1, 2011 budgets. Because these budgets were approved using procedures no longer in place and factored in variables IDHW no longer considers when setting budgets, IDHW argues that Plaintiffs budgets will be reduced once the preliminary injunction is lifted and Plaintiffs are reevaluated. As a result, IDHW predicts that Plaintiffs will drag out this litigation at the expense of the absent class members. Furthermore, IDHW argues that parity between

Plaintiffs and the absent class members can never be achieved because the Eleventh Amendment prohibits this Court from ordering IDHW to restore the absent class members' budgets to their pre-July 1, 2011 levels. IDHW also advances the latter argument in its opposition to Plaintiffs motion to extend the preliminary injunction to the class. The Court will fully address merits of IDHW's Eleventh Amendment argument as part of its discussion on that motion. For now, all that needs to be said is that the Eleventh Amendment is no obstacle to such an order.

IDHW's argument that paints Plaintiffs as obstructionists is baseless. Throughout this suit, Plaintiffs have shown themselves to be diligent and vigorous advocates for their cause. IDHW's "amorphous and speculative" concerns to the contrary do not demonstrate that Plaintiffs are not adequate class representatives. *Soc. Serv. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979).

## Rule 23(b)(2)

Having found that Rule 23(a) is satisfied, the Court turns to Rule 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 131 S. Ct. at 2557 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). The Plaintiffs' class claims satisfy this standard because they seek structural changes to the way IDHW administers the DD Waiver program. Each of the proposed claims will affect all the applicants and

participants in the DD Waiver program. Rule 23(b)(2) focuses on "final injunctive relief," and the final injunction sought by plaintiffs here would require programmatic changes applicable to all class members.

For all of these reasons, the Court finds that class certification is appropriate under Rule 23, and the Court will accordingly grant Plaintiffs' motion to certify.

**Plaintiffs' Motion for Preliminary Injunction**
**IDHW's Motion to Approve Notice**

Plaintiffs move to extend the preliminary injunction entered on behalf of the named plaintiffs to the entire class. Before reaching the merits of that motion, the Court must consider two arguments IDHW raises in opposition. First, IDHW claims that the Eleventh Amendment bars the Court from restoring the class's benefits to their pre-July 1, 2011 levels. Second, IDHW claims that the motion to extend is moot because IDHW's latest proposed Notice satisfies the Medicaid regulations and due process. Resolution of the latter argument requires the Court to decide IDHW's motion to approve their proposed budget notice. The Court will turn first to IDHW's Eleventh Amendment argument.

IDHW argues that restoring the class's benefits to their pre-July 1, 2011 levels is essentially an award of damages to the class members that is prohibited by the Eleventh Amendment, which only permits prospective injunctive relief. The Eleventh Amendment bars claims brought in federal court for damages against state officials in their official capacity. *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir.2007). An exception under *Ex Parte Young*, 209 U.S. 123 (1908), however, allows citizens to sue state officers in

their official capacities "for prospective declaratory or injunctive relief . . . for their alleged violations of federal law." *Association Des Eleveurs v. Harris,* 729 F.3d 937, 943 (9th Cir. 2013).

In *Edelman v. Jordan*, 415 U.S. 651 (1974), the Supreme Court held that an injunction requiring a state official to conform his administration of a federal welfare program to federal law was prospective and thus not barred by the Eleventh Amendment, but that an order that the official remit the amounts he had wrongfully withheld in the past was retrospective and thus impermissible. *Id.* at 664–65. The Court acknowledged that the distinction between prospective and retrospective relief would "not in many instances be that between day and night." *Id.* at 667. It stated firmly, however, that where a decree grants relief "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials," it "is in practical effect indistinguishable in many aspects from an award of damages against the State" and is barred by the state's sovereign immunity. *Id.* at 668.

The Court narrowed the scope of Edelman's broadly phrased prohibition in *Milliken v. Bradley*, 433 U.S. 267 (1977), where it held that a prospectively oriented injunction could have a "direct and substantial impact" on a state's treasury without running afoul of the rule in *Edelman*, so long as the expenditure of funds was ancillary to the injunction's primary objective (which, in *Milliken*, was remedying the unconstitutional segregation of the Detroit public schools). *Id.* at 289.

