UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W., et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare; PAUL LEARY, in his official capacity as Medicaid Administrator of the Idaho Department of Health and Welfare; and the IDAHO DEPARTMENT OF HEALTH AND WELFARE, a department of the State of Idaho,<br><br>　　　　Defendants. | Case No. 1:12-cv-22-BLW<br>(lead case)<br><br>**MEMORANDUM DECISION AND ORDER** |
| TOBY SCHULTZ, et al.<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>RICHARD ARMSTRONG, et al.,<br><br>　　　　Defendants. | Case No. 3:12-CV-58-BLW |

## INTRODUCTION

Before the Court is a motion to bifurcate and a motion to clarify, both filed by the Idaho Department of Health and Welfare (IDHW). The motions are fully briefed and at issue. For the reasons below, the Court will (1) deny the motion to bifurcate, and (2) grant in part and deny in part the motion to clarify.

## LITIGATION BACKGROUND

Plaintiffs are developmentally disabled adults who qualify for benefits under Medicaid. They are eligible for long-term institutional care but choose to live instead in their own homes or in community settings. When their Medicaid payments were reduced, they brought this action against IDHW, alleging, among other things, that the notices sent by IDHW informing them of the reductions were insufficient. The Court enjoined the reductions, and the parties eventually agreed to the terms of a preliminary injunction that maintained the status quo and provided plaintiffs with information regarding their budget reductions. That injunction restored the plaintiffs' budgets to the levels they were at prior to July 1, 2011, the date IDHW sent the unconstitutional budget notices. The injunction also prohibited IDHW from reducing plaintiffs budgets until it (1) provided plaintiffs with notices, approved by this Court, and (2) made available for copying specified documents it used to calculate plaintiffs' budgets.

IDHW responded by filing a motion to approve the form of Notice that they sent to each plaintiff. The Court denied the motion, holding that the Notice failed to provide due process because it did not explain budget reductions. *See Memorandum Decision*

*(Dkt. No. 66)* at p. 8. The Notice provided by IDHW made it very difficult for a participant to determine why his budget had been reduced and left him unable to effectively challenge the reduction.

In the meantime, another group of named plaintiffs filed a nearly identical case entitled *Schultz v. Armstrong, CV-12-58-BLW.* On April 6, 2013, the Court ordered that case consolidated with the present case. *See Order (Dkt. No. 77).*

The plaintiffs then filed (1) a motion to certify a class; (2) a motion to extend the existing preliminary injunction to the proposed class members; and (3) a motion to file a consolidated class action complaint. IDHW filed a second motion to approve its form of Notice.

The Court denied IDHW's motion, finding that the proposed notice contained the same flaws as found previously – it failed to properly notify participants of the reasons for IDHW's actions. The Court granted plaintiffs' motions, certifying a class and extending the existing preliminary injunction to all members of the class. The Court's decision adopted the terms of the injunction verbatim as proposed by plaintiffs.

With regard to the class, the plaintiffs had sought to certify a class to challenge the generic policies and procedures that IDHW applies across-the-board to participants and applicants in the DDS Waiver program. Of the 3,600 or so participants in that program, 14 brought this case as representatives of all those similarly situated. They challenged several systemic components of the program, claiming that: (1) IDHW's budgeting methodology improperly reduces assistance for some recipients; (2) the notice that

IDHW uses to inform participants of reductions in their assistance is insufficient; and (3) there is no fair predeprivation hearing prior to reducing assistance.

To encompass all the participants that are affected by these alleged system defects, the plaintiffs proposed – and the Court approved – the following class definition: All persons who are participants in or applicants to the DDS Waiver program administered by IDHW as part of the Idaho Medicaid program, and who undergo the annual eligibility determination or reevaluation process.

In addition to the class claims that challenge the system-wide processes of IDHW, there are individual claims brought by 16 named plaintiffs alleging that reductions to their budgets puts them at risk for being institutionalized. These individual claims are referred to as the *Olmstead* claims, after the Supreme Court decision requiring those in the position of plaintiffs to show that "the challenged state action creates a serious risk of institutionalization." *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 607 (1999).

