UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD ARMSTRONG, et al.,<br><br>Defendants. | Case No. 1:12-cv-00022-BLW<br>(lead case)<br><br>**MEMORANDUM DECISION AND ORDER** |
| TOBY SCHULTZ, et al.<br>Plaintiffs,<br>v.<br>RICHARD ARMSTRONG, et al.,<br>Defendants. | Case No.  3:12-CV-58-BLW |

**INTRODUCTION**

The Court has before it (1) plaintiffs' motion to enforce judgment; (2) defendants' motion to set reasonable completion deadlines; (3) defendants' motion to strike or allow sur-reply brief; (4) defendants' motion to amend submissions; and (5) plaintiffs motion for ADR order.  Some of the motions are fully briefed while other remain in the briefing stage.  Most of the briefing on the early motions did not fully anticipate the dramatic changes made by the COVID1-19 virus, while the newer motions are attempting to evaluate those changes but remain in the briefing stage.

In this decision, the Court will resolve the two original motions that are fully briefed by granting them in part and denying them in part.  The Court will impose a two-track deadline system, with one track being a longer deadline for the restructuring of

**Memorandum Decision & Order – page 1**

services and the other track being a shorter deadline for creation of the new budget tool. The two motions are denied to the extent they seek to impose any certain deadline as that must await further briefing on the other motions.

The Court will also grant the defendants' motion to amend submissions to address COVID-19, and will grant in part the defendants' motion to allow sur-reply brief.

## LITIGATION BACKGROUND

Plaintiffs are developmentally disabled adults who qualify for benefits under Medicaid. They are eligible for long-term institutional care but choose to live instead in their own homes or in community settings. When their Medicaid payments were reduced, they brought this action against IDHW, alleging, among other things, that the IDHW's budgeting methodology – referred to as the budget tool – improperly reduces assistance for some recipients, that the notice that IDHW uses to inform participants of reductions in their assistance was insufficient, and that the process for appealing budget reductions was unfair.

The Court certified a class of disabled adults to challenge the budget tool, notice form, and hearing procedures used by the IDHW.[1] The parties then reached a settlement of these class claims. In the Class Action Settlement Agreement, approved by the Court

---

[1] In addition to these class claims that challenge the system-wide processes of IDHW, there are individual claims brought by 16 named plaintiffs alleging that reductions to their budgets puts them at risk for being institutionalized. These individual claims are referred to as the Olmstead claims, after the Supreme Court decision requiring those in the position of plaintiffs to show that "the challenged state action creates a serious risk of institutionalization." *See Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 607 (1999).

**Memorandum Decision & Order – page 2**

in 2017, IDHW agreed to develop a new budget tool, and to keep plaintiffs' benefits at their prior high level until the new budgets could be approved and implemented.

The Agreement allowed IDHW two years to develop a new budget tool. It further stated that if IDHW failed to implement the new tool within three years (no later than January 2020), the plaintiffs could ask the Court "to set a reasonable completion deadline" for IDHW.

When IDHW could not complete its work within the deadline imposed by the Agreement, the parties each filed a motion asking the Court to impose their version of a "reasonable completion deadline." Those two motions are fully briefed and at issue before the Court. IDHW's motion asks for an extension of the deadline to January 12, 2023, while plaintiffs want IDHW to be done in 120 days.

There are also other motions, listed above in the Introduction section, awaiting further briefing, and the Court will discuss them below.

## ANALYSIS

After the parties filed these two motions, COVID-19 struck, upending the assumptions of both parties, and rendering the two motions largely, although not entirely, obsolete. Recognizing the new landscape, both parties filed new motions that have not yet been fully briefed.

One of the new motions was filed by IDHW seeking to amend its prior briefing to request an extension of the deadline to January 2024. *See Brief (Dkt. No. 390)*. IDHW alleges that key members of its team have been diverted to work on COVID issues; critical meetings have been cancelled; and class members have been unable to provide

**Memorandum Decision & Order – page 3**

input on settlement implementation because of the stress and disruption that the virus has caused. *See Declaration of Yee-Wallace (Dkt. No.390-1)* at pp. 2-4. These disruptions, IDHW alleges, will continue for some time and the agency asks to submit additional briefing to justify an extension to January of 2024.

Plaintiffs do not object to IDHW being allowed to supplement its briefing to address the COVID problems so long as they get an equal chance. The Court will therefore grant IDHW's motion, allowing both sides to supplement their briefing. The parties can work out an agreement on a briefing schedule.

The plaintiffs have also filed their own new motion, asking the Court to direct the parties to ADR. Plaintiffs recognize that the virus has wreaked havoc on IDHW and on the class members, but not enough to justify moving the deadline as IDHW requests. Plaintiffs argue that ADR would allow the parties to discuss all these changed circumstances and craft a plan that takes into account the COVID virus while at the same time avoids a multi-year delay. This motion is still being briefed, and any decision on its merits must await that briefing.

