UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W., et al., | Case No. 1:12-cv-00022-BLW (lead case) |
| Plaintiffs, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| RICHARD ARMSTRONG, et al., | |
| Defendants. | |
| TOBY SCHULTZ, et al., | Case No. 3:12-cv-58-BLW |
| Plaintiffs, | |
| v. | |
| RICHARD ARMSTRONG, et al., | |
| Defendants. | |

**INTRODUCTION**

Before the Court are competing attorneys' fee motions. *See* Dkts. 433, 435. Plaintiffs ask for an award of $115,730. Defendants ask for roughly $99,000. The Court has reviewed the briefing, as well as the letters submitted by class members during the recent weeks. *See* Dkts. 455-59. For the reasons explained below, the Court will grant plaintiffs' motion and deny defendants' motion.

## BACKGROUND

The Court certified a class of disabled adults to challenge the budget tool,

notice form, and hearing procedures. After the Court granted summary judgment in

plaintiffs' favor, the parties settled the class claims. In the Class Action Settlement

Agreement, approved by the Court on January 12, 2017, the Department agreed to

develop a new budget tool and to keep plaintiffs' benefits at their prior high level

until the new budgets could be approved and implemented. As part of the

settlement, the Department set a goal of developing and implementing the new

budget tool within 24 months. *See* Dkt. 306,-1, at 8-9.[1] If the Department failed to

implement the new tool within three years (no later than January 2020), the

plaintiffs could ask the Court "to set a reasonable completion deadline." *Id.* at 9.

When the Department did not complete its work within 24 months, both

sides asked the Court to impose their version of a reasonable completion deadline.

---

[1] The relevant provision states:  "Action Steps and Estimated Completion. . . . . The Department will develop estimated dates for completion with HSRI [an outside consultant] as the project moves forward, with the goal of completing the last action step below within 24 months of the inaugural meeting with HSRI described in action step one below. If the last action step below is not completed within 24 months of the inaugural meeting, the Parties shall meet and confer in an effort to identify an agreed completion deadline; if the Parties have not agreed on a completion deadline and the last action step below is not completed within 36 months of the inaugural meeting, class counsel may initiate the dispute resolution process set forth in Section V.M. below and, if the deadline remains disputed after that process is completed, Plaintiffs may file an appropriate motion and the Court shall set a reasonable completion deadline."

In briefs that were filed before the COVID-19 pandemic began, the Department asked the Court to set a completion deadline of January 12, 2023, while plaintiffs wanted the Department to be done in 120 days. After the pandemic hit, the Department asked the Court to extend the completion deadline to January 2024. Plaintiffs asked the Court to send the parties to ADR.

Initially, the Court indicated it would impose a two-track deadline system, with one track being a longer deadline for the restructuring of services and the other track being a shorter deadline for creation of the new budget tool. *See* Dkt. 396. Later, though, the Court denied plaintiffs' request to send the parties to ADR and scheduled a hearing to resolve outstanding issues. Dkt. 420. In December 2020, after hearing the parties' arguments, the Court ordered a reasonable completion deadline of June 2022.

After the Court decided the reasonable completion deadline, both parties filed the pending motions for attorneys' fees. *See* Dkts. 433, 435. In an earlier order, the Court approved a form of notice, which informed the class about class counsel's efforts to obtain a fee award. *See* Dkt. 449.

## ANALYSIS

The settlement agreement allows either party to seek an attorneys' fee award if the Court is called upon to resolve a dispute arising under the agreement. The relevant provision provides:

The Parties agree to bear their own attorneys' fees and costs relating to ordinary monitoring of and compliance with this Agreement and any orders or judgment that the Court enters with respect to this Agreement. However, *either Party may petition the Court for an award of attorneys' fees and costs if the applicable dispute resolution or noncompliance procedures set forth in this Agreement fail and a motion, petition, or court decision or order therefore resolves a dispute arising under this Agreement* (including disputes over approval, compliance, enforcement, interpretation, modification, clarification, or termination under the Agreement). As to any such claims for attorneys' fees or costs, the Parties agree that the 42 U.S.C. § 1988 standard for fee awards will apply, including as to whether fees may be assessed against Plaintiffs, whether a Party is a prevailing Party entitled to an award, and the appropriate amount of an award.

Dkt. 306-1 at 34 (emphasis added).

According to this provision, the Court looks to 42 U.S.C. § 1988 to decide which party is the "prevailing party," whether fees can be assessed against plaintiffs, and the appropriate amount of any fee award.

