Richard Eppink
reppink@acluidaho.org
Idaho State Bar no. 7503
Aadika Singh (*admitted pro hac vice*)
asingh@acluidaho.org
**AMERICAN CIVIL LIBERTIES UNION
OF IDAHO FOUNDATION**
P.O. Box 1897
Boise, Idaho  83701
(208) 344-9750 ext. 1202

James M. Piotrowski
Marty Durand
**PIOTROWSKI DURAND, PLLC**
P.O. Box 2864
1020 W. Main, Suite 440
Boise, Idaho  83701
(208) 331-9200
(208) 331-9201 (fax)

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare, *et al.*<br><br>　　　　　　　Defendants. | Case No. 1:12-cv-00022-BLW<br>(lead case)<br><br>**PLAINTIFFS' RESPONSE TO AAIDD'S MAY 5, 2022, SUPPLEMENTAL NOTICE (DKT. 486)** |

One of the contractors helping implement the new budgeting system required by the Class Action Settlement Agreement (CASA) in this case is AAIDD (American Association on Intellectual and Developmental Disabilities). AAIDD filed a Supplemental Notice (Dkt. 486) earlier today regarding one of the three issues for hearing tomorrow in this case: whether IDHW must produce to class counsel the contract regarding the assessment tool (known as the SIS) that drives the new budget system under the CASA's monitoring provisions.

AAIDD's filing (just like IDHW's briefs) fails to identify any reason why Defendants and their counsel should not have to produce the Idaho contract regarding the SIS tool that drives

1

the new budget system. The Settlement Agreement is clear that IDHW, "including its DDS program assessment and training contractors . . . **shall produce** any records . . . reasonably requested by class counsel," and shall do so "through Department's counsel . . . within 30 days, at no cost to Plaintiffs or class counsel." (CASA § V.J.1 (Dkt. 306-1) (emphasis added).)

Neither AAIDD nor IDHW dispute that there is a contract and that class counsel requested it. Though AAIDD objects to IDHW disclosing the contract to Plaintiffs, AAIDD offers only conclusory, Chicken Little pronouncements in support of its objection. Its assertions not only lack evidence, they are easily refuted by anyone with a web browser.[1]

With just Google, anyone can find the contract with AAIDD for the work to implement the SIS assessment in Michigan's Medicaid program.[2] (2d Decl. Eppink ex. A.) A contract by which AAIDD helped roll out the SIS for Oregon's Medicaid program is available from Oregon's online public database of government contracts.[3] (*Id.* ex. B.) Anyone can access these contracts, which include unredacted pricing information. (*Id.* ex. A at 45–52, ex. B at 16–19.)

The terms of these contracts demonstrate why it is essential for not just class counsel, but class members and their suitable representatives as well, to have access to the Idaho contract. The Michigan contract required AAIDD to evaluate and report on the effectiveness of both assessor training and the implementation of the SIS assessment process generally. (*Id.* ex. A at

---

[1] AAIDD has proposed to produce the contract for class counsel's eyes only, but in its filing as well as in negotiations AAIDD has failed to provide any evidence or argument, beyond conclusory assertions, to demonstrate either that its contract concerning Idaho's public Medicaid program is protected from disclosure or that AAIDD would suffer any actual harm if it were disclosed. During those negotiations, class counsel also urged AAIDD (so far unsuccessfully) to abandon its paternalistic attitudes toward people with developmental and intellectual disabilities that withhold from them information they need to be well-informed about and to fully participate as stakeholders in the public programs that they rely on for medically necessary care.

[2] https://www.michigan.gov/documents/micontractconnect/391B4300007_463037_7.pdf

[3] https://orpin.oregon.gov/open.dll/welcome

9.) AAIDD had to produce multiple reports to "demonstrate inter-rater reliability of trainers and the overall fidelity of the assessment model being used." (*Id.*) This responsibility to demonstrate inter-rater reliability is especially critical for the new Idaho system: HSRI, the consultant that designed that new system, emphasized in its final report about the Idaho system that "[e]xtensive training is required for assessors to promote the interrater reliability and reliability over time of the SIS-A." HSRI, *Resource Allocation Model Final Report* 28 (Jan. 31, 2022), https://publicdocuments.dhw.idaho.gov/WebLink/DocView.aspx?id=21240&dbid=0&repo=PUBLIC-DOCUMENTS. HSRI has repeatedly stressed this, stating in an earlier report that "the importance of ongoing quality assurance processes cannot be overstated when the SIS-A is being used to assign support levels and budgets." HSRI, *Pre-Implementation Review Findings* 55 (July 2021), https://publicdocuments.dhw.idaho.gov/WebLink/DocView.aspx?id=19317&dbid=0&repo=PUBLIC-DOCUMENTS. It went on to explicitly note that "[t]he American Association on Intellectual and Developmental Disabilities (AAIDD), who developed the SIS-A, provides very specific guidance for ongoing training, the importance of conducting assessments on a regular basis, and completing quality assurance processes such as ongoing interrater reliability testing to support consistency across reviewers," and recommended "that DHW work closely with their IAP to ensure AAIDD recommended ongoing quality assurance processes are being adhered to." *Id.*

In addition to requiring regular reporting on interrater reliability in the Michigan system, the Michigan contract also required AAIDD to issue quality reports on assessment completeness and error identification, and implement an "Interviewer Reliability Qualification Review" system (IRQR) to track training history, patterns in assessment records, and score discrepancies for individual assessors. (2d Decl. Eppink ex. A at 10.) Additional "Assessment Reports" had to

provide "evidence of model fidelity" and identify trends in individuals' support and service needs as well as in assessor practices. (*Id.* ex. A at 12.)

