RAÚL R. LABRADOR
ATTORNEY GENERAL

Lincoln Davis Wilson, ISB # 11860
Chief of Civil Litigation & Constitutional Defense

Brian V. Church, ISB # 9391
brian.church@ag.idaho.gov
Alan W. Foutz, ISB #11533
alan.foutz@ag.idaho.gov
Deputy Attorneys General
514 W. Jefferson Street, 3rd Floor
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| K.W., by his next friend D.W, *et al.*, | ) Case No. 1:12-cv-00022-BLW |
| | ) (lead case) |
| Plaintiffs, | ) |
| vs. | ) Case No. 3:12-cv-00058-BLW |
| | ) |
| RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare, *et al.*, | ) **MEMORANDUM IN SUPPORT OF IDHW'S MOTION TO PRECLUDE DISSEMINATION OF THE SIS-A USER'S MANUAL TO CLASS MEMBERS** |
| Defendants. | ) |

## INTRODUCTION

Since this action was settled in 2016, the Idaho Department of Health & Welfare has been working to complete its key obligation under the settlement to implement a new assessment tool, SIS-A, a proprietary tool developed by the American

Association on Intellectual and Developmental Disabilities ("AAIDD"). To perform that aspect of the agreement, the Department overhauled the manner by which it determines the budgets for participants in the adult developmental disability program and developed a new Budget Notice, attached to this memorandum as Exhibit A. The Department contends that this notice, which it has shared with class counsel, is fully compliant with this Court's instructions on what the Budget Notice must include to satisfy the demands of due process.

But class counsel's litigation demands threaten to undermine all of the progress the Department has achieved in developing this notice. Class counsel insists that the Department make AAIDD's User Manual for SIS-A available to class members. That demand is completely unprecedented—26 other states and provinces use SIS-A, and not one of them provides beneficiaries with access to the User's Manual. In fact, the User's Manual is a proprietary product developed by AAIDD, which forbids broad dissemination of the manual. And preventing dissemination of the manual is so important to AAIDD that the risk of its release in this case has led AAIDD to refuse to even give the most updated version of the manual to the Department. Even further, AAIDD, seeing the risk of its proprietary product being disclosed, has stated that it will terminate its contract with the Department entirely by ***April 30, 2023*** if class counsel continues to demand the User Manual for class members. AAIDD will not even provide Idaho with the updated SIS-A until this issue is resolved.

If that happens, the entire process of this settlement will have to start over. The Department's budget notice will be useless, because it will employ a tool the Department is not authorized to use. And there is no basis in law or in the record for class counsel to demand access to the User Manual as a proprietary tool of AAIDD. The budget notice as drafted complies with all aspects of this Court's guidance, and whatever notice due process requires, it does not entitle class members access to proprietary material authored by a third party. Nor is AAIDD required to do business with the Department on those terms.

The Department has worked for seven years to implement this settlement, but its efforts will be for naught if AAIDD pulls up stakes. Lest those efforts be sent back to square one, this Court should order that the SIS-A User Manual shall not be disseminated or made generally available to class members.

## BACKGROUND

### I.  The SIS-A and its user manual.

In 2017, after this action had settled, the Department chose the SIS-A as the tool it would use to assess the needs of Medicaid eligible adults. Class Counsel and related Stakeholders were involved in and gave their support to this decision. Indeed, the SIS-A is currently used in similar applications by 26 different states and Canadian provinces. *See*, AAIDD website: https://www.aaidd.org/sis/states-using-sis. The Department's provider, Liberty, accordingly contracted with AAIDD to provide the SIS-A and its User Manual to the Department in order to implement this settlement.

The without-cause termination date for that contract is April 30, 2023. Declaration of Alan Foutz ("Foutz Dec."), ¶ 9.

The SIS-A is a proprietary tool of the AAIDD. It is designed to be administered by Independent Assessment Providers ("IAPs") under the instructions provided by the SIS-A User Manual, which is also proprietary material developed by AAIDD. *See* Foutz Dec., Exhibit A. Retaining the SIS-A User Manual as proprietary material is essential, both to the validity of results under the SIS-A assessment and to AAIDD's business model. As to the first, because the SIS-A is a standardized assessment, its results would be rendered invalid if the protocol used to administer it were publicly available to the participants receiving the assessment. Foutz Dec., Exhibit A. And as to the second, because licensing the SIS-A and its User Manual is the primary revenue source of AAIDD, requiring the User Manual to be made generally available to participants free of charge would cripple AAIDD's business model. Foutz Dec., Exhibit A.

