UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W., *et al.*,<br><br>              Plaintiffs,<br>     v.<br><br>RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare, *et al.*,<br><br>              Defendants. | Case No.  1:12-cv-00022-BLW-CWD<br><br>**MEMORANDUM DECISION AND ORDER (DKT. 577)** |

**INTRODUCTION**

Currently pending before the Court is Defendants' Motion to Preclude Dissemination of the SIS-A User's Manual to Class Members.  (Dkt. 539.)[1]  The motion is before the Court pursuant to a dispute resolution provision in the Class Action Settlement Agreement (CASA), [2] approved by the Court on January 12, 2017.  (Dkts. 306-1, 331.)  The motion is not a discovery dispute, as discovery in this litigation has

---

[1] The motion was initially referred to the undersigned on March 9, 2023, and the Court held oral argument on the motion on April 6, 2023.  (Dkts. 542, 565.)  On April 27, 2023, Defendants filed a notice of withdrawal.  (Dkt. 573.)  As a result, the Court deemed the motion moot and terminated the motion, without prejudice.  (Dkt. 574.)  On May 30, 2023, Defendants requested to reinstate the motion.  (Dkt. 577.)  On May 31, 2023, the motion was again referred to the undersigned.  (Dkt. 578.)  With no objection to reinstatement of the motion from Plaintiffs, the Court held oral argument for a second time on June 13, 2023.  (Dkt. 584.)

[2] Pursuant to CASA, class counsel and Defendants' counsel must meet and confer to discuss and resolve any disputes regarding the terms and conditions of the Agreement.  (Dkt. 306-1 at 32.)  If the parties are unable to resolve the dispute within fourteen days, either party may file a motion with the Court to address the issue or dispute.  (Dkt. 306-1 at 32.)

**MEMORANDUM DECISION AND ORDER - 1**

closed and the Court denied the parties' request for limited reopening of discovery shortly before the motion was filed.  (Dkt. 534.)  Defendants (the "Department") seek an order from the Court precluding the dissemination of specific material—a User's Manual—associated with the new resource allocation model and Budget Tool the Department has been planning to implement for calculating budgets for class members.

At the outset, the Defendants' motion simply seeks to preclude dissemination of the User's Manual to class members.  A strict reading of the motion suggests, without specificity, that they seek a protective order.  To the extent such relief is requested, the Court will deny the motion.

However, in briefing and during oral arguments, the Department provides two reasons for their motion.  First, the Department contends unfettered dissemination of the User's Manual before the new resource allocation model is fully implemented would risk invalidation of the SIS-A Budget Tool and AAIDD terminating its contract with Liberty Healthcare.[3]  Second, the Department contends the User's Manual does not contain information that must be provided to class members (interchangeably, "participants") to satisfy due process for a challenge or appeal of a budget reduction, because all the information necessary to satisfy due process is provided in the Department's proposed Budget Notice.

---

[3] Liberty Healthcare is a vendor of the Department, responsible for administering the SIS-A to Adult DD Waiver participants.  Hildreth Decl. ¶¶ 2-3, (Dkt. 539-13.)

**MEMORANDUM DECISION AND ORDER - 2**

In response, class counsel clarified, during initial oral argument on the motion on April 6, 2023, that they are not requesting unfettered dissemination of the User's Manual to all class members. Instead, they maintain that the User's Manual, or certain information contained within it, should be made available upon request and with acknowledgment of copyright restrictions by any individual class member or participant who receives notice of a budget reduction, to consider when deciding whether and how to challenge or appeal the reduction.

Class counsel already obtained a copy of the User's Manual, and a copy was lodged under seal with the Court for in-camera review.[4] In short, the discrete issue the parties are asking the Court to resolve now is whether information in the SIS-A User's Manual must be made available to class members to afford due process for fully challenging budget reductions. As discussed below, the Court will address this issue, but first will briefly review relevant factual background related to the Court's analysis.

