Richard Eppink
reppink@acluidaho.org
Idaho State Bar no. 7503
Dina Flores-Brewer
DfloresBrewer@acluidaho.org
Idaho State Bar no. 6141
**AMERICAN CIVIL LIBERTIES UNION OF IDAHO FOUNDATION**
P.O. Box 1897
Boise, Idaho 83701
(208) 742-6789 ext. 3

Daniel L. Brown
Katherine Anne Boy Skipsey
**SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
Floor 39
New York, NY  10112
(212) 634-3095
*Admitted pro hac vice*

James M. Piotrowski
Marty Durand
**PIOTROWSKI DURAND, PLLC**
P.O. Box 2864
Boise, Idaho 83701
(208) 331-9200
(208) 331-9201 (fax)

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| K.W., by his next friend D.W, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare, *et al.*<br><br>　　　　　　Defendants. | Case No. 1:12-cv-00022-BLW<br>(lead case)<br><br>**DECLARATION OF KATHRYN DURRANT** |

I, Kathryn Durrant declare under penalty of perjury as follows:

1. I am an attorney at DisAbility Rights Idaho ("DRI"). I graduated from J. Reuben Clark law school. Prior to joining DRI I worked for twelve (12) years at the Social Security Office of Hearings and Operations. I have been with DRI since April 2021. I am over the age of eighteen, have personal knowledge of the facts and statements contained in this declaration, and could and would competently testify to these facts stated herein if called as a witness in this matter. I submit this declaration in support of Plaintiffs' Motion for Civil Contempt Remedies.

2. Executive Director of DRI, Amy Cunningham, assigned me to work on the *KW v. Armstrong* lawsuit in July 2021. I have personally worked with individuals who have called DRI requesting help due to lack of services and resources because of inadequate budgets, and I have reviewed court filings in *K.W. v. Armstrong* and attended court hearings in the case.

3. I attend monthly meetings with the Consortium for Idahoans with Disabilities ("CID") as a board member and the Developmental Disability Network Coalition ("DANI"). I have also attended Idaho Department of Health and Welfare ("IDHW") meetings and training where budgets were discussed. I have attended the Joint Legislative Oversight Committee ("JLOC") hearings on the Office of Performance Evaluations ("OPE") report on the Sustainability of Idaho's Direct Care Workforce. I worked with the disability community and other organizations to get this report released when it was held up by the Joint Legislative Committee.

4. DisAbility Rights Idaho is the designated Protection and Advocacy system for the State of Idaho. As a condition of receiving certain federal funds, each state, including Idaho, is required to have a Protection and Advocacy System in effect to protect and

advocate for the rights of individuals with developmental disabilities. 42 USC § 6042(a). DisAbility Rights Idaho is Idaho's designated Protection and Advocacy System. As such, DRI advocates for the rights of Idahoans with Disabilities pursuant to its obligations under federal law.

5. Disability Rights Idaho has followed the *K.W. v. Armstrong* lawsuit from its beginning in 2012. DRI was hopeful for a swift resolution with the Class Action Settlement Agreement reached in September 2016, and approved by the Court in January 2017.

6. Based on the extensive and federally mandated work DRI does with and for Idahoans with developmental disabilities, including class members in this lawsuit, DisAbility Rights believes the appointment of a Special Master, to work with class member's counsel and IDHW, will move issues normally brought before the court to resolution in a timelier manner. A Special Master would supervise those under the order of the court to make sure the court order is being followed.

7. DisAbility Rights Idaho supports a reasonable but swift period of time for the parties to agree upon a special master to oversee settlement implementation. DisAbility Rights Idaho supports class counsel's recommended qualifications and duties for Special Master. If an agreement cannot be reached, each should be permitted to nominate candidates to the Court.

8. The Court's time is valuable. DRI has long believed that a Special Master would move all unresolved matters to swifter conclusions.

9. I have seen, over the past two (2) years, a decline in engagement between class members and the IDHW, such as training classes that do not allow questions and

traveling tours scheduled for across the state being cancelled. This has left class members with many unanswered questions and concerns about the future of their services.

10. Class members continue to remain on an "injunction budget" with no increases since July 1, 2011.

11. Since the Settlement Agreement, class members have suffered from inadequate budgets with the major difficulty being finding adequate direct care workers due to the low wages.

12. The direct care worker crisis prompted the Legislature to request an Office of Performance Evaluation to prepare a report Sustainability of Idaho's Direct Care Workforce. The report was released in March of 2023.

13. I have seen class members in the disability community who rely on direct care settle for low quality services. There is a fear in the disability community that complaints to IDHW, Service Brokers, or Service Providers will cause an individual to be dropped or have budgets lowered if better quality service is requested.

14. Inadequate budgets have caused a trickle-down effect over the years creating larger problems. Each year needed services are dropped by class members as their assigned budget will not allow for the actual cost of the services.

15. Even if a budget is adequate, individuals are having trouble finding someone to hire. Those providing services have been forced out of business as they can no longer sustain a business model where the cost of their services makes the cost or lack of workers prohibitive to continue. Individuals have been turned away from Residential Habilitation and Certified Family Homes, because of lack of staffing. Businesses are

settling for direct care workers with fewer qualifications or keeping poor performing workers as they cannot find workers to hire. Many direct care workers leave because of low pay.

16. Allowing class members to opt-in to having a computerized budget assigned to them would better ensure the class members' ability to receive services to maintain their health, safety, and welfare in the community. Class members could also continue to have the option to have a budget calculated by the Idaho Department of Welfare's automated budget tool.

17. DisAbility Rights Idaho believes that with an opt-in change to budgets, training would be essential for everyone involved.

18. DisAbility Rights Idaho supports Plaintiffs' request for a modification to the "Bridge Period" internal remedies and training.

19. Pursuant to the Settlement Agreement, Plaintiffs' counsel agreed to bear the fees and costs related to ordinary monitoring and compliance with this agreement. This is not the normal course of action for attorneys' fees in settlement agreements.

20. The Settlement Agreement has been in existence for seven (7) years. It is now time for class member's counsel to be awarded attorneys' fees and costs, as DRI believe "applicable dispute resolutions or noncompliance procedures set forth in this Agreement" have failed.

21. DisAbility Rights Idaho therefore supports class counsel's recommendation for attorney fees for ongoing monitoring.

22. I declare under penalty of perjury under the law of the state of Idaho. That the foregoing is true and correct.

DATED: November 8, 2023.

                                        Disability Rights Idaho

                                        Kathryn Durrant
                                        Attorney