UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| K.W., by his next friend D.W., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD ARMSTRONG, et al.,<br><br>Defendants. | Case No. 1:12-cv-00022-BLW (lead case)<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Defendant's Motion to Vacate this Court's earlier reference of a motion to Magistrate Judge Candy W. Dale. *See* Dkt. 601. For the reasons explained below, the Court will deny the motion.

# BACKGROUND

## 1. The Lawsuit and the Settlement Agreement

Plaintiffs are developmentally disabled adults who qualify for benefits under Medicaid. They are eligible for long-term institutional care but choose to live instead in their own homes or in community settings. Over a decade ago, when their Medicaid payments were reduced, plaintiffs sued the Idaho Department of Health & Welfare (IDHW). Plaintiffs' central concerns were that: (1) the notices the Department sent telling them about the budget reductions were insufficient; (2)

MEMORANDUM DECISION AND ORDER - 1

the tool used to develop their budgets was insufficient; and (3) the appeals hearing procedures were insufficient.

The Court certified a class consisting of "All persons who are participants in or applicants to the Adult Developmental Disability Services program ('DDS program'), administered by IDHW as part of the Idaho Medicaid program, and who undergo the annual eligibility determination or reevaluation process." *See* Dkt. 224. In March 2016, the Court partially granted plaintiffs' summary judgment motion on the class-wide claims. *See* Dkt. 270. In granting the motion for summary judgment, the Court found that: (1) the budget tool's unreliability and arbitrary nature violated plaintiffs' right to due process of law; (2) the notices utilized by IDHW were inadequate to satisfy due process; and (3) to ensure due process, IDHW must "receive a commitment from a suitable representative to assist the participant before proceeding to informal review and taking any action to confirm a budget reduction produced by the budget tool." *See* Dkt. 270, at 20.

After the Court granted partial summary judgment, the parties settled, and the Court agreed to retain jurisdiction for the purpose of enforcing the obligations in the settlement agreement. *See* Dkt. 306-1, at 30. The Class Action Settlement Agreement—approved by the Court on January 12, 2017—required IDHW to adopt a new budget tool. *See* Dkt. 306-1, ¶¶ III.A.1 & V.A (referring to the budget tool as "resource allocation model"). To fulfill that aspect of the Settlement

Agreement, IDHW chose a software program called the Supports Intensity Scale—Adult Version (the SIS-A).

In the Spring of 2023, IDHW moved for an order precluding class members from accessing the user's manual for the SIS-A. IDHW argued that if it were forced to turn over the user's manual, "the entire process of this settlement will have to start over." *Mtn. Mem.*, Dkt. 539-1, at 3. (Throughout the remainder of this decision, the Court will sometimes refer to this motion as the "SIS-A Motion.")

**B.     Referral of the SIS-A Motion to United States Magistrate Judge Dale**

This Court referred the SIS-A Motion to United States Magistrate Judge Candy W. Dale under 28 U.S.C. § 636(b)(1)(A). *See* Dkt. 542. Neither party objected to the referral, and Judge Dale invested a significant amount of time resolving the motion. The parties engaged in a robust round of briefing and Judge Dale then conducted oral argument. At the outset of the hearing, Judge Dale sought clarification as to the nature of the SIS-A Motion—in an effort to ensure that everyone was on the same page in terms of whether she would be issuing a final order or a report and recommendation (R&R). As shown in the following exchange, IDHW explicitly—and quite plainly—indicated that it was anticipating a final ruling from Judge Dale (as opposed to an R&R), and that that was precisely what IDHW wanted:

> Judge Dale:          This motion was referred to me and one of the first discussions I want to have with counsel is whether you

MEMORANDUM DECISION AND ORDER - 3

> perceive this as a non-dispositive or dispositive motion? And there is a distinct difference as it relates to what this -- what my responsibility is vis-a-vis a report and recommendation to Judge Winmill or I have authority to enter an order that then wouldn't be subject to review by a different standard by Judge Winmill.
>
> …
>
> But I want to hear from both counsel or both sides what relief you're seeking from the Court, what relief the plaintiffs are opposing and what authority do you believe that this Court has to order the relief that you're requesting, ….
>
> Defense Counsel:  Our position on that—on this dispositive question is that this is a non-dispositive motion. I think in the context of the settlement, the settlement itself was the dispositive event and that was approved in 2016 and these are sort of interlocutory proceedings working out those issues with the settlement as they've arisen and we would regard this as a dispute resolution motion under the settlement agreement and one that the Court has the authority to just rule on. And we're thankful for that because we believe that it's very important to get—to get a ruling that is final in a short time frame . . . .

