UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

K.W., by his next friend D.W., *et al.*,

Plaintiff,

v.

RICHARD ARMSTRONG, in his official capacity as Director of the Idaho Department of Health and Welfare, et al.,

Defendants.

Case No. 1:12-cv-00022-BLW

**MEMORANDUM DECISION & ORDER**

**INTRODUCTION**

Before the Court is Plaintiffs' Motion to Extend Monitoring Fees. *See* Dkt. 666. Despite its label, the motion is one for reconsideration, which the Court will deny. As will be explained below, Plaintiffs have not: (1) shown that the Court committed clear error or made a manifestly unjust decision; (2) identified new evidence that warrants reconsideration; (3) pointed to an intervening change in controlling law; or (4) demonstrated any other highly unusual circumstance that would warrant relief. Alternatively, accepting Plaintiffs' characterization of this motion as one that simply seeks further remedies for contempt, the Court is not persuaded that relief is warranted. The Court will deny the motion under either standard.

## BACKGROUND[1]

On March 31, 2025, the Court found Defendant, the Idaho Department of Health & Welfare ("IDHW" or "the Department"), in contempt because it had failed to comply with a Court-ordered deadline. Specifically, the Court had ordered the Department to implement a new budget tool by June 30, 2022. Despite significant efforts toward that end, the Department failed to do so and was found in contempt. To remedy the contempt, the Court ordered the Department to reimburse class counsel's ordinary monitoring fees for a one-year period, beginning on March 31, 2025. When the Court entered that order, it was well aware that the delay in implementing the new budget tool could extend beyond that one-year reimbursement window. But it nonetheless concluded that a one-year award was sufficient.

After the Court issued that decision, the Department moved for reconsideration, asking the Court to order the Department to either pay zero dollars in post-settlement monitoring fees or, alternatively, a flat monthly rate (not to exceed $10,000 per month) during a one-year period. The Court denied that motion, finding that the Department had failed to meet the demanding standard for

[1] The parties are familiar with the background of this case, which has been recited at length in earlier orders, including the Court's March 31, 2025 Order. *See* Dkt. 651. The Court will not repeat that lengthy recitation here and will instead briefly highlight facts particularly relevant to this motion.

reconsideration. Thereafter, the Department agreed with Plaintiffs to make a flat, $240,000 payment for the one-year period. *See Apr. 16, 2026 Letter from Eppink to Anderson,* Dkt. 666-3.

Shortly after the one-year reimbursement period expired, Plaintiffs filed the pending motion. Although the Court had previously rejected Plaintiffs' request for a contempt remedy that would require the Department to reimburse class counsel for *all* monitoring fees, Plaintiffs once again ask the Court to order the Department to "reimburse class counsel for ordinary monitoring fees from April 1, 2026, through the termination of the Class Action Settlement Agreement . . . ." *Mtn.,* Dkt. 666, at 2. Plaintiffs say that if the Court does not order such relief, they will be required to engage in six additional years of monitoring work without compensation. *Mtn. Mem.,* Dkt. 666-1, at 8.

## THE GOVERNING LEGAL STANDARD

Before reciting the standards governing motions for reconsideration, the Court will address two preliminary matters. First, "the label attached to a motion does not control its substance." *Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.,* 204 F.3d 867, 880 (9th Cir. 2000). Here, although Plaintiffs style their motion as one "to extend monitoring fees," they are effectively asking the Court to reconsider its March 31, 2025 order. In that order, the Court considered and rejected the very argument Plaintiffs once again seek to advance—namely, that the

Court should order the Department to pay attorney fees for *all* of class counsel's monitoring work. *See Pl.'s Br. in Support of Contempt Mtn.*, Dkt. 629-1, at 19 (arguing, in their original contempt motion, that "[t]he Court should modify the CASA to follow the usual 42 U.S.C. § 1988 rule that Plaintiffs' counsel are presumptively entitled to attorney fees for all of their time spent on monitoring the settlement, . . . ."). Given this background, the Court is unpersuaded by Plaintiffs' argument that their motion is anything but a motion for reconsideration.