The Supreme Court again addressed the distinction between permissible prospective, and improper retrospective, relief in *Papasan v. Allain*, 478 U.S. 265 (1986). There, the Court stressed that " *Young's* applicability has been tailored to conform as precisely as possible to those specific situations in which it is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States." (internal quotation marks omitted). *Id*. at 277. The Court explained that the inquiry must focus on the purpose of the relief sought:

> Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant.... On the other hand, relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.

*Papasan*, 478 U.S. at 278, 106 S.Ct. 2932.

The Plaintiffs are not seeking any award for money wrongfully withheld. Instead, they seek to prospectively enjoin – from the date of the injunction forward – IDHW from reducing benefits to class members below their pre-July 1, 2011 levels. Other courts have held that such an injunction is proper under *Edelman* and it progeny. *See e.g.,* *Buckhanon v. Percy*, 708 F.2d 1209, 1217 (7th Cir. 1983) (Families with Dependent Children and Medical Assistance benefits); *Coalition for Basic Human Needs v. King*, 654 F.2d 838, 842 (1st Cir. 1981); *Kimble v. Solomon*, 599 F.2d 599, 604-05 (4th Cir. 1979) (Medicaid benefits restored due to inadequate notice of reductions); *see also Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 841 (9th Cir. 1997) (ordering that an

employee wrongfully terminated be reinstated to "prevent the prospective violation of [the employee's] rights.").

IDHW argues that the Eleventh Amendment prevents extending the preliminary injunction to the class because requiring IDHW to restore the class members' benefits to their pre-July 1, 2011 levels would not redress an ongoing violation. IDHW estimates that restoring these budgets would cost the State $16,357,498. This sum, according to Defendants, would provide only retrospective relief because Plaintiffs have not shown that IDHW used inadequate notices in the years since this litigation began and that it continues to do so.

This is not entirely accurate. Plaintiffs have submitted several Notices sent out by IDHW while this litigation has been pending. *See Exhibits attached to Motion to Certify (Dkt Nos. 81-4; 81-10; 81-35; 81-36).* Each of these Notices is materially similar to the Notice form the Court previously found deficient. *See Memorandum Decision, supra*, at p. 5. Moreover, IDHW does not offer any support for its argument that its Notice forms are sufficient, apart from its most recent Notice. *See In re Lazar*, 237 F.3d 967, 974 (9th Cir. 2001) ("[A]n entity invoking Eleventh Amendment immunity bears the burden of asserting and proving those matters necessary to establish its defense." (internal quotation marks omitted)). Thus, assuming that the Court concludes that (1) the most recent version of the notice form is inadequate – thereby establishing an ongoing violation – and (2) restoring the class's budgets to their pre-deprivation levels is necessary to bring IDHW into compliance, *Edelman* and its progeny establish that the Court may issue that

order without offending the Eleventh Amendment.  It is to these assumptions that the Court turns its attention.

## Sufficiency of IDHW's Latest Notice Form

In conjunction with its opposition to extend the preliminary injunction, IDHW filed a motion seeking approval of its latest notice form.  In essence, IDHW seeks a declaration that the new notice form complies with the Medicaid regulations and due process.  However, "a party may not make a *motion* for declaratory relief."  *Kam-Ko Bio-Pharm Trading Co., Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009).  Rather, such a motion is properly construed as a motion for summary judgment.  *Id.*

The legal standard governing the Notice was set forth by the Court in its earlier decision:

> Medicaid requires that the IDHW notices "must contain . . . [t]he reasons for the intended action." See 42 C.F.R. § 431.210(b). The notices must "detail[] the reasons for a proposed termination" sufficiently enough for a recipient to challenge both the application of the law to their factual circumstances and the "factual premises" of the state's action. *Goldberg v. Kelly*, 397 U.S. 254, 267–268 (1970). The explanation in the notice itself must be more than a "general explanation" or "conclusory statement," and must provide at least "a brief statement of [the decision's] factual underpinnings." *Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992).  In other words, the law requires an explanation for any change. The participant is entitled to know why her budget was changed so she can determine whether to challenge the change. *Goldberg* recognized that without such an explanation, the right to challenge the change is substantially impaired, if not meaningless.