In the motion to bifurcate, IDHW seeks to bifurcate the *Olmstead* claims from the class-wide claims for pre-trial discovery and trial purposes under Rule 42(b). IDHW asks that the *Olmstead* claims be stayed pending resolution of the class claims. In the motion to clarify, IDHW asks the Court to explain whether the injunction prevents it from denying services to participants once they become ineligible to receive such services.

The Court will turn first to the motion to bifurcate.

# ANALYSIS

## Motion to Bifurcate

The *Olmstead* claims will require substantial discovery and trial time. The developmental disabilities suffered by the *Olmstead* plaintiffs differ significantly, and include severe epilepsy; muscular dystrophy; mental retardation, seizure disorder and depression; Down's Syndrome; mental retardation together with seizure disorder, diabetes, high blood pressure and glaucoma; autism; mental retardation and attention deficit disorder; Asperger's Syndrome and developmental delays; schizophrenia; post-traumatic stress disorder and orthopedic difficulties related to balance and standing. Some of the *Olmstead* plaintiffs require round-the-clock assistance or have a history of substantial institutionalization. *See Amended Complaint (Dkt. No. 148)* at ¶¶ 2, 3, 8, 12, 13. Others appear more independent. *Id.* at ¶¶ 4, 9, 11.

The *Olmstead* determination will require a fact-based inquiry into whether the assistance for these individuals is sufficient to keep them from being institutionalized. That inquiry will require expert testimony, and will likely add weeks to any trial.

IDHW argues that the time and expense devoted to *Olmstead* issues may be unnecessary if the class plaintiffs prevail on their challenge to the budgeting methodology. A recalculation of budgets that results in more assistance may moot the individual *Olmstead* claims, the IDHW asserts, and render worthless the discovery done on those claims. Thus, IDHW seeks to stay the expensive discovery on the *Olmstead* issues until the class challenge to the budgeting methodology is resolved.

The Court agrees that the discovery and trial of the *Olmstead* claims may be long and expensive. It is not clear, however, that the *Olmstead* claims would be resolved if plaintiffs prevail on their claim that the budget methodology is flawed. The budgets may be increased, but there is no guarantee that the increase will dissipate the threat of institutionalization that plaintiffs allege. Meanwhile, bifurcation will cause substantial delay. Under IDHW's proposal, they would conduct no discovery on the *Olmstead* issues until plaintiffs prevail on the budget methodology issue, the budgets are recalculated, and the plaintiffs decide to keep litigating rather than being satisfied with the increased budgets. The case will proceed far faster if all of this is done at the same time. Moreover, delay is particularly pernicious given the claims in this case.

For these reasons, the Court will deny the motion to bifurcate.

**Motion for Clarification**

As discussed above, the Court's earlier decision held that every reduction in benefits instituted by IDHW on or after July 1, 2011, violated the participants' due process rights because those reductions were not accompanied by notice that passed constitutional muster. Consequently, the Court issued a class-wide preliminary injunction requiring IDHW to roll back those reductions and restore the benefits those participants were entitled to prior to July 1, 2011.

The plaintiffs then filed a motion to clarify, stating that the injunction treated some class members unfairly. For example, some class members had nothing but increases in

their budgets since July 1, 2011.[1] Obviously, restoring those participants to their pre-July 1, 2011, budget levels would be a punishment, not a remedy, and contrary to the Court's intention. The Court held that those participants are entitled to keep their budget increases.

There are others whose budgets increased for some time and then decreased more recently. A remedy that attempts to restore them to their pre-July 1, 2011, budget levels would encounter two problems: (1) it could not be implemented for those participants who only joined after July 1, 2011; and (2) it deprives them of their budget increases since that date.

To rectify all these shortcomings of the injunction, the Court granted plaintiffs' motion to clarify, holding that

> any budget reduction for a class member since July 1, 2011, must be rolled back under the injunction. For some, that will restore them to their pre-July 1, 2011, budgets. For others, it will restore them to their highest budget level since July 1, 2011. No class member is to be deprived of any budget increase since July 1, 2011.