There are, however, two motions fully briefed asking the Court to determine whether the deadline should be set in 120 days (plaintiffs' motion) or in January of 2023 (defendants' motion). Neither motion discusses the impact of COVID-19, and the parties have since recognized that those impacts will change their analysis and have moved away from their original analysis.

For these reasons neither motion can be granted outright. But both motions contain seeds of a solution. Accordingly, the Court will grant in part and deny in part

**Memorandum Decision & Order – page 4**

each of these two original motions, setting out below the positive and the negative aspects of each motion.

First, the most positive aspect of IDHW's motion concerned its need for a lengthy delay to make important structural changes to various services it provides to the disabled population. Importantly, those changes, and the associated delays, are supported by the Idaho Council on Developmental Disabilities (ICDD), an advocacy group for Idaho's disabled population and their families. *See Pisani Declaration (Dkt. No. 374-9).* More specifically, those changes proposed by IDHW are as follows: (1) redefine the supported living service and restructure how supports are paid; (2) developing habilitation and prevocational services; (3) improving the person-centered planning process; and (4) restructuring medical transportation. *See Second Evans Declaration (Dkt. No. 387-1)* at ¶ 4. The advocacy group ICDD agrees with IDHW "taking the long view" with this restructuring and agrees with the several years of delay because they "understand the time requirements and the necessary steps to be completed if in fact individuals with [intellectual and developmental disabilities] and families are to be an integral part of creating their service system." *See Pisani Declaration, supra,* at ¶ 9(A).

Plaintiffs do not object to the restructuring of services, arguing that they were part of the original Class Settlement Agreement, and they understand why delays are necessary, if not to the full extent requested by defendants. However, plaintiffs challenge the defendants' assumption that the restructuring delay requires an identical delay for creation of the new budget tool, and this gets to the most positive aspect of the plaintiffs' motion. They propose a two-track deadline, requiring a new budget tool in, say, eight

**Memorandum Decision & Order – page 5**

months, and allowing a lengthier delay for the service changes. This two-track deadline finds support in the Declaration of Alena Vazquez with the Human Services Research Institute (HSRI), the entity chosen by both sides to work with IDHW to create the new budget tool. *See Vazquez Declaration (Dkt. No. 374-15).* Although it may take several years to make the structural changes to the services discussed above, it would only take about 8 months to create the new budget tool, according to Vazquez. *Id.* at ¶ 14.

Establishing a two-track deadline grants flexibility on one track (restructuring of services) and imposes urgency on the second track (replacing the unconstitutional budget tool that is still being used to calculate budgets). Those are the positive aspects of the two original motions and the Court will grant the motions to that extent.

The negative aspect of both motions is their understandable failure to discuss the impact of COVID-19. To the extent those two motions argue for a precise deadline – 120 days for plaintiffs and 2023 for defendants – the Court will deny the motions because the Court must await new briefing to evaluate the impacts of COVID-19. While the Court will impose some type of two-track deadline system, its precise deadlines must await further briefing.

This ruling should provide fertile ground for discussion of a mutually agreeable solution by the parties. As discussed above, there is a pending motion for ADR that might be the vehicle for such a discussion, although the Court will await full briefing before ruling on that issue.

Finally, defendants have filed a motion to strike arguments plaintiffs made in their reply brief concerning their motion to enforce settlement agreement. In the alternative,

**Memorandum Decision & Order – page 6**

defendants ask leave to file a sur-reply brief.  The Court finds that although plaintiffs raised new arguments in their reply brief, those new arguments were a legitimate response to defendants' response brief.  Thus, fairness requires that the Court deny the request to strike those arguments but allow defendants to file a sur-reply brief.

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to enforce judgment (docket no. 353) and the motion to set reasonable completion deadline (docket no. 373) are GRANTED IN PART AND DENIED IN PART.  The Court will impose a two-track deadline system, with one track being a longer deadline for the restructuring of services and the other track being a shorter deadline for creation of the new budget tool.  The motions are denied in all other respects.

IT IS FURTHER ORDERED, that the motion to amend submissions (docket no. 390) is GRANTED, and that both sides will be allowed to amend their previously filed motions and briefs and shall agree on a briefing schedule.

IT IS FURTHER ORDERED, that the motion to strike or allow sur-reply (docket no. 388) is GRANTED IN PART AND DENIED IN PART.  Defendants are allowed to file a sur-reply brief but the Court denies that portion of the motion seeking to strike portions of plaintiffs' reply brief.

DATED: June 4, 2020

_____
B. Lynn Winmill
U.S. District Court Judge