## 1.  Plaintiffs are the Prevailing Party

The Court's first task is to determine the "prevailing party." Under 42 U.S.C. § 1988, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Here, both sides declare victory. Plaintiffs focus on the overall result – pointing out that after the latest round of motion practice, they have emerged with

a deadline in hand: the Department must implement the new budget tool by June 2022. Before that ruling, plaintiffs had only "goals" and "estimated dates." *See* Dkt. 306, at 7-8. Now they have a firm deadline. Plus, by securing that June 2022 deadline, plaintiffs were able to stave off two years' worth of delay that the Department insisted was necessary. In that regard, plaintiffs now report that "despite IDHW's [earlier] protestations that it would not be able to finish the budget tool before 2024, IDHW has now adjusted its schedule to meet the June 2022 deadline." *Motion Mem.,* Dkt. 433-1, at 5.

The Department, however, says it won the day, because plaintiffs asked for a much earlier "reasonable completion date" than they got. (To recap: Plaintiffs asked for 120 days from the date of the ruling; the Department said it needed until January 2024. The Court ruled in December 2020, allowing the Department until January 2022 (roughly 18 months) in which to complete the new budget tool.) The Department also correctly states that plaintiffs asked for other forms of relief which the Court denied. *See Def. Mtn. Mem.,* Dkt. 435-1, at 8. The Court did not send the parties to ADR, and it did not put certain requested safeguards in place.

Given this record, the Department created an issue-by-issue wins-and-losses chart and chalked up more wins for itself. *See Response,* Dkt. 440, at 5-6. At one point, the Department even goes so far as to characterize plaintiff as having suffered a complete loss: "Plaintiffs had no success with their motion, and

Defendants should not pay for Plaintiffs' unsuccessful motion." *Response,* Dkt. 440, at 10.

The Court is not persuaded. First, the Supreme Court has counseled against such a "mathematical approach comparing the total number of issues in the case with those actually prevailed upon.'" *Sottoriva v. Claps*, 617 F.3d 971, 976 (7th Cir. 2010) (*quoting Hensley,* 461 U.S. at 435). Put differently, § 1988 doesn't require plaintiffs to run the table to achieve prevailing-party status. Rather, if they obtain relief that "materially alters the legal relationship between the parties by modifying the defendants' behavior in a way that directly benefits the plaintiffs," they may be a prevailing party. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).

As already noted, the Department's behavior has been modified in a way that directly benefits the plaintiffs: the budget tool will be finished two years earlier than the Department had wanted. Of course, the other side of that argument is that the Department got far more time than plaintiffs had wanted. But, as already pointed out, a significant win for the plaintiffs is that they now have a firm deadline, rather than just goals.

All told, this is enough to push plaintiffs across the statutory threshold into prevailing-party status. As already noted, the governing legal standard here is generous: "'plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on *any* significant issue in litigation which achieves *some*

MEMORANDUM DECISION AND ORDER - 6

of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart*, 461 U.S.

424, 433 (1983) (citation omitted; emphasis added).

**2.  Plaintiffs Are Entitled to a Reasonable Fee Award**

The next step is to determine a reasonable fee award.

As a threshold matter, the Court is not persuaded by defendants' argument

that plaintiffs should not recover any fees, even if the Court determines – as it has

– that plaintiffs are the prevailing parties. Here, the Department argues that it

would be "unfair to Defendants to force it to pay for Plaintiff's losing efforts, when

Defendants had to present evidence to the Court of a reasonable deadline." *Resp.,*

Dkt. 440, at 9. For all the reasons discussed earlier, though, the Court does not

view the plaintiffs as having mounted a "losing effort." Nor does the Court find

"special circumstances" that would justify denying plaintiffs' attorney's fees. *See*

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 284 F.3d 1163, 1169

(9th Cir. 2002). Plaintiffs were the prevailing parties, and a fee award is warranted.

**3.  The Lodestar Calculation**

To determine a reasonable fee, the Court begins by calculating the lodestar

figure, which is done "by multiplying the number of hours reasonably expended on

the litigation by the reasonable hourly rate." *Gracie v. Gracie*, 217 F.3d 1060,

1070 (9th Cir. 2000). Then, where appropriate, the Court should "adjust the

'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v.*

*Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Id.*[2]

### a.  Reasonable Hourly Rates

To determine whether an hourly rate is reasonable, the Court looks to hourly rates prevailing in the relevant legal community for similar work performed by attorneys of comparable skill, experience, and reputation. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam). Here, plaintiffs claim hourly rates of $350 for Richard Eppink, James Piatrowski, and Marty Durand and $250 for Molly Kafka. Respectively, these attorneys have 14, 26, 25, and 6 years' experience. Defendants have not objected to the requested rates, which are adequately supported in plaintiffs' declarations and briefing. The Court finds that the claimed hourly rates are reasonable.