The Oregon contract likewise required AAIDD to conduct reliability and quality reviews (IRQRs) on new assessors and repeat them annually (*id.* ex. B at 13), and to train supervisory staff to conduct "Reliability Checks" on the SIS assessments (*id.* ex. B at 7). The Oregon contract also had AAIDD develop an apparently less rigorous alternative to the standard IRQR for assessors, for use in some instances. (*Id.* ex. B at 14.) The Oregon contract additionally called for modifications to the standard SIS system to collect additional data, and required AAIDD to provide updates to Oregon assessors when aspects of the SIS changed. (*Id.* ex. B at 12, 15.)

Access to the Idaho contract is essential both for class counsel as well as class members and their suitable representatives. For starters, the Idaho contract may or may not include reliability and quality monitoring provisions like those in the Oregon and Michigan contracts. If it does, the contract may set out what reports and other records will be generated as part of that monitoring. Those reports and records will be indispensable to monitoring the validity of the new budgeting system by class counsel and class members alike—but neither can know what records might exist without access to the contract. Knowing which reports and records about assessment and assessor reliability and quality are generated in Idaho will also be critical for individual class members and their suitable representatives during administrative appeals. They can both request those reports while preparing for their administrative hearings (for example, IRQR reports for the assessor who conducted their assessment) and review the contract itself to prepare and conduct cross-examination of witnesses from IDHW, Liberty, and AAIDD as they probe whether there could have been errors in their assessment results.

Or, if the Idaho contract does not contain reliability and quality monitoring provisions, the new system may not be valid at all, especially in light of HSRI's repeated emphasis on the importance of quality assurance and inter-rater reliability for the SIS assessment. If IDHW is neglecting inter-rater reliability—which measures whether different assessors are rating like individuals in the same way—then individual class members and their suitable representatives can challenge their assessment results in administrative hearings and Administrative Procedure Act proceedings, because lack of interrater reliability would demonstrate that the budgeting process is unconstitutional, arbitrary, and capricious. Indeed, it is likely that the *K.W.* class members—whose lives are assessed by the SIS and whose fates are determined by it—are third party beneficiaries of any Idaho contract to implement the SIS. *See Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 464, 583 P.2d 997, 999 (1978) ("[A] third party may enforce a contract if he can show he is a member of a limited class for whose benefit it was made."); *Headwaters Construction Co. v. National City Mortgage Co.*, 720 F. Supp. 2d 1182, 1190 (D. Idaho 2010) (summarizing Idaho test for determining third-party beneficiaries to a contract).

Furthermore, the Michigan contract also expressly provides that all the information AAIDD provided in its contract proposal was subject to the Michigan Freedom of Information Act (*id.* ex. A at 17), and that the State of Michigan owns all of AAIDD's work product, including copyrights and proprietary rights. (*id.* ex. A at 41.) Under the Oregon contract, AAIDD's work product became the exclusive property of the Oregon Department of Human Services (DHS), with AAIDD irrevocably assigning its intellectual property to DHS. (*Id.* ex. B at 25–26.) And as to even AAIDD's preexisting intellectual property—expressly including copyrighted and proprietary SIS materials —AAIDD licensed DHS to reproduce and distribute copies of all of it, and authorized others to do the same on DHS's behalf. (*Id.* ex. B at 25–26, 46.)

It is entirely possible the Idaho contract contains similar provisions, potentially belying the entire objection to production. Even if it does not, another contract that class counsel recently obtained—this one via the CASA's monitoring provisions—is IDHW's contract with Liberty Healthcare Corporation. (2d Decl. Eppink ex. C.) It is Liberty's staff who are being trained by AAIDD to conduct SIS assessments of *K.W.* class members. According to IDHW and AAIDD, the direct contractual relationship in the agreement for implementing the SIS in Idaho is between Liberty and AAIDD (although IDHW, like the *K.W.* class members, is probably a third-party beneficiary of it as well). The Department's contract with Liberty makes clear that proprietary information that Liberty collects as part of its work "shall belong solely to the State." (2d Decl. Eppink ex. C at 13 (KW_monitoring_0005581), § 25.) Even if any of the contents of the Idaho contract to implement the SIS, or other information that Liberty has obtained from AAIDD as part of its contractual assessment work, were actually proprietary, that information is now IDHW's property.[4]

The Court should enforce CASA § V.J.1 by ordering Defendants and their attorneys, contractors, agents, and others in active concert or participation with them to produce to class counsel all contracts or other records reflecting agreements with AAIDD in any way relating to the Idaho Medicaid program.

Respectfully submitted,

| ACLU OF IDAHO FOUNDATION | PIOTROWSKI DURAND, PLLC |
|---|---|
| /s/ Richard Eppink<br>/s/ Aadika Singh | /s/ James Piotrowski<br>/s/ Marty Durand |

Attorneys for Plaintiffs

---

[4] IDHW has not raised any objection of its own to producing the contract. IDHW's counsel have expressed that IDHW desires transparency and merely wishes to respect AAIDD's objections, having none of its own.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of May, 2022, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Brian Church
brian.church@ag.idaho.gov

Steven Olsen
steven.olsen@ag.idaho.gov

Scott Zanzig
scott.zanzig@ag.idaho.gov

*Attorneys for Defendants*

I HEREBY FURTHER CERTIFY that on the 5th day of May, 2022, I emailed the foregoing to the following counsel:

J. Will Varin
willvarin@varinthomas.com

Dorothy Deng
DDeng@wtplaw.com

DATED this 5th day of May, 2022.

/s/ Richard Eppink