## II.   Using the SIS-A and its user manual.

The Department has prepared a budget notice that outlines the process by which the SIS-A will be administered to participants. As dictated by the SIS-A User Manual, the IAP and the participants engage in a semi-structured interview to discuss the type and intensity of supports that the participant will need to be successful in 49 separate activities (or "items") that are divided into different categories (or "subscales") that are examined by the SIS-A. (Declaration of Kyle Hildreth "Hildreth Dec.", ¶ 4.)

During this interview, 3 separate "ratings" will be given for each of these 49 items. The first rating looks at the *type* of support the participant would need to do that activity either on their own or with assistance. The second rating looks at the *frequency* of the support needed for the activity. The third rating indicates how much cumulative time would be needed to provide support within a typical 24 hour day. (Hildreth Dec., ¶ 5.)

In order to facilitate the discussion between respondents and the IAP, the respondents are given a copy of the standards that will be applied to each of the ratings. (Hildreth Dec., ¶ 9.) A true and correct copy of the standards is attached as Exhibit A to the Declaration of Kyle Hildreth.

IAPs assign the rating that respondents agree represents the most accurate assessment of needs for each item. IAPs do not assign ratings on their own or independent of the information respondents provide, although IAPs are expected to consider what they themselves observe through any interaction with the participant, and to discuss those observations with respondents. IAPs are trained to obtain an agreed-upon rating for each item before moving on to the next item. (Hildreth Dec., ¶ 6.)

In the extremely rare instance where the respondents are simply unable to agree on the appropriate rating, the IAP will make note in the online response form, which notes will appear on the Family Friendly Report ("FFR") that shows participants all the ratings given for each item of the SIS-A. The FFR will be included as part of Attachment 2 of the Notice. A Sample Copy of the FFR is attached to this memorandum as Exhibit B. If no such notes appear on the Family Friendly Report,

it is because the respondents agreed that the recorded rating was appropriate. (Hildreth Dec., ¶ 7.)

The total of the ratings given in all portions of Section 2 of the SIS-A make up the participant's "raw score." (Hildreth Dec., ¶ 8.) As set forth in the proposed notice, a participant's raw score is converted to a "standard score," which is used to place participants in a "support level" that reflects their supports needs. Each support level will have a set of services, called a "service mix" that will be available to participants. Declaration of Alena Vazquez ("Vazquez Dec."), ¶ 7.)

The budget participants will have access to is calculated by multiplying the amount of the service (usually the number of hours per year the participant will need the service) by the applicable rate schedule and adding the cost of all those services together for each level by living setting. These model mixes are not prescriptive, meaning that participants have the freedom to use the budget that is determined for whatever combination of services within the array they determine will best meet their needs via the person-centered planning process. (Vazquez Dec., ¶ 8.)

### III. Class counsel's demands for the SIS-A user manual.

Since late 2021, class counsel has requested that class members be given unrestricted access to the SIS-A User's Manual. When the Department has raised the issue with AAIDD, it has consistently and adamantly opposed this request. As outlined above, AAIDD objects to production of the User's Manual because doing so "would be counterproductive to all users of the SIS-A" and would lead to the invalidation of the tool. Foutz Dec., Exhibit A. The SIS-A User Manual is not made

generally available to participants in any of the 26 other jurisdictions where it is used. Foutz Dec., ¶ 5. In paragraph 3 of the email attached as Exhibit C to the Foutz Declaration, counsel for AAIDD plainly states, "AAIDD does not have arrangements in other jurisdictions that make the User's manual available to SIS participants (other than the authorized assessors). Counsel for AAIDD also states on page 3 of the letter attached to Foutz Declaration as Exhibit A, "[f]urthermore, dissemination of these documents will likely lead to AAIDD closing its doors because the SIS-A represents the majority of AAIDD's revenue, and an invalidated tool will be of no value to the public." Foutz Dec., Exhibit A. AAIDD requested that it be given "written assurance (e.g. through a protective order or NDA; with input from AAIDD) to protect AAIDD's proprietary information from being disclosed to class counsel." Foutz Dec., ¶ 4.