---

[4] As Plaintiffs note, the User's Manual is available for purchase on AAIDD's public website. AAIDD, Bookstore: Supports Intensity Scale—Adult Version (SIS-A) 2nd Edition (last visited Apr. 19, 2023), https://www.aaidd.org/publications/bookstore-home/product-listing/supports-intensity-scaleadult-version-(sis-a-)-2nd-edition, archived at https://perma.cc/6BNM-KTRF. AAIDD imposed a "Purchase Qualifications Policy" expressing certain qualifications for sale, https://www.aaidd.org/publications/bookstore-home/purchase-qualifications-policy, yet its website neither explicitly prevents anyone from buying the manual nor requires purchasers to certify their qualifications. (Dkt. 558 at 19.)

**MEMORANDUM DECISION AND ORDER - 3**

# FACTUAL BACKGROUND[5]

A. **CASA and the SIB-R Budget Tool**

Per CASA,[6] the Court ordered four plans (referred to as the "Court ordered plans") to address the due process concerns identified by the Court and Ninth Circuit in relation to the SIB-R Budget Tool that was utilized around the time this litigation commenced. (Dkt. 306-1 at 3.) Relevant here, one of the four Court ordered plans compels the Department to file "a plan for participants to view all portions of the SIB-R[7] necessary to fully challenge a budget reduction and to present any challenged portion of the SIB-R analysis to a hearing officer or other decision maker during an appeal." (Dkt. 306-1 at 3.) This language directly mirrored that in the Court's March 2016 Memorandum Decision and Order granting in part and denying in part Plaintiffs' Motion for Partial Summary Judgment. (Dkt. 270 at 36.); *See also K.W. v. Armstrong*, 180 F.Supp.3d 703, 724 (D. Idaho 2016).

---

[5] Plaintiffs filed multiple evidentiary objections to Defendants' Motion to Preclude Dissemination of the SIS-A User's Manual including the declarations and exhibits filed with Defendants' motion. (Dkt. 559.) The Court acknowledges that several of Plaintiffs' evidentiary objections are well-founded, considering the absence of testimony from a representative or the like of AAIDD. However, fully considering the evidentiary objections is unnecessary given the Department, not AAIDD, is compelled to create a plan which allows participants to view all the information and materials necessary to fully challenge a budget reduction during an appeal, in accordance with due process. Further, Plaintiffs contend that, if the Court considers the statements or exhibits objected to, Plaintiffs should be permitted further discovery. (Dkt. 559 at 2.) The Court already has denied the parties' request to reopen formal discovery. (Dkt. 534.)

[6] The procedural history following the Court's approval of CASA on January 12, 2017, is well known to the parties and not repeated here at length.

[7] At the time CASA was approved, the Scales of Independent Behavior-Revised (SIB-R) was the Budget Tool utilized by the Department to calculate class members' budgets based on their assessed needs. *See* CASA at § III.A.3, (Dkts. 306-1 at 4, 539-2 at 13.)

**MEMORANDUM DECISION AND ORDER - 4**

To effectuate this Court ordered plan, the parties drafted, agreed upon, and included in Section V.D. of CASA a "Plan for Disclosure of the SIB-R Booklet and Related Material." (Dkt. 306-1 at 23.) This plan provides that, upon request, class members are provided copies of the completed SIB-R booklets and all screenshots of the class member's raw SIB-R ratings as entered into the SIB-R software (aka Budget Tool). (Dkt. 306-1 at 23.) To request this information and material, class members need to complete and sign an acknowledgment form. (Dkt. 306-1 at 24.) The Acknowledgment includes a request section, as well as a warning[8] about copyright restrictions. (Dkt. 306-1, Ex. 3.)

This section of CASA and the Acknowledgment also attends to the direction and guidance in the Court's March 2016 Order regarding concerns raised by the copyright holder of the SIB-R. In addressing those concerns and applying the *Mathews* test, the Court articulated that copyright harm "could be substantially mitigated—and perhaps entirely alleviated—by (1) protecting the SIB-R material in a particular case with a Protective Order; (2) granting access to only those portions necessary for full confrontation—typically, that would be the scoring pages and worksheets concerning the

---

[8] "The copyright law of the United States (title 17, United States Code) governs the making of photocopies or other reproductions of copyrighted material. Under certain conditions specified in the law, the Department is authorized to furnish a photocopy or other reproduction. One of these specific conditions is that the photocopy or reproduction is not to be 'used for any purpose other than private study, scholarship, or research' or other 'fair use' under copyright law. If a user makes a request for, or later uses, a photocopy or reproduction for purposes in excess of 'fair use,' that user may be liable for copyright infringement. For example, the SIB-R Response Booklet(s) can be used to prepare for and assist the Participant during administrative proceedings and litigation, such as an appeal of the Participant's budget." (Dkt. 306-1, Ex. 3.)