*June 5, 2023 Hearing Tr.,* Dkt. 582, at 5-8.

    With these assurances in place, Judge Dale proceeded with the hearing and then issued a thorough, well-reasoned, Memorandum Decision and Order denying the motion. *See* Dkt. 596. IDHW did not seek review of that order on grounds that it was "clearly erroneous" or "contrary to law." *See generally* Fed. R. Civ. P. 72(a). Instead, it filed an appeal, then dismissed it, and then (over two months after Judge Dale issued the decision), filed the pending motion to withdraw the reference to

MEMORANDUM DECISION AND ORDER - 4

Judge Dale. IDHW now says it believes the motion before Judge Dale was not a pretrial, non-dispositive motion after all. As such, IDHW says Judge Dale didn't have authority to issue a final ruling on the motion, and it asks this Court to vacate the reference and allow the parties to relitigate the motion before this Court.

## ANALYSIS

Plaintiffs raise a variety of arguments related to IDHW's flip-flop. Most compellingly, they argue that the doctrine of judicial estoppel prevents IDHW from changing its position in this manner. The Court agrees.

The Ninth Circuit succinctly explained the rules governing judicial estoppel in *Ah Quin v. County of Kauai Department of Transportation*, 733 F.3d 267, 270–71 (9th Cir. 2013). As explained there, "judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749–50 (citation and internal quotation marks omitted).

Although judicial estoppel is "probably not reducible to any general formulation of principle, ... several factors typically inform the decision whether to apply the doctrine in a particular case." *Id.* at 750 (citations and internal quotation marks omitted). "First, a party's later position must be 'clearly inconsistent' with

MEMORANDUM DECISION AND ORDER - 5

its earlier position." *Id.* "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *Id.* (internal quotation marks omitted). "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. "In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Id.*

    All three factors weigh in favor of estopping IDHW from changing its position here. First, IDHW's current position is entirely inconsistent with its prior position. As explained above, before Judge Dale, IDHW explicitly stated that it believed the SIS-A Motion was a non-dispositive motion that arose in an interlocutory context. IDHW also explicitly stated not only that Judge Dale was authorized to issue a final ruling (as opposed to an R&R), but that it *wanted* a final ruling. Second, Judge Dale accepted IDHW's arguments and proceeded to rule on the motion. Third, IDHW would gain an unfair advantage if it were allowed to ignore Judge Dale's unfavorable ruling and get a second bite at the apple before this Court. The judicial estoppel doctrine is meant to curb precisely this sort of

MEMORANDUM DECISION AND ORDER - 6

gamesmanship.

IDHW says the doctrine of judicial estoppel does not apply here because it made a *legal* mistake, whereas the cases relied upon by plaintiffs involve cases in which the estopped party took "wildly inconsistent *factual* positions before different tribunals." *Motion,* Dkt. 612, at 9 (emphasis added). More specifically, IDHW says that before Judge Dale, it "took what it has now determined to be an erroneous *legal position* on a complicated jurisdictional matter." *Motion,* Dkt. 612, at 9 (emphasis added). This argument does not persuade. The doctrine of judicial estoppel is a flexible one, and while it is commonly applied to prevent parties from taking inconsistent factual positions, that is not a requirement. Rather, as the Ninth Circuit has often noted, "an inconsistent factual *or legal* position is a threshold requirement of the doctrine." *Klamath Siskiyou Wildlands Ctr. v. Boody*, 468 F.3d 549, 554 (9th Cir. 2006) (emphasis added; citation and quotation marks omitted).

Also, to the extent IDHW suggests this Court's hands are tied because the SIS-A Motion wasn't actually a pretrial, non-dispositive motion—and therefore couldn't properly be referred to a Magistrate Judge under 28 U.S.C. § 636(b)(1)(A)—the Court respectfully disagrees. For the reasons set forth in plaintiffs' briefing, the Court finds that the motion is properly characterized as a pretrial, non-dispositive motion. *See Response,* Dkt. 606, at 6-9.

Finally, the Court has reviewed the briefing on the motion and the hearing

transcript. Even if the Court were called upon to apply a de novo standard of review, the Court would adopt Judge Dale's position in its entirety, as the Court agrees with the analysis stated there across the board. Accordingly, relitigating the motion before this Court would be a fruitless exercise.

## ORDER

**IT IS ORDERED that** Defendant's Motion to Vacate (Dkt. 601) is DENIED.

DATED: March 3, 2024

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 8