The second threshold issue is whether the Court's earlier, March 31, 2025 Order—that is, the one that resolved Plaintiffs' underlying Rule 70 contempt motion—is properly characterized as a final order or an interlocutory one. Rather than resolve this question, the Court will simply assume the framework most favorable to Plaintiffs and treat the March 31, 2025 Order as interlocutory. Accordingly, the Court will analyze the pending motion under Rule 54(b), which permits a district court to revise an interlocutory order "at any time" before entry of final judgment. Fed. R. Civ. P. 54(b). In determining whether reconsideration is warranted under Rule 54(b), this Court is guided by standards substantially similar to those applicable under Rule 59(e).

Rule 59 is not intended to provide litigants with a "'second bite at the apple.'" *Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001) (citation omitted). Instead, reconsideration of a previous order is an "'extraordinary remedy, to be

used sparingly in the interests of finality and conservation of judicial resources.'" *Carroll v. Nakatani,* 342 F.3d 934, 945 (9th Cir. 2003) (citing 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)). A losing party cannot use a motion for reconsideration as a means of litigating old matters or presenting arguments that could have been raised before the entry of judgment. *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993). As a result, there are four traditional grounds upon which a motion for reconsideration may be granted: (1) the motion is necessary to correct manifest errors of law or fact; (2) the moving party presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) there is an intervening change in the law. *Turner v. Burlington N. Santa Fe R.R.,* 338 F.3d 1058, 1063 (9th Cir. 2003) (citation omitted). That said, "[a] court considering a Rule 59(e) motion is not limited merely to these four situations." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). "There may also be other, highly unusual, circumstances warranting reconsideration." *ACandS, Inc.*, 5 F.3d at 1263. Finally, the party seeking reconsideration bears the burden of establishing that reconsideration is warranted. *Munden v. Stewart Title Guar. Co*., No. 4:19-cv-00112-DCN, 2024 WL 2272679, at *2 (D. Idaho May 20, 2024).

## DISCUSSION

### A. Reconsideration is Not Warranted

The Court will deny Plaintiffs' motion because they have not met the demanding standard for reconsideration.

#### 1. Clear Error or Manifest Injustice

The Court will first consider whether its earlier order limiting class counsel to a one-year, fee-shifting award was clearly erroneous or resulted in manifest injustice. The logical starting point is the parties' Class Action Settlement Agreement. In that agreement, the parties agreed that they would bear their own attorneys' fees and costs associated with ordinary monitoring and compliance. *See Settlement Agmt.* ¶ N.2., Dkt. 306-1, at 33. It bears emphasizing that this was the bargain the parties struck. In its March 2025 order, the Court modified that bargain after finding the Department in contempt for failing to implement a new budget tool by June 2022. Notably, however, that contempt finding was a close call. In determining whether the Department had established a substantial-compliance defense, the Court expressly said the question presented "a close call" and that there was "no question that IDHW had made serious and significant efforts to comply with its obligations under the Settlement Agreement." *Mar. 31, 2025 Order,* Dkt. 651, at 1. The Court thus deliberately chose a measured, proportional contempt remedy: it required the Department to reimburse class counsel's ordinary

monitoring fees for one year, rejecting Plaintiffs' argument that the Department should be required to pay all monitoring fees. *Id.* at 22–23.

That decision was not clearly erroneous or manifestly unjust. When the Court selected that one-year period, it acknowledged that "the delay may well extend beyond one year," but it nevertheless concluded that a one-year award was sufficient "based on the record before it, and considering the many efforts the Department has undertaken." *Id.* at 22. Put differently, the possibility that class counsel would continue monitoring work after the one-year reimbursement period expired was part of the calculus that produced the award in the first place. To reiterate, then, and returning to the factors guiding reconsideration, the Court's earlier decision was not clearly erroneous and it did not result in manifest injustice.

**2. New Evidence**

Turning to the next factor, Plaintiffs have presented evidence that was previously unavailable. Most importantly, Plaintiffs say we now know that the new budget tool won't be fully implemented until "early 2030, with the Settlement Agreement terminated and the case anticipated to be closed in 2032, . . . ." *Mtn. Mem.*, Dkt. 666-1, at 8. Consistent with that projection, the Special Master's recent report, which was submitted after briefing on this motion was complete, indicates that the new budget tool will be fully implemented on January 1, 2030. *See Sept. 28 Report,* Dkt. 673, at 8-9.

This new information does not warrant reconsideration. As already noted, when the Court selected the one-year reimbursement period, it expressly recognized that "the delay may well extend beyond one year." *Order*, Dkt. 651, at 22. The fact that the Court now has a more definite implementation timeline does not undermine that deliberately limited award.