*Memorandum Decision, supra,* at p. 8.

IDHW's latest proposed Notice fails this test. The section of the notice titled

"Why Your Budget Has Changed" states the following:

> Several changes in laws, rules, or tools may have affected your budget. The Department can also explain which of these affected your budget and why it was changed. Your budget has changed because of a combination of the following:
>
>> 1. Changes in your *Inventory of Needs*. See the following cover letter and attached documents to see changes made in your Inventory.
>> 2. Changes in the *Scales of Independent Behavior- Revised*. A summary of the answers used in this interview is attached. Your budget was affected by:
>>> [ ] General Maladaptive Index
>>> [ ] Broad Independence Age
>>> [ ] Neither
>> 3. Changes in the Medicaid budget tool. Several variables were added or changed, including "living situation."
>> 4. Changes in Idaho Law. Idaho Code §56-255 (3)(e)(ii)

*See Exhibit AA (Dkt. No. 111-1)* at p. 3.

Read as a whole, this notice gives participants nothing more than the general explanation that several factors may have affected their individual budgets. It does not explain which combination of factors actually affected each participant's budget on an individualized level. That lack of specificity runs afoul of due process because *Goldberg* requires a notice tailored to the individual. 397 U.S. at 267-68 ("[Due process] require that a recipient have timely and adequate notice *detailing the reasons* for a proposed termination . . . " (emphasis added)). The notice must give a participant the opportunity to understand "the factual premise" of his or her "particular case." *Id.* at 268.[2]

_____

[2]   After the Court entered its earlier decision finding the Notice insufficient, IDHW submitted that Notice to the agency responsible for this program, the Division of Medicaid & Children's Health

Once again, IDHW argues that it provides the particulars to each participant by including with the notice spreadsheets containing the participant's responses to his current Inventory of Needs and his responses to the previous year's assessment. By providing this information, IDHW continues, a participant can compare his responses and figure out what changed. As the Court explained in its prior decision, this process is not so simple. For example, according to IDHW, "[n]ot every response on the Inventory of Needs gets used as a variable to calculate a participant's annual budget." *Evans Dec. II*, dkt. 94-1, at 5. As a result, a participant cannot simply compare his responses from one year to the next and gain an understanding of the reasoning behind a budget change. In the end, the participant is left to do the math and hope his post hoc analysis matches the analysis actually employed by IDHW. This burden shifting is impermissible. It is IDHW's duty to state initially the reasons for its action. *Goldberg,* 397 U.S. at 267-68.

In support of its notice, IDHW relies on *Lebeau v. Spirito*, 703 F.2d 639 (1st Cir. 1983). There, recipients from the Aid to Families with Dependent Children (AFDC) program challenged a reduction in benefits on the grounds that the notice provided by Massachusetts Department of Public Welfare was not "detailed." *Id.* at 640. The reduction was caused by a blanket change in federal law, as the notice stated. *Id.* at 641 ("'The reason for these changes is the federal law for grant calculations has changed[.]"). The notice also contained citations to the "Massachusetts regulations that embod[ied] all

Operations ("CMS"). CMS found that the Notice was "consistent with current interpretation of federal Medicaid statutory and regulatory requirements." This does not resolve, however, the due process concerns governed by *Goldberg*. It is the province of this Court to determine if due process was followed.

of the changes." *Id.* Although the First Circuit found the notice "cursory" and basically

boilerplate, it nonetheless concluded that the notice was sufficient under the

circumstances. *Id.* at 643.

If this case was also predicated on an across-the-board change to the federal or

state Medicaid laws, the Court might agree that such a one-size-fits-all notice is

sufficient. But that is not this case. As is evident from its face, the Notice will be used

when the changes to a participant's budget are based upon his IAP's perceived changes in

the participant's needs. That is, the Notice will be used when a participant's budget

changes due to the participant's changed circumstances. In this regard, this case

resembles *Ortiz v. Eichler*, 794 F.2d 889 (3rd Cir. 1986).