*See Memorandum Decision (Dkt. No. 140)* at pp. 5-6. IDHW now seeks to clarify whether the Court intended the injunction to require it to provide services for which a participant is no longer eligible. The issue arose in the case of T.M., a class member, who had been receiving "intense supported living services", involving around-the-clock

---

[1] Even though participants in this group have not suffered any reductions, the Court included them in the class because the denial of the right to notice that complies with the Due Process Clause is an injury in itself, regardless of actual injury. *See Memorandum Decision (Dkt. No. 130)* at p. 12 (citing *Carey v. Piphus,* 435 U.S. 247, 266 (1978); *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

monitoring and therapy. To qualify for such intensive care, the recipient must have a documented history of serious aggressive behavior to herself or others.

In October of 2013, IDHW issued a notice to T.M. that her new budget would no longer support "intense supported living services," but would now be calculated to support a lesser amount of services labeled "high supported living." *See Exhibit 5 (Dkt. No. 162)*. The Notice did not explain why T.M. was no longer qualified to receive the more intensive services.

Her new budget, imposed by IDHW, was $111,305.65. *Id.* T.M. responded by submitting a service plan for "intense supported living services" that would cost 169,783.08. *See Exhibit 6.* Shortly thereafter, IDHW received the Court's decision – discussed above – and restored T.M.'s budget cuts, giving her a new budget of $191,686.42. *See Exhibit 7 (Dkt. No. 162).* Although T.M.'s request was now within her budget, IDHW rejected it on the ground that T.M. did not satisfy the criteria necessary to qualify for that level of service.

T.M. appealed that decision to a hearing officer who heard testimony from seven witnesses. While some of the testimony indicated that T.M.'s behavior had improved to the point where she no longer needed intense services, other testimony indicated that she continued to need such services.

The hearing officer did not resolve the conflicting testimony. Instead, he ruled that this Court's injunction prevented IDHW from arguing that a class member had become ineligible for certain services. *See Exhibit 9 (Dkt. No. 162).* The hearing officer

relied on language in the original preliminary injunction stating that the Department is "prohibited from reducing or terminating Medicaid services" to any class member with a plan in place prior to July 1, 2011.

But the Court revised that injunction to maintain budgets, not services. *See Memorandum Decision (Dkt. No. 140).* The Court never intended to force the IDHW to pay for certain services when, for example, the class member's condition had improved and she was no longer eligible for those services. Otherwise, funds that might be applied to help the truly deserving would be diverted to the undeserving, an absurd result. Plaintiffs appear to recognize this point and do not argue otherwise in their briefing.

The plaintiffs do argue, however, that IDHW's notices to the class members informing them that their services would be cut fail to contain the explanation required by the Court. In 2014, IDHW sent out eight notices denying proposed plans for support living service, similar to the notice sent to T.M. *See Notices (Dkt. Nos. 164-1).* Six of the eight notices are the standard IDHW notices that contain no individualized explanation as to why the services were being denied. The Court has already declared such notices insufficient. *See Memorandum Decision (Dkt. No. 66).*

It appears from the briefing that T.M. did not object to the generic notice she received, was able to discern the reasons for her denial, and had a full opportunity to present evidence before the hearing officer. This means, according to IDHW, that any alleged deficiencies in the notices are irrelevant to the pending motion to clarify the injunction.

The Court disagrees. IDHW is not before the Court on an appeal from the hearing officer's decision in T.M.'s case. By filing instead a motion to clarify the injunction, IDHW seeks a review that goes beyond T.M.'s case to examine the full scope of the injunction. Thus, IDHW cannot use T.M.'s case to limit the Court's review. And that review certainly encompasses the notices of service plan denials because the very reason the injunction was issued in the first place was because of deficient notices.

Based on that review, the Court will clarify the injunction as follows: (1) the injunction does not prevent IDHW from denying services based upon a finding that the participant is no longer eligible for those services; and (2) IDHW must provide a participant with a notice that contains an individualized explanation for the service plan denial.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to bifurcate and stay (docket no. 153) is DENIED.

IT IS FURTHER ORDERED, that the motion for clarification (docket no. 161) is GRANTED IN PART AND DENIED IN PART. The injunction (set forth in Preliminary Injunction (docket no. 41) as extended by Memorandum Decision (docket no. 130) and modified by Memorandum Decision (docket no. 140)) is clarified as follows: (1) the injunction does not prevent IDHW from denying services based upon a finding that the participant is no longer eligible for those services; and (2) IDHW must provide a

participant with a notice that contains an individualized explanation for the service plan denial.



DATED: February 13, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court