### b.  Number of Hours Reasonably Expended

The next step is to determine the hours reasonably expended on the

---

[2] The *Kerr* factors include: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr*, 526 F.2d at 70. Only those factors which are applicable need to be addressed.

litigation. Plaintiffs' attorneys spent 337.8 hours related to the motion to enforce the settlement agreement. *See Reply,* Dkt. 445, at 10. That number, multiplied by the applicable hourly rates, yields a lodestar figure of $115,380, as shown here:

| Attorney | Hourly Rate | Hours | Total Fee |
|---|---|---|---|
| Richard Eppink | $350 | 162.6 | $56,910 |
| James Piatrowski | $350 | 103[3] | $36,050 |
| Marty Durand | $350 | 43.7 | $15,295 |
| Molly Kafka | $250 | 28.5 | $ 7,125 |
| | TOTALS | 337.8 | $115,380 |

### c. Line-Item Challenges

Defendants raise numerous line-item objections to plaintiffs' time sheet entries. These challenges fall into three categories: (1) challenges to work the Department says is unrelated to the deadline litigation; (2) challenges to imprecise time sheet entries; and (3) challenges to work the Department says was duplicative.

The Court has reviewed each challenged entry, however, and does not

---

[3] Plaintiffs erroneously report than Mr. Piatrowski billed 104 hours to these motions, but the correct number is 103. The math looks like this: Mr. Piatrowski originally reported that he spent 101.1 hours on the deadline litigation. On reply, though, he conceded that he had inadvertently included time entries at lines 6-9 and 85. *See Reply,* Dkt. 445, at 8. Although the total time represented by those line entries is **3.2** hours, counsel reported it as **2.2** hours and then deducted 2.2, rather than 3.2, from that initial figure of 101.1 hours. *Compare id. with Billing Chart,* Dkt. 440-2, lines 6-9, 85. The Court will assume a math error, or, perhaps more likely, a scrivener's error. The upshot is that Mr. Piatrowski's initial time report of 101.1 hours should have been 97.9 hours. (101-1 – 3.2 = 97.9). After those hours were reported, he spent another 5.1 hours, which brings his total claimed hours 103 hours (97.9 + 5.1 = 103). *See Second Piatrowski Dec.,* Dkt. 445-2.

believe any deductions are appropriate. Most significantly, class counsel has adequately explained that the time spent was related to the motion to enforce the settlement agreement, as opposed to ordinary monitoring activities. Accordingly, the Court will not reduce the fee award by omitting the challenged time entries at lines 45, 69-71, 119, 154, 251, 257, or 281-86. *See* Dkt. 440-2.

Similarly, the Court will not dock class counsel for imprecise time entries. Granted, some entries would have benefited from a more detailed description. For example, Mr. Piatrowski had two entries with this description: "Telephone calls with clients/class reps." *Billing Summary,* Lines 54-55. But plaintiffs explain that the context of these entries, including adjacent entries at Lines 52 and 56, provides the relevant context, which adequately shows that the time was spent on tasks related to the deadline dispute. *See generally Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995) (upholding fee award where the "cumulative effect" of the attorneys' records allowed the Court to assess the reasonableness of the hours billed). For other entries challenged as being too imprecise (Lines 80-82, 111, 113-14, 275-80, 289-90), plaintiffs' counsel explains that, at the time of the entries, the only thing happening in the case related to the deadline litigation:

> "Though IDHW complains that it's not clear whether these class member meetings were about settlement implementation and the deadline for it, that is literally all that was going on in the case during that time."

*Reply,* Dkt. 445, at 8.

Finally, the Court is not persuaded that the attorneys needlessly duplicated effort. Class counsel will need to communicate with each other from time to time, and the decision to send two or more attorneys to meetings with opposing counsel does not strike the Court as excessive. Indeed, other courts have observed that

> "unless a law firm is handling the simplest of cases, it would be naïve to believe that attorneys should not brainstorm over strategic decisions. In fact, it would be *detrimental* to a client's overall litigation position if lawyers operated in intellectual silos and never shared analytic approaches with their colleagues. Thus, multiple attorneys on the same case are not automatically precluded from obtaining fees for strategic conferences between themselves."