The Department attempted to explain these matters to class counsel and to reach agreement. Class counsel rebuffed those requests. Counsel for the Department met and conferred with class counsel on January 24, 2023, and informed class counsel that making the User's Manual available to any participant who wants it will immediately cause AAIDD to terminate its contract with Liberty Healthcare and thereby terminate the State's licenses to use the SIS-A. Foutz Dec., ¶ 6. Again, after the most recent status conference with the Court on March 2, 2023, the Department conferred with class counsel to see whether they would relent and avoid the need for this emergency resolution. To date, counsel for the Department has not been informed of any change in Plaintiffs' position regarding the necessity of having access to the User's

Manual or regarding Plaintiffs' intent to oppose the Department's request to brief these issues in an expedited manner.  Foutz Dec., ¶ 7.

On February 16, 2023, AAIDD indicated it may terminate its contract with the Department and leave the state.  It refused to furnish the latest version of the User Manual to the Department and explained that "AAIDD's preference is to wait to see what the pending litigation outcome will be before we begin discussing and sharing SIS-A 2nd Edition materials."  Foutz Dec., ¶ 8.  So, if the Department cannot provide AAIDD with assurance that the User's Manual will not be generally available for participants, AAIDD will cancel the contract and the Department will not be able to use the SIS-A tool around which this entire settlement has been based.

If that happens, it will mean years of work to implement the settlement entered in 2016 will be wasted.  If the Department cannot use the SIS-A, it will necessarily have to continue assessing participants' supports needs using the old assessment tool—the Scales of Independent Behavior–Revised (SIB-R)—which is no longer supported by its publisher and to which class counsel objects.  Or the Department can return to a "home-grown" budget calculation tool using information from the now obsolete SIB-R, which is what gave rise to this litigation in the first place.  To avoid the devastating loss of the investment of energy, time, and money by the Court and the Department in implementing the SIS-A, the Department now moves for an order that the User Manual shall not be made publicly available to participants.

/ / /

## ARGUMENT

Class members are not entitled to receive a copy of the SIS-A User's Manual. This is so for three reasons. First, no other jurisdiction using the SIS-A has required that participants be given unrestricted access to the User's Manual, and doing so would undermine its purpose as a standardized assessment. Second, there is no basis in due process for the claim that class members are entitled to receive the User Manual. And third, there is no need for the User Manual to be disclosed because the Department's proposed Budget Notice attached hereto as Exhibit A contains all information a participant needs without providing the User Manual. The Court should therefore rule that class member participants are not entitled to receive the User Manual.

**I.     Disclosure of the user manual would undermine the SIS-A.**

Disseminating the User Manual to class members would undermine the purposes of the SIS-A. The SIS-A is being used in 26 different states and Canadian provinces and has had its psychometric properties documented in peer reviewed journals around the world. *See* Vazquez Dec., Exhibit A, pages 27 – 28. In none of those jurisdictions does AAIDD make the User's Manual available to anyone other than qualified assessors for the purpose of conducting SIS-A assessment. Declaration of Alan W. Foutz ("Foutz Dec."), at ¶ 5. And none of those jurisdictions has determined that participants' lack of access to the User's Manual constitutes a problem of any kind.

The manual needs to be kept confidential to preserve the SIS-A's status as a standardized assessment. Section 2 of the SIS-A is the section that is used to determine the "support level" of Adult DD participants. For AAIDD to accurately state that the SIS-A is a standardized test, AAIDD must ensure that it is being administered in a "standardized" manner across all jurisdictions that are using it. Toward that end and "[t]o assure that SIS-A assessments provide reliable measures of support needs, prospective assessors must complete and pass a standardized training protocol developed and copyrighted by AAIDD." Maharaj & Nygren (2022). From Face-to-Face to Virtual Instruction: Developing Competencies to Administer a Standardized Assessment During COVID-19. *Professional Development: The International Journal of Continuing Social Work Education*, (Vol 25, No. 2), retrieved from www.profdevjournal.org.

Although accommodations can be made to the process of administering the SIS-A, great effort is taken by AAIDD to ensure the tool is administered in a uniform and reliable manner. AAIDD assessors go through a multi-day training and complete inter-rater reliability testing before they are approved to administer this tool. Assessors are then periodically recertified to ensure they continue to administer the assessment as required. Allowing individuals receiving services and their families to have access to the User's Manual, which was developed and intended for use by the assessor to support their ability to complete the assessment as instructed, is a large deviation from standard practice. The HSRI consultant with whom the Department

is working on this matter is unaware of any other jurisdiction where this has been requested or occurs. (Vazquez Dec. at ¶ 5.)