**MEMORANDUM DECISION AND ORDER - 5**

age-equivalency and maladaptive behavior sections, and would not necessarily include all the other material." (Dkt. 270 at 24.)

B. **The Department's transition to SIS-A as the new Budget Tool**

Since the parties' initial inclusion of SIB-R as the Budget Tool utilized with the Department's resource allocation model, Liberty Healthcare has contracted with a different vendor, the American Association on Intellectual and Developmental Disabilities (AAIDD), to utilize a software program called the Supports Intensity Scale—Adult Version (SIS-A) for assessing needs of Medicaid eligible adults and calculating their budgets. (Dkt. 539-1 at 1-3.) According to the Department, the SIB-R and the SIS-A are quite different assessment systems, but either can be utilized as a tool for calculating budgets. During oral arguments on the motion, the Department distinguished the SIS-A as a more objective and quantitative tool focusing on assessing individual needs and supports. (Dkt. 539-2 at 13.) Ultimately, the assessment tools cannot be compared because each tool measures different things. Given the different subjects of assessment, the Department notes that the budgets calculated through use of the SIS-A likely will be different from those calculated through use of the SIB-R. (Dkt. 539-2 at 13.)

According to Deputy AG Foutz, the SIS-A is a proprietary software program and budgeting tool (aka "instrument") developed by AAIDD. The SIS-A is designed to be

administered by Independent Assessment Providers (IAPs)[9] pursuant to instructions provided within the User's Manual—considered proprietary material of AAIDD.  *See* Foutz Decl., Ex. A, (Dkt. 539-5.)  To administer the SIS-A, the User's Manual dictates that the IAP and the participant engage in a semi-structured interview to discuss the type and intensity of supports that the participant will need to be successful in forty-nine different items that are divided into three separate sub-scales.  For each item, the SIS-A uses ratings from 0 to 4 to assess the three sub-scales within: (1) the type of support the participant needs, (2) how often the participant needs such support, and (3) how much time is needed in each area within a typical 24-hour day.  During this interview, the participant is given a copy of the standards that will be applied to each of the ratings.  *See* Hildreth Decl. ¶ 9, (Dkts. 539-13, 541.)

    IAPs attempt to assign a rating that each participant agrees represents the most accurate assessment of needs for each item.  IAPs do not assign ratings on their own or independent of the information provided by the participant.  However, IAPs are expected to consider what they observe through their interaction with the participant and to discuss those observations with the participant.  IAPs are trained to obtain an agreed-upon rating for each item before moving onto the next.  *See* Hildreth Decl. ¶ 6, (Dkt. 593-13.)  In the event that the IAP and the participant cannot reach a consensus on the rating for an item, the IAP will make a note in the online response form.

---

[9] IAPs are not employees of the Department, but are associated with Liberty Healthcare, another vendor of the Department.  Hildreth Decl. ¶¶ 2-3, (Dkt. 539-13.)

**MEMORANDUM DECISION AND ORDER - 7**

Rather than using a statistical program with the SIB-R tool to arrive at a budget, the Department plans to calculate budgets with the SIS-A tool by assessing the type and amount of services that participants will likely use based on: (1) the way the participants choose to receive their supports and the type of residential supports they want to receive (also known as their Service Mix); (2) the amount of support they need, as assessed by the SIS-A and the verification process (also known as their Support Level); and (3) a table explaining what services, in what amount, the Department determined they might use (also known as a model mix). (Dkt. 539-2 at 12.) These three items together demonstrate what a participant's budget is and how it was calculated.