Moreover, based on the Court's review of the record in this matter, the sort of uncooperative conduct the Court alluded to in its earlier decision, *see Mar. 31, 2025 Order,* Dkt. 651, at 22 n.4, has not occurred. To be sure, substantial work remains and Plaintiffs have identified problems that have arisen recently. Among other things, Plaintiffs say the Department has (1) missed "a key deadline" to secure an agreement with the State of Connecticut, and (2) failed to consult with class members about a critical Request for Information (RFI), to recruit a new assessment provider, . . . ." *Mtn. Mem.,* Dkt. 666-1, at 6. These issues do not persuade the Court that reconsideration is necessary.

***The LON Assessment Tool.*** First, regarding the agreement with the State of Connecticut, the Department intends to use Connecticut's Level of Need Assessment ("LON") as the new assessment tool. The Department explains that it hasn't missed a key deadline at all; rather, it says it "received full authorization to implement and modify the LON in writing . . . prior to seeking an MOU." *Response,* Dkt. 669, at 12. According to the Department, "[t]he decision not to

proceed with the MOU is not a failure to proceed with the use of the LON, or a failure to obtain permission to use the LON, but simply a decision between agencies from two different states that a formal MOU was unnecessary to memorialize the agreement." *Id.*

Plaintiffs respond that the absence of a formal agreement leaves open the possibility that Connecticut could later restrict Idaho's use or disclosure of the LON, potentially resulting in a "debacle" similar to the one that occurred with the previously selected SIS-A assessment tool. *See Reply*, Dkt. 671, at 9. The Court understands that concern, but it has not materialized. Indeed, the Special Master's recent report confirms that Connecticut provided Idaho with the materials necessary to proceed with the LON and that, although Connecticut ultimately declined to sign an MOU, the permission previously granted to Idaho remained in place. *See Sept. 28 Report,* Dkt. 673, at 7–8. The Department and Human Services Research Institute ("HSRI") have since proceeded with modifications to the LON and preparations for the pilot assessment phase. *Id*. If the absence of a formal agreement ultimately impedes implementation, the Court can address that circumstance if and when it arises. On the present record, however, the absence of an MOU does not demonstrate the sort of conduct that would warrant reconsidering the one-year fee award.

***The June 2026 RFI.*** Plaintiffs also point to a June 2026 Request for Information ("RFI") as evidence of continuing problems with implementation. Specifically, Plaintiffs complain that the Department issued that RFI without first informing or obtaining input from class members. The Department responded that the June RFI was a preliminary information-gathering request covering thirteen Medicaid waiver programs, rather than the Adult DD-specific RFI contemplated by the implementation timeline. According to the Department, the Adult DD Waiver was included only to obtain preliminary financial information for budget projections, and a separate RFI specifically addressing the Adult DD Waiver and the LON will be issued after engagement with class members. *See Response,* Dkt. 669, at 13–14.

The Department acknowledges that the June RFI created "unintended confusion," *see id.* at 13, and the Special Master's recent report confirms that the Department gave class members conflicting information about the RFI's scope. *Sept. 28, 2026 Report,* Dkt. 673, at 3–4. The Court agrees that better communication could have avoided this confusion. But the Department has since assured Class Counsel and the Special Master that class members will have an opportunity to provide input on the Adult DD-specific RFI and subsequent RFP. *Id.* On this record, the issuance of the June 2026 RFI does not persuade the Court that reconsideration is warranted.

***Other Matters Identified in the Special Master's Report.*** The Court has also reviewed the Special Master's September 28, 2026 report. This report identifies additional instances in which the Special Master believes the Department should have communicated more effectively with class members and Class Counsel, including changes affecting residential habilitation funding and long-term-care billing. *See Sept. 28, 2026 Report*, Dkt. 673, at 2–3. Clearly, better and earlier communication on matters affecting class members would improve the implementation process. But, viewed as a whole, the Special Master's report does not show a Department that has become unwilling to cooperate in implementing the Settlement Agreement. Rather, in addition to pointing out these issues, the Special Master reports that the parties "have worked together fairly collaboratively over the past year," meet almost weekly, and have made "[s]low but steady progress" toward agreement on the milestones and timeline necessary to complete the case. *Id.* at 2. The Department and HSRI are also developing a comprehensive Communication and Engagement Plan, incorporating input from Class Counsel, class members, family members, and other stakeholders. *Id.* at 4–5. And, with respect to the implementation timeline itself, the Special Master reports that there has been "good communication" between the Department and Class Counsel, resulting in revisions to address questions and concerns. *Id.* at 8.