In *Ortiz*, the Third Circuit decided "the extent of a pre-hearing notice required to

be given under the due process clause" by Delaware when "denying or terminating Aid to

Families with Dependent Children (AFDC), Food Stamps and Medicaid benefits." *Id.* at

890. The court upheld the district court's order requiring that the notices shall, at a

minimum,

> provide a detailed individualized explanation of the reason(s) for the action
> being taken which includes, in terms comprehensible to the claimant, an
> explanation of why the action is being taken and, if the action is being
> taken because of the claimant's failure to perform an act required by a
> regulation, an explanation of what the claimant was required by the
> regulation to do and why his or her actions failed to meet this standard; and
> . . . if calculations of income or resources are involved, set forth the
> calculations used by the agency, including any disregards or deductions
> used in the calculations, explanations of what income and/or resources the
> agency considers available to the claimant and the source or identity of
> these funds, and the relevant eligibility limits and maximum benefit
> payment levels for a family or assistance unit of the claimant's size.

*Id.* at 892, 896.[3]  This level of specificity is illustrative of what IDHW must provide, and tracks the Court's earlier decision as to what IDHW must provide:

> The Notice must include, if applicable, a brief summary of changes affecting the participant's budget caused by either (1) changes in the individual's condition or circumstances, or (2) changes to the Medicaid system. By "Medicaid system," the Court means either the national Medicaid provisions or the State of Idaho provisions. Changes to these provisions could include changes to the assessment factors or "coefficients" – or changes in the mathematical formulas themselves – used to compute dollar amounts, and changes resulting from a "tier change" where the participant was placed in a different budget level because her budget changed by a large amount.

*See Memorandum Decision, supra* at p. 13.

Defendants also argue that the notice does not have to notify participants of changes that are solely based upon matters of law or policy decisions made by the Department.  IDHW finds support for this argument in 42 C.F.R. § 431.220(b), which states, "The agency need not grant a hearing if the sole issue is a Federal or State law requiring an automatic change adversely affecting some or all beneficiaries."

This argument conflates the regulations governing hearings with those governing notices.  The regulation that governs notice, 42 C.F.R. § 431.210(c), requires IDHW to include in its Notice "[t]he specific regulations that support, or the change in Federal or State law that requires, [IDHW's] action[,]" even though a hearing is not always required, *see id.* § 431.210(d)(2) ("In cases of an action based on a change in law, the circumstances under which a hearing will be granted.").

---

[3] In so holding, the Third Circuit distinguished *LeBeau*, because it concerned "mass changes, such as those resulting from new legislation." *Ortiz*, 794 F.3d at 894 (internal quotation marks omitted).

For these reasons, the Court holds that IDHW's notice does not comport with due process, and will deny IDHW's motion to approve the Notice.[4]  Furthermore, because the notice is not sufficient, Plaintiffs have established an ongoing violation for the purposes of the preliminary injunction.

**Motion to Extend the Preliminary Injunction to the Class**

A preliminary injunction is an extraordinary form of relief that is designed to preserve the status quo during litigation.  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter*, 555 U.S. at 20.  All three of IDHW's arguments in opposition to extending the preliminary injunction focus on the first prong of *Winter*'s test.  The Court has already rejected the first two arguments – the Eleventh Amendment argument and the sufficiency of IDHW's proposed notice.

IDHW's third and only remaining argument is that it is not required to provide participants with notice and the opportunity for a hearing when it sets their budgets because they do not have a proprietary interest in their budgets that is protected by the

---

[4] Plaintiffs also argue that the notice is inadequate because it states that participants may not copy The Scales of Independent Behavior-Revised (SIB-R).  According to Plaintiffs, this statement is misleading because 42 C.F.R. § 431.242 gives participants the right to "examine . . . [t]he contents of [the participants' respective] case file[s]."  Plaintiffs request injunctive relief that would allow them access to the SIB-R.  IDHW objects.  The Court declines to decide this issue.  The Plaintiffs have raised a claim in Count Two of their Consolidated Class Action Complaint alleging that they are entitled to material such as the SIB-R.  No party has yet moved for summary judgment on Count Two.  To award injunctive relief now that would give the class access to the SIB-R would be to award judgment on Count Two, a premature result given the lack of any motion addressing Count Two.