*Prison Legal News v. Inch*, 411 F. Supp. 3d 1198, 1212 (N.D. Fla. 2019) *(quoting Advanced Diabetes Treatment Ctrs., LLC v. Sebelius*, No. 09-61698, 2012 WL 5077155 (S.D. Fla. Sept. 20, 2012)). This is especially true here. This is a complex case with complex issues. The billing records do not show that the attorneys needlessly duplicated effort or were otherwise inefficient. Accordingly, the Court will deny the Department's request to reduce the hours billed at lines 1, 2, 39, 53, 60, 65, 75, 87, 88, 91, 97, 105, 106, 109, 119, 122, 124, 125, 152, 154, 174, 177, 189, 244, 254, 261, and 271.

### d.  Downward Adjustment

The final question is whether the Court should make a downward adjustment to the lodestar. The lodestar is the "presumptively reasonable" award amount.

*Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Plus, the Supreme Court has explained that plaintiffs' attorneys normally should recover fees for "all hours reasonably expended on the litigation," and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention" they argued. *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

The Department argues for a 75% reduction to the lodestar to reflect plaintiff's limited success.

In *Hensley*, the Supreme Court set forth an analytic framework for determining whether a plaintiff's partial success requires a reduction in the lodestar. *Id.* at 434-37. At step one of this analysis, the district court examines whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded. The hours spent on such unsuccessful claims should be excluded from the calculation. *Id*. at 434-35. At step two, the district court determines whether there are any unsuccessful claims interrelated with the successful claims. If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award. *Id.* at 436. If a plaintiff has obtained excellent results, however, the attorneys should be fully compensated. *Id.* at 435.

Here, by analogy to the claims discussed in *Hensley*, plaintiffs' arguments were all related to a common factual core – the Department's failure to finish the

budget tool within the anticipated three-year time frame. Thus there are no "unrelated claims" to which step one of the *Hensley* analysis might be applied.

Turning to the second step of *Hensley* analysis, the Department again focuses on the fact that plaintiffs did not get all the relief they sought. In *Hensley,* the Court held that "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *See also Davis v. Mason County*, 927 F.2d 1473, 1489 (9th Cir. 1991). Here, although plaintiffs didn't get everything they asked for, the relief they did receive justifies awarding them the entire amount of attorneys' fees sought. As explained above, plaintiffs did emerge with a key victory: they now have a firm deadline for completion of the budget tool in hand. This justifies a full fee award.

## 4.  The Motion to Strike

Finally, the Court will moot defendants' motion to strike. In that motion, defendants seized on an error in two of the attorney declarations filed in support plaintiffs' fee motion. Those declarations failed to include the critical boilerplate phrase, "I hereby swear under penalty of perjury" that the statements herein are true. The defendants capitalized on that omission, using it as the basis for a motion to strike plaintiffs' entire fee motion.

Defendants are commended for their attention to detail. But why not just

pick up the phone or dash off an email upon discovering the error? The end result would be the same: plaintiffs' counsel would have corrected the erroneous filings, and the parties could then return their focus to the substantive issues. Instead, the Court ended up slogging through a dozen or so pages of briefing on the motion to strike. And it was all for naught: upon learning of the error, the attorneys filed corrected declarations, explaining that the omission was an oversight.

To be sure, defendants had every right to make sure counsel submitted declarations under penalty of perjury. But the way to handle that sort of issue is simple: reach out to counsel, point out the error, and request sworn declarations. If plaintiffs' counsel had failed to correct the error, *then* defendants could have argued for a reduction in fees, based on the deficient attorney declarations. As matters stand, though, the motion to strike was unnecessary. The Court will moot the motion and remind counsel that Rule 1 – "that first and greatest of the Rules"[4] – obligates the "court *and the parties*" to construe the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added).

---

[4] *Woodham v. Am. Cystoscope Co*., 335 F.2d 551, 557 (5th Cir. 1964) (Wisdom, J.).

## ORDER

**IT IS ORDERED that:**

1.     Plaintiffs' Motion for Fees and Costs (Dkt. 433) is **GRANTED**.

       Plaintiffs are awarded $115,380 in attorneys' fees.

2.     Defendants' Motion for Attorney Fees (Dkt. 435) is **DENIED.**

3.     Defendants' Motion to Strike (Dkt. 439) is **DEEMED MOOT.**

DATED: August 17, 2021

_____
B. Lynn Winmill
United States District Judge