Maintaining the proprietary status of the User Manual is also essential to AAIDD's business model. Counsel for AAIDD prepared a letter that addresses class counsel's request for several documents, including the User's Manual:

> AAIDD has spent significant resources in developing, validating, and supporting the standardized use of the SIS-A tool, which has become one of AAIDD's flagship proprietary products. As a nonprofit organization that relies on the tool for the majority of its revenue, the invalidation of the SIS-A would devastate AAIDD's financial fitness and would likely mark the end of AAIDD.'

Foutz Dec., Exhibit A. Thus, to require the User Manual to be made available to participants would cause AAIDD to exercise its contractual right to terminate its agreement and would foreclose any further access by the Department to the SIS-A. Foutz Dec., Exhibits C and D.

## II. Due process does not require disseminating the notice to class members.

There is no due process right for participants to have generalized access to the User Manual. The Department has been unable to find any authority—and class counsel has cited none—for the proposition that if an administrative agency has in its possession a particular document that someone appealing a decision of that agency does not have, then that alone is sufficient to constitute a violation of the appellant's due process rights. And the Court's guidance on due process would not require making the User Manual available either. To the contrary, the Department's draft

Budget Notice provided to class counsel gives all of the information needed to satisfy due process, and then some.

During the course of this litigation, this Court has articulated what the Department's notices must include in order to satisfy due process:

> Medicaid requires that the IDHW notices "must contain . . . [t]he reasons for the intended action." See 42 C.F.R. § 431.210(b). The notices must "detail[] the reasons for a proposed termination" sufficiently enough for a recipient to challenge both the application of the law to their factual circumstances and the "factual premises" of the state's action. *Goldberg v. Kelly*, 397 U.S. 254, 267–268 (1970). The explanation in the notice itself must be more than a "general explanation" or "conclusory statement," and must provide at least "a brief statement of [the decision's] factual underpinnings." *Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992). In other words, the law requires an explanation for any change. The participant is entitled to know why her budget was changed so she can determine whether to challenge the change. Goldberg recognized that without such an explanation, the right to challenge the change is substantially impaired, if not meaningless.

(Dkt. No. 66, p. 8.)

The Court's explication of this standard focuses on participants understanding the factual basis for the Department's decision to allow participants to make an informed decision about appeal. But nowhere has the Court endorsed the expansive conception of due process proffered by class counsel, which would require not only disclosure of the factual basis, but a step-by-step accounting of the proprietary methodology the Department uses to make that decision. Protecting the confidentiality of those proprietary materials is so important that, even though they are used by government agencies, public records laws would insulate them from public disclosure due to competitive harm. *See* Idaho Code § 74-107(1); 5 U.S.C. § 552(b)(4). Plainly,

due process does not require the Court to air proprietary materials that those sunshine laws wisely conceal.

### III. The proposed notice provides all information to satisfy due process without giving access to the user's manual.

The lack of any due process right to the User Manual is even more clear because all information that this Court has previously stated must be included in a constitutionally adequate notice (and then some) has now been included in the Department's proposed budget notice.  While the Court need not rule now on the sufficiency of that notice, its manifest adequacy makes clear that class counsel's demands to receive the proprietary materials of AAIDD as a matter of due process are without merit.  A summary of the information now contained in the Budget Notice that the Department proposes to send to Adult DD Waiver program participants who have chosen the "Traditional" (as opposed to self-directed) DD services is as follows:

#### A. The Notice provides a description of the budget setting methodology.

The proposed Budget Notice now includes a thorough description of the process by which budgets are calculated.  The centerpiece of the Budget Notice's description of the budget setting methodology is the SISOnline generated Family Friendly Report ("FFR"), which captures and provides participants with every topic and item discussed during the SIS-A assessment, the score or "rating" that the participant was given by his or her respondents on each item in the SIS-A, and the scoring key used to translate the participant's supports needs into the correct rating.  *See*, Family Friendly Report, attached hereto as Exhibit B.