With the selection of SIS-A as the new Budget Tool, the Department drafted a new Budget Notice that they propose will be provided to Adult DD Waiver participants who have chosen the traditional DD services. (Dkt. 539-1 at 13.) The proposed Budget Notice includes a description of the process by which budgets are calculated with SIS-A. The Budget Notice specifically addresses: the participant's supports needs as assessed using the SIS-A; the process of converting the raw scores provided by the SIS-A into standard scores; the specific services in the "model mix" for each service mix and support level; the method used to identify the services included in the model mixes; the reimbursement rate for each service in the model mixes; and, the method of multiplying service rates times the number of hours within the model mix, which will produce the budget amount. (*See* Dkt. 539-2.) The Budget Notice also includes a SISOnline-generated Family Friendly Report (FFR), which would provide the participant with every

**MEMORANDUM DECISION AND ORDER - 8**

item discussed during the SIS-A assessment, the raw rating that the participant was given on each item in the SIS-A, and the scoring key used to translate the participant's support needs into the correct raw rating.  (*See* Dkt. 539-3.)

The Department contends that the information they propose would be provided with the Budget Notice is sufficient to satisfy due process requirements for a potential challenge or appeal of a budget reduction by a class member or participant.  However, Plaintiffs argue that the User's Manual contains information relevant and necessary for a participant to decide whether and how to meaningfully challenge a budget reduction. Plaintiffs are not demanding, however, that the User's Manual be provided in advance of the assessment interview with the IAP or with every Budget Notice.  Rather, they contend it must be available—upon request and with signing an Acknowledgment akin to the one that was planned with the SIB-R—for participants who receive a Budget Notice reflecting a reduced budget.[10]  They contend this access is necessary to afford a meaningful opportunity to the participant to decide whether and how to challenge a budget reduction.

C. **Communications between the Department, AAIDD, and Class Counsel**

According to the Department, class counsel requested that class members be given access to the User's Manual beginning in late 2021.  The Department represents that,

---

[10] Plaintiffs suggest other alternative safeguards in their briefing.  (Dkt. 558 at 17, n. 6.)  The Court will address the additional safeguards.  *See infra* p. 19.

**MEMORANDUM DECISION AND ORDER - 9**

each time the request has been raised by the Department with AAIDD, it has been continuously opposed. (Dkt. 539-1 at 6.)[11]

On April 27, 2023, the Department filed a notice of withdrawal of the motion. (Dkt. 573.) Attached to the notice was a letter, dated April 27, 2023, from AAIDD informing Liberty Healthcare that it was exercising its right under its contract with Liberty to give notice of non-renewal. (Dkt. 573-1.) Further, as the letter met the written notice requirement for non-renewal, the term of the contract between AAIDD and Liberty Healthcare expired on June 30, 2023. In Defendants' notice of withdrawal, the Department indicated that, with the termination of the contract between Liberty Healthcare and AAIDD, the SIS-A will no longer be available for use in Idaho. (Dkt. 273 at 2.)

On May 31, 2023, the Department filed its request to reinstate the present motion. (Dkt. 577.) In doing so, the Department represented that its counsel had reached out to AAIDD to inquire about the possibility of AAIDD maintaining its relationship with the Department. (Dkt. 577 at 2.)

---

[11] Counsel for the Department met and conferred with class counsel on January 24, 2023, and informed class counsel that, allowing for dissemination of the User's Manual to any class member or participant who wants it, likely would immediately cause AAIDD to terminate its contract, thereby terminating the Department's licenses to use the SIS-A. Foutz Decl. ¶ 6, (Dkt. 539-4.)
The Department represents, that on May 23, 2023, counsel for AAIDD was "willing to renew/renegotiate the Agreement with Liberty at any time (i.e., after June 30), provided that the SIS-A User's Manual and SIS-A Interview and Profile Form will only be used by trained assessors for the intended purpose determined solely by AAIDD." Foutz Decl. ¶ 3, (Dkt. 577-1.)