Thus, while the record certainly leaves room for improvement in the

Department's communications with Class Counsel and class members, the Court does not view the identified problems as the sort of uncooperative conduct the Court contemplated when it left open the possibility of reconsidering the one-year limitation. On balance, the record shows a Department that remains actively engaged in the difficult work of implementing the Settlement Agreement.

Finally, the Court will note that it is genuinely appreciative of the Special Master's work, and that the Court carefully considered her recommendation in favor of extending reimbursement of monitoring fees through termination of the case. Among other things, the Special Master noted that continued reimbursement would provide an additional incentive for the Department to expedite implementation. *See Special Master's Recommendation,* Dkt. 667, at 2. But on the record before it, the Court is not persuaded that an additional financial incentive—potentially lasting another six years or more—is necessary to secure the Department's continued, active participation in implementing the new budget tool. The Court also notes that the Department bears the expense of the Special Master, having stipulated to pay her fees. The Special Master plays an active role in monitoring and overseeing implementation, facilitating the parties' efforts, and reporting to the Court. Thus, although Class Counsel undoubtedly will continue to perform substantial monitoring work, the expiration of the one-year fee award does not mean the Department is no longer bearing some external costs associated with

monitoring and facilitating implementation.

### 3. Intervening Change in Controlling Law; Other Unusual Circumstances

Finally, Plaintiffs identify no intervening change in controlling law. And the longer implementation timeline and the issues described above do not amount to the sort of highly unusual circumstances warranting reconsideration. The Court does not minimize the substantial monitoring work that remains. But, as noted above, the parties agreed that each side would bear its own fees, and the Court has already required the Department to depart from that bargain for one year as a remedy for its failure to meet the June 2022 deadline. The record before the Court does not justify reconsidering that deliberately limited remedy.

## B. Alternatively, Further Contempt Remedies Are not Warranted

Alternatively, even if the Court views this motion through Plaintiffs' proposed framework, the Court is not persuaded that further contempt remedies are appropriate. According to Plaintiffs, the standard governing this motion would essentially be the same as before. That is, the Court would be able to exercise its broad discretion to fashion an appropriate remedy for a party that has been found in contempt. *See Mtn. Mem.,* Dkt. 666-1, at 2-3 (asserting that "[o]nce a Federal District Court makes a finding of civil contempt, it is free to use its power to sanction either to compel the party in contempt to cure its contempt, or it may order compensation to the party not in contempt"). Put differently,

Plaintiffs essentially contend that the Department remains in contempt because it has not yet cured the violation underlying the Court's March 2025 contempt finding. That is, the Department missed the June 2022 implementation deadline, and the new budget tool remains unimplemented. On that premise, Plaintiffs argue that the Court retains broad discretion to impose additional sanctions designed either to compel compliance or compensate Plaintiffs for the continuing contempt. *See id.*

The Court has some reservations about that premise. The Department's failure to meet the June 2022 deadline was the basis for the Court's March 2025 contempt finding, and the Court imposed a specific remedy for that contempt: reimbursement of Class Counsel's ordinary monitoring fees for one year. The Court expressly recognized that implementation might remain incomplete beyond that one-year period, yet declined to require reimbursement beyond one year on the record then before it. Thus, the mere fact that the new budget tool remains unimplemented does not necessarily mean that the Court must treat each additional day after June 2022 as a new contempt warranting additional sanctions.

Ultimately, though, the Court does not need to resolve that issue. Even assuming Plaintiffs are correct that the Department remains in continuing contempt until the new budget tool is fully implemented, the Court is not persuaded that an additional contempt remedy is appropriate. Accordingly, even under Plaintiffs'

characterization of the Department's contempt as continuing, the Court declines to extend the monitoring-fee award.

## ORDER

**IT IS ORDERED that** Plaintiffs' Motion to Extend Monitoring Fees (Dkt. 666) is **DENIED.**

DATED: October 13, 2026

B. Lynn Winmill
U.S. District Court Judge