Due Process Clause.  The notice required by 42 C.F.R. § 431.210 must be provided to a participant "[a]t the time of [IDHW's] action affecting his or her claim."  42 C.F.R. § 431.206(c)(2).  For the purposes of this suit, "[a]ction means a termination, suspension, or reduction of Medicaid eligibility or covered services."  *Id.* § 431.201.  IDHW reads these regulations to mean that it takes "action" only when it terminates, suspends, or reduces "services."  Thus, according to IDHW, the Medicaid regulations entitle participants to services, not budgets.

At this point, it is unnecessary to determine whether participants have a proprietary interest in their budgets.  As IDHW recognizes, participants are entitled to due process – consisting of notice and a fair hearing – prior to any reduction in their services.  *Goldberg*, 397 U.S. at 262.  The amount of services that participants receive is capped by their budgets.  *See* Idaho Code § 56-255(3)(e)(ii); IDAPA 16.03.10.513.  As a result, when IDHW reduces a participant's budget, the practical effect is a reduction in the amount of services the participant receives.  IDHW acknowledges this causal relationship.  *IDHW Brief (Dkt. No. 100),* at p. 10.  Thus, IDHW must notify participants of the reasons for the budget change because that change equates to a reduction of services.

**Irreparable Harm**

Second, Plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Winter*, 555 U.S. at 22.  Having reviewed Plaintiffs' submissions, the

Court concludes that Plaintiffs have shown the likelihood of injury. This conclusion can be explained by examining three representative examples.[5]

N.R. is a 46-year-old woman with an assessed functional age of 1 year and 8 months. *Drake Declaration (Dkt. No. 6)* at ¶¶26-27. She has been diagnosed with profound mental retardation, seizure disorder, diabetes, high blood pressure, and glaucoma. *Lee Declaration (Dkt. No. 13).*[6] As part of last year's budget, N.R. received developmental therapy. Through this therapy, she was learning to accomplish tasks and to communicate her wants and needs, and she has seen an increase in her functional age for the first time in years. *Id.* This year, however, N.R.'s developmental services were eliminated due to her budget reduction. *Id.* As a result, N.R. risks being institutionalized and seeing her maladaptive behaviors increase while her level of functioning decreases. *Id.*

B.B. is a 26-year-old man. *D.B. Declaration (Dkt. No. 16).*[7] Because of his moderate mental retardation and attention deficit disorder, B.B. requires constant support and supervision for everyday tasks, like feeding himself. *Id.* He has trouble dealing with frustration and anger, which can translate to physical outbursts. *Id.* With the help of a job coach, however, B.B. has found part-time employment. *Id.* Unlike most positions, B.B.'s job costs him $13,650. *Id.* In previous years, it has been one of the largest expenditures in his budget, but it also contributes greatly to his emotional health and

---

[5] These examples describe the effects of the budget reductions on the plaintiffs as if the current preliminary injunction was not in place.
[6] The author of this Declaration cares for N.R.
[7] The author of this Declaration cares for B.B.

stability.  *Id.*  B.B.'s most recent budget was reduced 27% from the previous year's amount.  *Id.*  This budget jeopardizes his ability to continue to work, his functioning, and his health.  *Id.*

K.S. is a 34 year-old man with the functional age of 3 years and 8 months.  *S.S. Declaration (Dkt. No. 12).*[8]  K.S. was born with severe developmental disabilities and Down's Syndrome.  Since a cardiac emergency early in life, he has lived with congestive heart failure.  *Id.*  K.S. needs help toileting, bathing, grooming, and feeding himself.  *Id.*  He also has trouble interacting socially and experiences tantrums and frustration more frequently.  *Id.*  Nevertheless, through his community development programs, K.S. is able to meet people and improve his social skills.  K.S.'s budget was reduced 25% from its 2011 level.  *Id.*  This loss of funds means that K.S. will have to eliminate or greatly reduce his participation in his community development programs.  *Id.*

These three examples demonstrate that reducing a participant's budget equates to a reduction in services.  As a result, many of the named Plaintiffs are at risk of being institutionalized.  All of them, however, risk stagnating or more likely regressing in their functional levels because of the reduced levels of support they can afford with their diminished budgets.  Thus, Plaintiffs have shown the likelihood of irreparable injury.