More specifically, the Budget Notice provides the following information:

a.  The participant's supports needs as assessed using the SIS-A.

b.  The process of converting the raw scores provided by the SIS-A into standard scores. The Notice will provide participants with a web address that will contain a document entitled "Your SIS-A Standard Score," a copy of which is attached hereto as Exhibit A to the Declaration of Michael A. Case ("Case Dec."), and will be posted to the Department's My Choice Matters website upon approval by the Court of the Notice that is the subject of this motion. (Notice, Attachment 2.)

c.  The specific services in the "model mix" for each service mix and support level. (Notice, Attachment 3.)

d.  The method used to identify the services included in the model mixes. (Notice, Attachment 3.)

e.  The reimbursement rate for each service in the model mixes. (Notice, Attachment 3.)

f.  The method of multiplying service rates times the number of hours within the model mix, which will produce the budget amount. (Notice, Attachment 3.)

(See, Case Dec., ¶¶ 3a – 3f.)

It is also important to note that a number of services that a participant may obtain under the waiver or 1915(i) state plan are not accounted for within the model mixes. This is by design as this group of "health and safety services" will be made available to any participant who both requests and meets the criteria for that service.

The cost or value of these services will not be deducted from the individual's budget as outlined within the new resource allocation model. (Vazquez Dec., ¶ 9.)

### B. The Notice provides an individualized factual basis for the budget.

Included in each Budget Notice will be a copy of the participant's Vineland functional assessment results (used to determine Medicaid eligibility) and the FFR. The FFR provides individualized results for all the items discussed and responded to during the assessment process. (Case Dec., ¶ 4.)

If the participant disagrees with his or her budget based on grounds that the results did not reflect the participant's actual support needs, the individualized fact findings in the FFR (the ratings given by and agreed to by respondents) regarding the type, frequency, and cumulative time needed to provide support are provided to participants in order to allow the participant to identify the error.

### C. The Notice provides an individualized explanation of budget changes.

The Notice provides an individualized explanation of budget changes in two separate sections. First, a section entitled "How SIS-A Budgets Differ From SIB-R Budgets" will be sent to participants who are receiving their first budget notice under the new budget model. (See, Notice, Attachment 2.) This section gives a plain language description of how the new budget model differs from the old budget model, and how the participant's budget is now being calculated. This attachment will eventually become obsolete. (Case Dec., ¶ 5.)

The Notice also contains a section entitled "New Budget Change" for those whose budget notice is subsequent to having already received a budget calculated under the new model. The "New Budget Change" section provides the following specific information:

a. Clarification of what change occurred that resulted in the budget change, such as changes to SIS-A responses, changes to verification results, changes to service mix choices, or changes to model mixes;

b. A comparison of the changes to SIS-A responses, if applicable, including the question number, a summary of the question, the current and previous responses, and an explanation for the change (i.e., an agreed upon by the respondents, an observation made by the assessor, or something verified by another method);

c. A description of other reasons for the budget change outside of any of the categories listed, if applicable;

d. A description of how the identified changes impacted the overall SIS-A standard score;

e. A description of how and why the Verification Review Team came to a different decision regarding extraordinary medical or behavioral supports than last time, if applicable, including a list of documents and other information reviewed as part of the verification review process; and

f. Changes to the selected Service Mix.

Case Dec., ¶¶ 6 – 6f.

The information provided in the "New Budget Change" section is sufficient to satisfy the requirement that notices must provide a participant with the opportunity to understand the factual premise for changes to his or her budget (Dkt. No. 130 at 20-25). This section also tells the participant whether the assessor was relying "entirely on the comments of another (or documents of some sort) rather than on her own observations" (Dkt. No. 270, p. 27-28).

### D. The Notice provides a neutral description of appeal rights.

Attachment 5 to the proposed notice contains all the information a participant will need to pursue an appeal. Case Dec. ¶ 7.

### CONCLUSION

For the foregoing reasons, the Court should rule that participants are not entitled to the User's Manual.

Dated: March 7, 2023.

        STATE OF IDAHO
        OFFICE OF THE ATTORNEY GENERAL

By: /s/ *Alan W. Foutz*
    LINCOLN DAVIS WILSON
    ALAN W. FOUTZ
    BRIAN V. CHURCH
    Deputy Attorneys General

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on March 7, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Richard Alan Eppink<br>reppink@acluidaho.org | James Piotrowski<br>james@idunionlaw.com |
| Marty Durand<br>marty@idunionlaw.com | |

             /s/ *Alan W. Foutz*
             ALAN W. FOUTZ
             Deputy Attorney General