**MEMORANDUM DECISION AND ORDER - 10**

During the second oral argument on June 13, 2023, the Court directed the Department to further confer with AAIDD regarding whether dissemination of the SIS-A User's Manual on a limited basis, as proposed by Plaintiffs—after the completion of the assessment; upon receipt of a Budget Notice indicating and explaining a budget reduction; and with the completion of an acknowledgment form by the participant; for the purpose of deciding whether and how to pursue an appeal—would alter AAIDD's position. On July 21, 2023, the Department provided its final status report about its discussions with AAIDD, representing that AAIDD is maintaining its position and is "unwilling to permit the User['s] [M]anual to be provided to program participants under any circumstances." (Dkt. 593 at 3.). (Dkt. 593.)[12]

## DISCUSSION

The dispute between the parties arises from CASA, specifically the condition compelling the Department to develop a "plan for participants to view all portions of the SIB-R necessary to fully challenge a budget reduction and to present any challenged portion of the SIB-R analysis to a hearing officer or other decisionmaker during an appeal." The dispute encompasses two intertwined issues. First, Plaintiffs claim that the Department's request to preclude dissemination of the SIS-A User's Manual to class members unnecessarily delays effectuating CASA. In response, the Department claims

---

[12] The Department requested that the Court delay issuing its present ruling because it would like the opportunity to confer with Plaintiffs about the opportunity for a participant to request reassessment and whether such an opportunity would resolve any due process concerns. (Dkt. 593 at 3-4.) Plaintiffs opposed the request and filed a response to the Department's final status report. (Dkt. 594.) The motion is, therefore, ripe for the Court's determination.

**MEMORANDUM DECISION AND ORDER - 11**

that it cannot advance with SIS-A as the new Budget Tool if the User's Manual must be disseminated to class members due to AAIDD's continued opposition to the same. (Dkt. 539-1 at 7-8, 11.) Plaintiffs also contend that denying class members access to the User's Manual subverts CASA and will continue to deprive class members of their due process rights. (Dkt. 558 at 21.) Further, although continued delay in effectuating CASA may result from the need to find a more transparent tool, precluding dissemination of the User's Manual may set the parties back to square one—with class members, once again, deprived of transparency in the budget reduction process. (Dkt. 558 at 21.)

Substantively, the question is whether the Department can preclude dissemination of the User's Manual to class members without violating class members' due process rights. The Department argues that, because the proposed Budget Notice provides sufficient information necessary to afford due process, the User's Manual should not be disseminated to the class members. In turn, Plaintiffs contend that dissemination of the User's Manual should not be precluded, because the Department seeks only to overturn the established law of this case. Further, Plaintiffs contend that, even if the law of the case doctrine does not apply, withholding the User's Manual from class members violates their due process rights.

> **Dissemination of the SIS-A User's Manual may be required to ensure due process is afforded to participants, specifically when the participant has the right to appeal a budget reduction.**

Beyond the procedural issue regarding effectuation of CASA, the parties raise the substantive issue of whether access to information in the User's Manual is necessary for

preparing a meaningful challenge to a budget reduction.  Here, the Court finds that the User's Manual, or certain information contained within it, may be necessary to afford due process to a participant during their challenge or appeal of a budget reduction.

As the Ninth Circuit held in this case, the plaintiffs have "a property interest in their benefits," and a reduction in those benefits "deprives them of this property interest." *See K.W. v. Armstrong*, 789 F.3d 962, 973 (9th Cir. 2015).  They are therefore entitled to "such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

The Supreme Court has identified the factors to be considered in determining what process is due where a protected property interest is in jeopardy: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333.

One of those procedural protections is the establishment of clear ascertainable standards that "ensure fairness and… avoid the risk of arbitrary decision making." *Carey v. Quern*, 588 F.2d 230, 232 (7th Cir. 1978).  "This absence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause." *Smith v.*

**MEMORANDUM DECISION AND ORDER - 13**

*Goguen*, 415 U.S. 566, 578 (1974).  Due process requires the Department to "establish written standards and regulations."  *White v. Roughton*, 530 F.2d 750, 754 (7th Cir. 1976).  Specifically, due process requires notice that gives an agency's reason for its action in sufficient detail that the affected party can prepare a responsive defense.  *Barnes v. Healy*, 980 F.2d 572, 579 (9th Cir. 1992); *see also Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970).