**The Balance of Equities**

In light of IDHW not contesting this issue, the Court concludes that "the balance of hardships favors beneficiaries of public assistance who may be forced to do without

---

[8] The author of this Declaration cares for K.S.

needed medical services over a state concerned with conserving scarce resources." *M.R. v. Dreyfus*, 697 F.3d 706, 737 (9th Cir. 2012).

**Public Interest**

Again, IDHW has not objected on this ground.  The Court concludes that a preliminary injunction would favor the public interest.  The Supreme Court stated in *Goldberg* that "[w]elfare, by meeting the basic demands of subsistence, can help bring within the reach of the [recipients] the same opportunities that are available to others to participate meaningfully in the life of the community. At the same time, welfare guards against the societal malaise that may flow from a widespread sense of unjustified frustration and insecurity.  Public assistance, then, is not mere charity, but a means to promote the general [w]elfare." 397 U.S. at 265.

**Scope of the Injunction**

The Court therefore finds that Plaintiffs are entitled to have the preliminary injunction now in place extended to all class members.  To avoid any confusion, the Court will set forth the extended preliminary injunction in full below in the Order portion of this decision.

**Conclusion**

In conclusion, the Court will (1) grant the Plaintiffs' motion to certify a class; (2) grant the Plaintiffs' motion to extend the preliminary injunction to class members; (3) grant the Plaintiffs' motion to file a consolidated class action complaint; and (4) deny IDHW's motion to approve the Notice.

# ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to file a consolidated complaint (docket no. 79) is GRANTED. The plaintiffs shall file, and the Clerk shall docket, a consolidated complaint identical to the proposed consolidated complaint now filed as a "Supplement" (docket no. 80).

IT IS FURTHER ORDERED, that the motion to certify class (docket no. 81) is GRANTED. The following class of plaintiffs is certified pursuant to Rule 23: All persons who are participants in or applicants to the DDS Waiver program administered by the IDHW as part of the Idaho Medicaid program, and who undergo the annual eligibility determination or reevaluation process.

IT IS FURTHER ORDERED, that the motion to approve calculated budget notification (docket no. 97) is DENIED.

IT IS FURTHER ORDERED, that the motion for preliminary injunction (docket no. 82) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks the following: that defendants RICHARD ARMSTRONG, in his official capacity of the Idaho Department of Health and Welfare, and PAUL LEARY, in his official capacity as the Medicaid Administrator of the Idaho Department of Health and Welfare, and all of their officers, servants, employees, attorneys, and all those in active concert or participation with them are HEREBY ENJOINED as follows:

"1. The term "class member" in this injunction means any person who is a participant in or applicant to the Adult Developmental Disability Services program ("DDS program"), administered by the Idaho Department of Health and Welfare as part of the Idaho Medicaid program, and who undergoes the annual eligibility determination or reevaluation process.

"2. The defendants are prohibited from reducing or terminating Medicaid services under the DDS program to any class member as provided in the Individual Support Plans in place for each class member prior to July 1, 2011, and before the last "ANNUAL ICF/ID LEVEL OF CARE AND DD ELIGIBILITY APPROVAL NOTICE" and budget assignment notice sent to them, unless and until the defendants first provide adequate advance notice, approved by this Court, and the opportunity for a fair hearing prior to the reduction or termination of services. If the parties cannot agree, for any individual class member, upon the level of services or Individual Support Plan to which he or she is to be reinstated, continued, or restored under this order, that class member, or class counsel, or the defendants may apply to this Court for clarification.

"3. For any class member who makes a request (personally or through their guardian or attorney, or by another person providing a duly executed IDHW Authorization for Disclosure) for the budget setting methodology, the defendants shall make all of the following materials available for inspection and copying:

(a) Unaltered and unredacted electronic copies of the budget calculating tool spreadsheets used to compute individual Medicaid budgets, including all prior versions of the budget

calculating tool that are in the custody, control, or possession of the Idaho Department of Health and Welfare.