The Department contends that, in accordance with the Court's March 2016 Order, all information that the Court has previously stated must be included in a constitutionally adequate notice of a budget reduction will now be included in its proposed Budget Notice.  Therefore, the Department contends class members lack any due process right to the User's Manual.  However, the Department also asserts that the Court need not rule on the sufficiency of the proposed Budget Notice, because the proposed Budget Notice's "manifest adequacy makes clear that class counsel's demands to receive the proprietary materials of AAIDD as a matter of due process are without merit."  (Dkt. 539-1 at 13.)  Specifically, the Department contends that the proposed Budget Notice does not require the Court's approval, because it complies with due process.  (Dkt. 306-1 at 24.) ("When the new resource allocation model is fully implemented, as defined in this Agreement, the Department shall provide class members with written notice that complies with due process.")  But, by asking the Court to decide whether participant access to the User's Manual—or the information contained within it—is necessary to comply with due

**MEMORANDUM DECISION AND ORDER - 14**

process, the Department is attempting to circumvent the preliminary issue of sufficiency of the proposed Budget Notice.

Plaintiffs disagree that the proposed Budget Notice complies with due process. At the outset, Plaintiffs do not address in depth any shortcomings of the information the Department has identified will be provided to participants in the proposed Budget Notice, but simply assert that, without access to the User's Manual, participants will not have the information necessary to decide whether to appeal a budget reduction, and if they do appeal, will not have the necessary information to prepare for the appeal. (Dkt. 558 at 17.) Plaintiffs contend that, because the Court's March 2016 Order controls, the issue of disseminating the User's Manual to class members has already been litigated. Second, Plaintiffs argue that, even if the Court reengages with the due process analysis with specific regard to the User's Manual, the result would be the same—in that, withholding the User's Manual from class members as part of a challenge to a budget reduction violates due process.

Regardless of whether the Department is attempting to relitigate the law of the case—as Plaintiffs argue—the Court's March 2016 Order controls vis-à-vis the approval of CASA and guides the Court's due process analysis here. Ultimately, the completed SIB-R booklets and the User's Manual present different "factual circumstances," but the end goal for the parties is to ensure that a challenge to a budget reduction affords adequate due process to participants.

**MEMORANDUM DECISION AND ORDER - 15**

Akin to the circumstances with the SIB-R booklets, the participants cannot prove errors in the administration of the SIS-A if the Department precludes participant access to the User's Manual.  (*See* Dkt. 270 at 22.)  The holding in *Goldberg* dictates that, when the state proposes to reduce benefits, a participant must have timely and adequate notice that details the reason for the proposed reduction of benefits, as well as "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Goldberg*, 397 U.S. at 268.  These rights are important "[where the participants challenges proposed reductions] as resting on incorrect or misleading factual premises[,] or on misapplication of rules or policies to the facts of particular cases." *Id*.  When government action seriously injures an individual—such as reducing benefits and impinging on a substantial private interest—and the reasonableness of the action depends on a finding of fact, "the evidence used to prove the Government's case must be disclosed to the individual so that [they have] an opportunity to show that it is untrue." *Id*. at 270 (quoting *Greene v. McElroy*, 360 U.S. 474, 496-97 (1959)).

Here, by precluding participant access to the User's Manual upon participants receiving a Budget Notice—thereby triggering their right to appeal a budget reduction or other substantive change—the participants will not have the full context of the evidence used to reduce their budgets.  Without access to the User's Manual, the SIS-A assessment remains a black box for participants, where they see only certain inputs and outputs, but not the internal workings (e.g., the algorithm applied in the SIS-A software).  Therefore, as was the situation without disclosure of the SIB-R booklets, precluding participant

access to the User's Manual prevents the participant from challenging errors or effectively cross-examining IAPs who claim their assessments are accurate.  In essence, it would be impossible for the participant to prove error in the administration of the SIS-A.

With regard to the due process analysis, the Court finds that the SIS-A User's Manual, either in whole or in part, may be required at some point in the resource allocation process— most specifically at the point when the participant receive a notice that triggers their right to appeal a budget reduction or other substantive change. AAIDD's concerns with regard to standardization practices or their proprietary interests may or may not be a legitimate basis for the Department's request to restrict class members' access to the User's Manual. [13]  However, the sensibility in restricting participant access to the User's Manual ends there.  The issue over access to the information in the User's Manual comes to a head at the point in time when a participant decides whether and how to appeal a budget reduction.[14]  Unconditionally precluding

---

[13] This is not the first time that AAIDD's alleged proprietary interest in the SIS-A has been raised by the Department.  In fact, the Court previously ordered that the Department produce unredacted SIS-A contract documents to class counsel over the Department's objection that, if it was forced to produce "proprietary" documents, the Department would potentially lose access to the SIS-A, thereby potentially delaying implementation of the new Budget Tool. (Dkt. 509 at 8.)  The potential loss of access to the SIS-A was beyond the scope of what was before the Court at the time, and the Department was obligated to produce the documents, "come what may." (Dkt. 509 at 8.)  Now, this motion appears to present the precise issue regarding the User's Manual, but as part of the proposed Budget Notice and appeal process.