(b) Unaltered and unredacted copies of the Inventory of Individual Needs concerning that participant, including all prior Inventory of Individual Needs concerning that participant.

(c) Unaltered and unredacted electronic copies of the budget calculating tool spreadsheets actually used to compute that participant's budget, including all prior versions of the budget calculating tool spreadsheets that are in the custody, control, or possession of the Idaho Department of Health and Welfare and were actually used to compute that participant's prior budgets.

(d) All materials in that participant's case file(s) maintained by the Idaho Department of Health and Welfare (IDHW) and each IDHW contractor that performed an independent assessment of the requesting individual. Provided that, if any copyrighted materials are copied, they shall only be copied as allowed by the fair use and other exceptions to the copyright law.

(e) The following documents and materials:

(i) Budget calculating tool, dated 05/10/2011 (no version number designated);

(ii) Budget calculating tool, dated 04/15/2011 (Version 7);

(iii) Budget calculating tool, dated 10/19/2009 (Version 6);

(iv) Budget calculating tool, dated 07/20/2009 (Version 5);

(v) Budget calculating tool, dated 07/16/2009 (Version 4);

(vi) Budget calculating tool, dated 05/01/2009 (Version 3);

(vii) Budget calculating tool, dated 11/15/2007 (Version 2.5);

(viii) Idaho Medicaid Adult Developmental Disabilities Program Individualized Budget Calculation, dated 06/15/2006;

(ix) Individualized Budget Implementation, dated 07/19/2006;

(x) Individualized Budget Fact Sheet, dated 10/06/2007;

(xi) Department and IAP Individualized Budget Training Video Conference Friday 09/15 [year is unidentified] from 9-12 [p.m.];

(xii) Idaho Department of Health and Welfare Division of Medicaid Bureau of Developmental Disability Services Adult Developmental Disabilities Individual Budget Model Analysis, dated 01/20/2009;

(xiii) The Idaho Medicaid Adult DD Individual Budget Review Analysis, dated 01/20/2009;

(xiv) Calculated Budget Plan (CBP) Model [undated fact sheet];

(xv) Idaho Department of Health and Welfare, Division of Medicaid Adult Developmental Disabilities Summary of Individualized Budget Model Methodology [undated];

(xvi) Summary of Statistical Modeling Methodology of the Idaho Medicaid Adult DD Individualized Budget [undated long version];

(xvii) Summary of Statistical Modeling Methodology of the Idaho Medicaid Adult DD Individualized Budget [undated short version];

(xviii) Data used in the regression analyses for creating the budget tool, provided IDHW estimates it will take approximately 160 hours or more to replace the personal identifying information within that data with anonymous identifiers, and it shall not be a violation of this injunction if the defendants do not provide that data with anonymous identifiers or until a reasonable time is permitted for the defendants to complete that 160 hours or more of work; and along with any descriptions, reports, studies and other records concerning IDHW's present, prior, and future methodologies, models, tools, spreadsheets, memoranda, training manuals, other materials, including any materials provided to the Independent Assessment Providers, that are in the custody, control, or possession of IDHW or are later created, obtained, found, or discovered by IDHW. All information and materials shall be unredacted and unaltered and shall include all records that are electronically stored. If a class member, class counsel, or the defendants are unable to agree whether any requested record or information is within the scope of this injunction, that class member, or class counsel, or the defendants may apply to this Court for clarification.

"3. For any member of the public who makes an Idaho Public Records Law request for the budget setting methodology, the defendants shall make all of the materials described in subparagraphs 2(a) and 2(e) of this injunction available for inspection and copying." This motion is based on the brief filed along with it, as well as the motion for class certification and brief in its support, and the records in this consolidated case, in *K.W. v. Armstrong,* no. 12-cv-22, and in *Schultz v. Armstrong,* no. 12-cv-58.

IT IS FURTHER ORDERED, that the copying permitting above shall not include at this time the Scales of Independent Behavior – Revised (SIB-R) as the discoverability of those documents remains to be resolved.

DATED: March 24, 2014

B. Lynn Winmill
Chief Judge
United States District Court