[14] Upon receipt of the Budget Notice, participants will have the right to appeal the Department's eligibility and budget decisions, specifically a budget reduction. (Dkt. 539-2, Attach. 5.)  The available steps in the Adult DD Program appeals process include: an informal review the Department—either standard or expedited; a fair hearing by a hearing officer; a review by the Director of Health and Welfare; and a request for judicial review by the District Court upon exhaustion of administrative remedies. (Dkt. 539-2, Attach. 5.)

**MEMORANDUM DECISION AND ORDER - 17**

class members' access to information in the User's Manual through the entirety of the resource allocation process, most specifically during the appeals process, defies logic and is antithetical to principles of due process.[15]

Plaintiffs argue, for example, that the User's Manual contains information that may be helpful for the participant to cross-examine IAPs who claim their assessments that lead to a budget reduction are correct. The Court agrees. As Plaintiffs articulated during oral argument on the motion, the User's Manual contains a significant amount of information that may be necessary on appeal to fully challenge a budget reduction, especially in the instance where the participant may need to cross-examine the IAP about their administration of the SIS-A assessment.[16] Further, as the Court has previously found in the context of SIB-R, the Department's ban on the use of SIB-R booklets at administrative appeal hearings prevented the participant from challenging errors or effectively cross-examining IAPs who claimed their assessments are accurate. (Dkt. 270 at 23.) Similarly, a ban on participant access to the User's Manual may prevent the participant from challenging errors or effectively cross-examining IAPs who claim their

---

[15] In their final status report, the Department, in an attempt to quell any due process objections, proposed a right to reassessment with a new IAP as a check to ensure that the assessment is properly conducted in accordance with the User's Manual. (Dkt. 593 at 3-4.) Although this issue is not before the Court at this time, the Court questions whether reassessment would solve, rather than merely postpone, due process concerns.

[16] The User's Manual contains detailed information—such as considerations to be used as examples during the interview between IAPs and participants—about how the IAPS are permitted to assess and score the items within a life activity subscale. For example, in assessing an item such as "interacting with community members," only the User's Manual offers the primary and secondary considerations for IAPs to consider when assessing the supports needed for a participant achieve contemporary community standards and eventually scoring participant for the item.

**MEMORANDUM DECISION AND ORDER - 18**

assessments are accurate. Further, "the very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error." *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995). Thus, the Court will not grant the Department's request to preclude dissemination of the User's Manual.

Consistent with its prior rulings, the Court encourages the parties, with AAIDD, to draft a plan that conditionally allows for the disclosure of the User's Manual, or information in it, when the notice of a budget reduction raises concerns about IAPs and their administration of the SIS-A. If such a plan cannot be agreed upon, the parties have the ability under CASA to draft and agree to alternative procedural safeguards, such as providing participants with independent, trained SIS-A assessors with access to the User's Manual, who can assist participants with challenging their assessment results and testify, if necessary, as proposed by Plaintiffs. (Dkt. 558 at 17, n. 6.)

## CONCLUSION

In light of the foregoing discussion, the Court will deny Defendants' Motion to Preclude the Dissemination of the SIS-A User's Manual. The Court will also find Plaintiffs' Evidentiary Objections to Defendants' Motion to Preclude the Dissemination of the SIS-A User's Manual moot.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion to Preclude Dissemination of the SIS-A User's Manual (Dkt. 577) is DENIED.

2) Plaintiffs' Evidentiary Objections to Defendants' Motion to Preclude the Dissemination of the SIS-A User's Manual (Dkt. 559) is deemed MOOT.

DATED: August 23, 2023

_____
Honorable Candy W. Dale
United States Magistrate Judge